# THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT HAVE NORTH CAROLINA
### GREENSBORO DIVISION
### CASE NO.

FILED
AUG 2 1 2009
IN THIS OFFICE
Clerk U. S. District Court
Greensboro, N. C.
By _____

| | |
|---|---|
| HOWARD L. KASTEL TRUSTEE ) | |
| OF THE HOWARD L. KASTEL ) | |
| TRUST DATED NOVEMBER 13, 1985 ) | **COMPLAINT** |
| And JOAN H, KASTEL ) | 1:09CV646 |
| Plaintiffs ) | |
| v. ) | |
| ) | **JURY TRIAL DEMANDED** |
| NUVEEN INVESTMENTS INC, and ) | |
| ROBERT P. BREMNER and ) | |
| MESIROW FINANCIAL INC, and ) | |
| DEUTSCHE BANK AG and ) | |
| MERRILL LYNCH & CO. INC ) | |
| and CITIGROUP GLOBAL MARKETS ) | |
| Defendants ) | |

COMPLAINT FOR DECLARATORY JUDGEMENT,
PRELIMINARY INJUNCTION, RESCISSION AND OTHER
EQUITABLE RELIEF, APPOINTMENT OF INDEPENDENT
TRUSTEE AND, DAMAGES AND OTHER RELIEF

1

Plaintiffs Howard L. Kastel Trustee of the Howard L. Kastel Trust Dated November 13, 1985 and Joan H. Kastel bring this action and file this Complaint, by and through their undersigned counsel, based upon personal knowledge as to their own acts and upon their investigation, which included among other things, a review of: (a) public statements and marketing materials and other documents written or published by Nuveen Investments, Mesirow Financial, Deutsche Bank, Merrill Lynch, and CitiGroup (all of whom are more fully identified below) and their affiliates, agents and employees; (b) United States Securities and Exchange Commission filings made by SEC and by the Defendants; public filings and statements made in court proceedings and civil government and regulatory investigations involving Auction Rate Securities, including but not limited to other proceedings involving other parties; (c) documents believed to be authentic, copies of internal emails and other business records, and securities reports, press releases and media reports and (d) discussions with representatives of the Defendants and other persons.

## INTRODUCTION

1. This lawsuit seeks to recover over $2 million of the Plaintiffs' ("the Kastels") money that was unlawfully obtained pursuant to a multi-billion-dollar fraudulent scheme perpetrated by Defendants Nuveen Investments Inc ("Nuveen") and its affiliates, The Nuveen North Carolina Funds by its Chairman of the Board, Robert P. Bremner, Mesirow Financial Inc ("Mesirow"), Deutsche Bank AG and its affiliates ("Deutsche Bank"), Merrill Lynch & Co. Inc and its subsidiaries

2

("Merrill Lynch") wholly-owned by Bank of America Corporation, and CitiGroup Global Markets ("CitiGroup") and its subsidiaries and affiliates. In August and September 2007, Mesirow purchased 88 shares for $25,000 a share of Auction Rate Preferred Securities (ARPS) issued by three Nuveen North Carolina Funds for the Kastels' accounts with and through the Nuveen Broker Dealer at so-called self styled Dutch Auction arrangements orchestrated by Deutsche Bank in concert with auction participants Merrill Lynch and CitiGroup. As a direct and proximate result of the unlawful conduct of the auction participants, the Kastels hold 85 shares of the Nuveen North Carolina ARPS and are unable to redeem them. The interest paid on the ARPS is unconscionably inadequate and low and does not fairly compensate the Kastels and other North Carolina investors for long term debt instruments that have no maturity date. The suit also seeks to recover interest in respect to shares of other Nuveen Closed End Funds that Mesirow and Nuveen sold to or were held by the Kastels, during the years 2003 to 2007, that were marketed as and falsely represented to be short-term, money market like investments. These ARPS were long term preferred shares with no maturity date. But for the fraud, the fair interest rate of said ARPS would have been at least two times the interest that was paid. Plaintiffs also seek to recover a fair return in respect to said other shares sold to them between 2003 and 2007, which they believe exceeds $300,000.

2. Certain of the Defendants have participated in the fraudulent scheme in or through their wholly owned subsidiaries. Reference to Nuveen includes Nuveen Investment Inc., Nuveen Investments LLC ("the Nuveen Broker Dealer"), the Nuveen North Carolina Closed End Funds, and Nuveen's parent affiliated with Merrill Lynch. Reference to Deutsche Bank includes Deutsche Bank Trust

3

Company Americas and Deutsche Bank Securities Inc. Reference to Merrill Lynch & Co. Inc includes Merrill Lynch Piece, Fenner & Smith Incorporated. Reference to CitiGroup Global includes CitiGroup Global Markets, Inc., Solomon Smith Barney and Morgan Stanley Smith Barney. Nuveen and the Broker Dealers are also collectively referenced here as the "Underwriter Broker Dealers". Nuveen is also referenced herein as the "Sponsor" and as the "Manager". Defendants Deutsche Bank, Bank of America and Merrill Lynch, and Citigroup operate their businesses interchangeable amongst various subsidiaries and affiliates. These relationships have become complex by various mergers, acquisitions, combinations and affiliations.

3. Nuveen North Carolina Funds include:

    a) Nuveen North Carolina Premium Income Fund Series TH (NNC)

    b) Nuveen North Carolina Dividend Advantage Municipal Fund Series T (NRB)

    c) Nuveen North Carolina Dividend Advantage Municipal Fund 2 Series F (NNO)

    d) Nuveen North Carolina Dividend Advantage Municipal Fund 3 Series W (NII)

The Howard L Kastel Trust owns ARPS issued by NNC, NNO and NII. Joan H. Kastel owns ARPS issued by NNC. Neither of the Kastels own ARPS issued by NRB.

4. This action seeks Equitable Relief, including Recession or Recessional Damages and the disgorgement of monies procured by fraud. The Plaintiffs also seek Equitable Relief in the form of the appointment of an Independent Trustee or

4

Receiver because of the patent conflict of interest that exists in respect to the Management of the Nuveen North Carolina Funds. This is to prevent Nuveen from continuing to pay itself fees and pay common shareholders dividends until the Nuveen North Carolina Funds have redeemed all of the Auction Rate Preferred Shares issued pursuant to the fraudulent scheme. This action also seeks a Preliminary Injunction that would prohibit the Nuveen North Carolina Funds from paying fees to Nuveen, Mesirow and the other Defendants, from paying interest or dividends to the common shareholders and from using funds held by the funds to purchase or make investments in new securities until the funds have redeemed the Kastels' ARPS and the ARPS held by other innocent investors who have been the victims of the Defendants' Fraudulent Scheme.

5. Plaintiffs also are informed and believe that there were other participants in the fraudulent scheme described in this action. Nuveen cited 26 auction participants in its Congressional Testimony in September 2008. Nuveen claims that the identity of the Authorized Auction Participants is not public information and has refused to disclose this information. Nuveen, however, advised that "it is safe to assume that this includes most of the major broker/dealer firms" were participants. Plaintiffs state, on information and belief, that said Participants have been the targets of SEC Complaints relating to Auction Rate Securities. Those Complaints alleged violations of the U.S. Securities Laws and U.S. District Court Restraining Orders.

6. Plaintiffs seek a Declaratory Judgment that the Client Agreements, and specifically the arbitration provisions contained therein, that the Kastels executed

while residents of Illinois, are not enforceable against them now that they are North Carolina Residents by reason of:

a)  Mesirows egregious and wanton fraudulent conduct;

b)  the agreements purport to apply the Arbitration Laws of the State of New York in the case of Howard L. Kastel, a state that has no connection with the claims against Mesirow;

c)  Under the Provisions of the North Carolina Securities Act a person "may sue either at law or in equity" which right would be denied if the Kastels or either of them were compelled to Arbitrate their claims;

d)  In the case of the Howard L. Kastel Trust, no agreement was executed that provides that the provisions of the 1989 agreement dated August 15, 1989, executed by Howard L. Kastel individually, applies to the claims of the Howard L. Kastel Trust and, as shown on the face of that document, it was an agreement with Mesirow Investment Services, a South Dakota Corporation (not signed by an authorized representative) that is no longer an active corporation and is not a party to this suit;

e)  In the case of Joan H. Kastel the provisions would require one of the arbitrators to be affiliated with securities industry despite the fact that the resolution of this dispute would have a broad impact on the securities industry that ;

f)  This suit is a single dispute. Mesirow has, at all times material here to, treated the accounts of the Kastels as "Consolidated Accounts". Mesirow had minimal dealings with Joan H. Kastel;

g)  Finally and most importantly, Mesirow did not act alone. Nuveen acted as co-broker and actually placed the orders to purchase the Nuveen North Carolina ARPS.

6

h) Additionally, this action involves claims under the North Carolina Securities Act of the State of North Carolina and the Illinois Securities Act,

which, in pertinent part, provides for joint and several liability and equitable relief. It would be impossible to adjudicate the rights of the parties in a consistent manner in an Arbitration proceeding involving only one party. As provided in the North Carolina an agreement to waive any right under the statute (the right to sue in law or equity) is void;

i) An Award by an Arbitration panel will affect the Kastels' right against the other parties;

j) Moreover, this action seeks Equitable Relief not available in arbitration.

k) Additionally, Mesirow had a patent conflict of interest in connection with transaction complained and may have mandatory cross claims against other Defendants named here;

l) Furthermore, Mesirow is estopped to assert a demand for arbitration by reason of a pattern of lulling to encourage the Kastels to believe that the ARPS in their accounts had value equal to their cost when they knew that the market value of the ARPS had dropped to a fraction of the amount invested by reason of the Fraudulent scheme;

m) It is further stated, as grounds for this Declaratory Judgment, that most of the major dealers including certain of the Defendants have been subject to two sets of Cease and Desist Orders as a result of actions brought by the United States Securities and Exchange Commission and other regulatory agencies, the first in 2006 an 2007 and the second in 2008 and 2009. Mesirow knew of the Cease and Desist Orders and also, on information and belief, knew that the Respondents continued the unlawful practices until February 2008;

7

n) Theft by Deception and Obtaining property under false pretenses are violations of the Criminal Laws of North Carolina and as such constitute Torts and are not subject to arbitration;

o) Intentional or Infliction of emotional distress is a Tort and said conduct is not subject to arbitration.

7. This action also seeks recovery of consequential damages and exemplary damages because of Defendants intentional, outrageous and inexcusable course of conduct and because certain of the Defendants continued practices that violated the 2006 and 2007 restraining orders. Exemplary and punitive damages are necessary and appropriate.

8. This action alleges claims involving allegations in respect to violations of the Securities Exchange Act of 1934 (the "Exchange Act) that were asserted against the Defendants in the SEC's Civil Injunction Proceedings. The Defendants have waived any claim of Double Jeopardy based on the terms of their settlements. Plaintiffs are currently prevented, by amendments to certain provisions of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), from asserting claims under said act in the absence of a criminal conviction relating to the underlying unlawful acts. Plaintiffs reserve the right to amend their complaint to add such claims. Plaintiffs are advised that the United States Attorney for the Eastern District of New York is conducting a Criminal Investigation; hence Plaintiffs further believe that RICO is or will be applicable to this Ponzi Scheme and securities fraud. Both the Exchange described in this complaint and the Nuveen Funds are Enterprises and Nuveen, Deutsche Bank, Merrill Lynch and

Bank of America, and Citigroup and others who participated in this unlawful scheme are members of the unlawful scheme who engaged in a pattern of racketeering activity.

## THE PARTIES

9. Howard L. Kastel is the Trustee of the Howard L. Kastel Trust Dated November 13, 1985. Howard L. Kastel is a resident of North Carolina. Joan H. Kastel is the wife of Howard L. Kastel and is also a resident of North Carolina. The Trust has had an account at Mesirow since November 2002. To the best of the Plaintiffs' knowledge and belief there is no written "client account agreement" between Mesirow and the Trust. Prior to November 2002 Howard L. Kastel had a Cash Account Agreement dated August 15, 1989. Joan H. Kastel executed a Client Agreement prior to November 2005 The Kastels became residents of North Carolina in 2006 and do not conduct business in Illinois. The addresses on the Kastels' account were changed to North Carolina in 2006. Howard L. Kastel is 77 years old and a substantially retired lawyer except for part time employment as a Consultant, Arbitrator and Mediator. None of said employment activities are outside of North Carolina. Joan H. Kastel is a 75 years old retired Public School Speech and Language Pathologist.

10. Nuveen Investments Inc is incorporated in Delaware and its principal executive offices are located in Chicago Illinois. Nuveen is the Sponsor and Investment Adviser to all of the Nuveen Closed End ARPS Funds that the Kastels

9

invested in including to the Nuveen North Carolina Funds. Nuveen is and was the largest issuer of closed end ARPS in the U.S. The Nuveen Closed End Funds issued more than $11 Billion Tax Exempt Municipal ARPS. The Nuveen North Carolina Funds issued a total of $120 million ARPS in the Nuveen North Carolina Funds of which only $2.5 million have been redeemed. For many years, Nuveen acted as Sponsor, Issuer, Underwriter and Brokers Dealer in connection with as many as 100 funds engaged in the marketing and sale of Auction Rate Securities. On information and belief, Nuveen is currently the subject of an investigation by the SEC "In the Matter of Certain Auction Practices". Nuveen is registered as a Broker Dealer in North Carolina and does business in North Carolina in connection with the Nuveen North Carolina Funds. Commencing not later than August 2007, problems in the Auction Rate Securities Market were a topic of discussion and concern for Nuveen. Nuveen knew that marketing ARPS required a positive state of mind based up on trust that there was virtually no risk and that investors were purchasing money market like short-term cash like securities. Nuveen did not disclose these concerns because that would shake investor confidence. Nuveen knew as early as August 2007 that disclosure of the risks to investors would cause the ARPS to no longer be a workable concept.

11. Robert P. Bremner is a resident of Washington D.C. Robert Bremner is the Chairman of the Board of the Nuveen North Carolina Funds and a member of the Board of Trustees since 1997. As Chairman of the Board of Trustees he has oversight responsibility over the management of the Fund's Investment Advisor and is a controlling person in respect to North Carolina Funds as that term is defined in the Exchange Act. The unlawful acts and practices participated in by the Funds took place during the period when he was a member of the Board.

12. Mesirow Financial Inc is incorporated in Delaware with its principal Executive Offices in Chicago Illinois. Mesirow is registered with the SEC as a broker dealer and is registered as a broker dealer in North Carolina. Mesirow Financial has an office in Charlotte North Carolina. Mesirow conducts business as an investment adviser, broker dealer and consultant in North Carolina. Mesirow had a close relationship with Nuveen. Mesirow was motivated to buy, for the Kastels and other customers, risky auction rate securities because of the commissions it earned. Mesirow was incentivized to sell auction rate securities to its customers without disclosing the substantial risks of lack of liquidity, SEC enforcement Actions and other material facts because some of it officers and employees owned Nuveen Closed End Common Shares that benefited from the sale of the Nuveen ARPS. On information and belief, Mesirow is the subject of investigations arising out of its sale of Nuveen ARPS, by the Secretary of State of Illinois Department of Securities, the North Carolina Department of the Secretary of State Division of Securities and the Financial Industry Regulatory Authority ("FINRA"). Mesirow holds the Kastels shares in its name. As of February 15, 2008 Nuveen claimed to have no record of the Kastels and refused to provide information to Howard Kastel directing Kastel to contact Mesirow. As a result of the fact that Nuveen did not have the name of either Howard L. Kastel Trustee or Joan H. Kastel, they did not receive any reports or information concerning their investments until February 16, 2008. That Nuveen Report did not disclose that an auction of Nuveen ARPS failed in January.

13. Deutsche Bank AG is a German cooperation headquartered in Frankfurt, Germany. Deutsche Bank is one of the worlds largest financial firms and does business in the United States through its subsidiaries Deutsche Bank Trust

11

Company Americas and Deutsche Bank Securities Inc, both incorporated in Delaware with their principal executive offices in New York, New York. On information and belief the subsidiaries are licensed as a Broker Dealer and acted an auction specialist in the Auction Rate Securities Market. Deutsche Bank has an office in Winston Salem, North Carolina. Deutsche Bank has settled with the SEC and has paid a penalty of $15 million for its role in connection with the Auction Rate Securities Market. Deutsche Bank has also agreed to redeem $1.3 billion of Auction rate securities, but has refused to redeem any of the Kastels' ARPS.

14. Merrill Lynch & Co. Inc and Merrill Lynch, Pierce, Fenner & Smith are wholly owned subsidiaries of Bank of America and are among the world's largest investment banks . Merrill Lynch is incorporated in Delaware and its principal executive offices are in New York, New York. Merrill Lynch has offices in North Carolina and is registered as a Broker Dealer. Commencing not later than August 2007, problems in the Auction Rate Securities Market were a topic of discussion and concern for Merrill. Merrill Lynch earned $billions from the Auction Rate Security Market. Merrill Lynch has settled with SEC and has paid a penalty. Merrill Lynch is a wholly owned subsidiary of Bank of America. Bank of America Securities LLC and Bank of America Investment Services, Inc. (Collectively "Bank of America") were also active participants in the Auction Rate Securities Market and engaged in acts and practices substantially the same as Merrill Lynch and has paid a penalty of $125 million. Collectively Merrill Lynch and Bank of American have agreed to redeem more than $11 Billion of Auction Rate Securities. Neither Merrill Lynch nor Bank of American will redeem any of the Kastels' ARPS shares.

15. Citigroup Global Markets Inc. and subsidiaries and affiliates Solomon Smith Barney, Smith Barney and Morgan Stanley Smith Barney are also among the world's largest investment banks. Citigroup is incorporated in New York with principal executive offices located in New York, New York. Citibank and its affiliates and subsidiaries are registered as Broker Dealers in North Carolina and have offices and do business in the Middle District of North Carolina. Citigroup and its subsidiaries and affiliates were active participants in the ARPS auction market and have both paid large penalties and agreed to redeem $billions of Auction Rate Securities. Neither Citigroup or its subsidiaries or affiliates will redeem any of the Kastels' ARPS shares.

16. As Broker-Dealers most of the Defendants were members of FINRA and the Securities Industry and Financial Markets Association ("SIFMA"). Mesirow and the Defendants had knowledge of the Best Practices for Broker-Dealers of Auction Rate Securities published SIFMA in Spring 2007 that provided in Section 4.2.4 that "Broker-Dealer should educate issuers and investors as to the material features of Auction Rate Securities". Mesirow and Nuveen failed to comply with this provision in its dealings with Kastels. Mesirow and Nuveen did not comply with other provisions of the Best Practices.

17. Each of the Defendants, except Mesirow, acted under contracts with Nuveen and the Nuveen North Carolina Funds as Underwriters, Managers, and Market Makers and participated in the manipulation of the auction markets conducted in respect to the Nuveen Closed End Funds including the North Carolina Funds. Each of said Defendants perpetuated an artificial market for the ARPS. Each of said Defendants have announced agreements to comply with Court Orders to

13

redeem and reimburse certain eligible clients that were victims of the Auction Rate Scheme. Each of the Defendants breached the terms of the 2006 and 2007 SEC Settlements and Restraining orders issued during the period 2006 to February 2008 and continued to engage in the unlawful acts complained of in this action.

## Jurisdiction and Venue

18. The District Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. Sections 1331, 1332 and 1337 of the Exchange ACT (15 U.S.C. Section 78). The claims asserted herein arise under Section 10(b) and 20 (a) of the Exchange Act and Rule 10 (b) 5 promulgated there under by the SEC. Additionally claims are asserted under North Carolina statutory and common law including but not limited to G.S. Sections 78 A-8, 8A-12 (5), Section 78A-56 and Section 78A-57; the Securities Laws of the State of Illinois, specifically Section 13 of the Illinois Securities Act which provides, in pertinent part that a sale made in violation of the provisions of the Act is void. The Defendant Corporations are Organized under the laws of states other than North Carolina with their principal places of business in Chicago and New York. Robert Bremner is a citizen of Washington D.C. The Plaintiffs are both citizens of North Carolina. All persons including the issuer, controlling persons, underwriters, broker dealers and salesperson who participates in the unlawful sale will be liable to the purchasers for the full amount paid together with interest. Plaintiffs further state that notice of their election to rescind the sales of Nuveen North Carolina ARPS was served by Certified Mail on February 22, 2008, return receipt requested, and received by Mesirow Financial on February 27, 2008, Nuveen Investments on February 28, 2008 and Deutsche on February 27, 2008. By reason of Defendant's breach of

fiduciary duty and fraud which was willful and reckless with wanton disregard for the rights of the victims rights, Plaintiff seek to recover punitive damages under the Illinois Consumer Fraud and Deceptive Practices Act and the laws of the United States and North Carolina.

19. This Court has supplemental jurisdiction of the state claims asserted herein because the state law claims arise from the same operative facts and form part of the same case or controversy as the claim brought pursuant to the Exchange Act. Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. Section 78aa and 28 U.S.C. Sections 1391 (b), 1332 and 1337). Plaintiffs reside in this District and the defendants regularly conduct business in this district and North Carolina. The Defendants are all citizens of other states.

20. In connection with the acts alleged by the Plaintiffs, the Defendants and each of them, directly or indirectly, used the mean and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications to fraudulently induce the Plaintiffs to purchase the ARPS at issue in this litigation.

General Allegations

21. ARPS issued by Nuveen North Carolina Closed End Funds and marketed by Nuveen through Mesirow and the Defendant Brokers Dealers were perpetual preferred stock with no maturity date and no right of redemption that paid interest at rates purported set at periodic auctions. ARPS were auctioned at par value so that the return on the investment to the investor was determined

15

through the auction process. ARPS, however, were marketed and sold as highly liquid short-term investments with the risk characteristics of money market funds and an attractive alternative to money market investors. In fact, Nuveen in its online "Glossary of Financial Terms" ARPS state as follows:

" auction rate preferred stock (ARPS)—A floating-rate preferred with the dividend rate reset by Dutch auction, typically every 49 days. The interest rate is usually subject to a maximum, and the issue is PUTTABLE at each auction."

"cash equivalent—A short-term money market instrument, such as a Treasury bill or repurchase agreement, of such high quality and safety that it is virtually as good as cash."

"closed-end fund—A fund that offers a fixed number of shares, which are traded on a stock exchange just like stocks."

"Dutch auction—An auction system where the price of the item being auctioned is gradually reduced until it elicits a responsive bid. Dutch auctions are used to sell U.S. Treasury bills and to set rates on some re-marketed floating-rate instruments and preferred stocks."

"liquidity—The ability to easily turn assets into cash. An investor should be able to sell a liquid asset quickly with little effect on the price."

For undisclosed reasons Nuveen does not define the term "puttable'. A puttable share is a share with rights to put the shares back to issuer at a specified price. In the case of the ARPS the specified price is Par--$25,000. It is a right that allows the holder to choose to put the share.

Prior to February 2008, most of the Kastels and most ARPS investors didn't have a clue about the liquidity risk or other risk associated with the ARPS they were sold.

Nuveen never intended that the risks of illiquidity be transparent to the individual investors. Nuveen served as Adviser to the funds issuing ARPS, Sponsor, Underwriter, Manager of the Auction and Manager of the select group of Broker Dealers who were permitted to trade at the weekly auctions.

22. Additionally Nuveen acted as co-broker with Mesirow on transactions engaged in by Mesirow and shared the fees with Mesirow for said transactions. As a result of its undisclosed co-broker status, Nuveen owed the same duties to Mesirow customers including the Kastels. In the case of Mesirow that duty included a fiduciary duty to those clients who placed their special trust in Mesirow.

23. All of the Defendants marketed Auction Rate Securities as safe, liquid short-term investments notwithstanding the fact that all of them knew that were not safe, liquid cash investments. In February 2008, the ARPS market froze leaving the Kastels and thousands of other investors unable to liquidate their investments and locked into interest rates that are a fraction of what long term preferred shares of equal quality paid as interest. The proximate cause of the market failure was the misrepresentations of the Defendants, their manipulation of the ARPS market and the select disclosure of the coming crash to some investors who were able to sell or redeem their ARPS prior to February 13, 2008. The proximate cause was also the fact that the ARPS did not carry sufficient maximum rates to ensure liquidity unless the Defendant Underwriter Broker Dealers continued to secretly support the auction process. The proximate cause also was the fact that the maximum rate caps limited liquidity and the fact that investors would not receive fair interest. None of the materials facts were disclosed to the Kastels and other innocent investors.

17

24. The Kastels are forced to bring this lawsuit despite the fact the SEC and other state regulators have ordered the Participants to repurchase billions of the illiquid securities and to pay millions in fines as a result of their unlawful conduct. The Kastel and thousands of investors have been left out of the settlements. Nuveen and Mesirow have played hardball since February 2008 and, unless the Nuveen investors purchased their ARPS from the one of the settling defendants, they have been left out to fend for themselves while Nuveen and Mesirow continue to pay themselves large fees to wrongfully hold the money.

25. The $2 million dollars represents a significant part of the Kastels' net worth. The uncertainty of when, if ever, the Kastels' ARPS will be redeemed together with minimal interest the Kastels receive for their money has had a major economic and psychological effect on the quality of their lives and their health. As a result of the Defendants wrongful conduct, the Kastels have been forced to sell other securities at a loss of hundreds of thousands of dollars, turn down a loan to their son's small business that was suffering from the credit crisis, cancel vacation plans and other normal expenditures. At 77 and 75 years of age it is too late to start over. Mesirow's and Nuveen's conduct has caused the Kastels' severe emotion distress. It was foreseeable to said Defendants that their conduct described in this complaint would cause and inflict severe emotional distress. These allegations go far beyond a simple claim of delay in redeeming the Kastels' shares. Said Defendant conduct is and was extreme and outrageous. The delay in redeeming the Kastels' shares and the shares of other elderly investors

18

intentionally caused severe emotional distress. Nuveen and the Nuveen Funds have taken a harsh attitude—in substance—"Can't you be patient and wait for us to work this problem out". The Kastels have been asked to wait for the world to change.

## Summary of the Facts of the Case

26. Mesirow was the Kastels' Investment Adviser and the Kastels enjoyed a relationship of trust and confidence with Mesirow. Howard L Kastel Trustee has had an account with Mesirow for more than 6 years and invested primarily in short-term municipal securities and money markets. Howard Kastel opened an account with Mesirow Investment Services, Inc (merged or consolidated with Mesirow Financial) in 1988. Howard Kastel had an account with Mesirow Financial until November 2002. To the best of her recollection, Joan H Kastel opened an account at Mesirow in or about 5 or 6 years ago when she transferred an account from another broker that she had inherited from her father. The Kastels' Investment Adviser at Mesirow was Lawrence Cohen. Larry Cohen was a CPA and a former partner of a one of the largest National Accounting Firms. Howard Kastel has known Larry Cohen since the early 1970s. To the best of his recollection, Mesirow invested $125,000 from Howard Kastel's account in the Nuveen Municipal Money Marker Fund, a fund that discontinued operation in 2001. At some point during this period, Mesirow purchased 7 shares at a price of $25,000 per share for a total of $175,000 in the Nuveen Municipal Advantage Series F Auction Rate Preferred Fund. These shares were "sold" in January 2001. Howard Kastel did not know anything about Nuveen and its business at the time of

19

these transactions and received no offering materials or disclosure documents and relied completely on his Mesirow Investment Adviser. At various times in 2004 and 2005 Mesirow made other purchases of Nuveen securities for the account of Howard L. Kastel Trustee. Howard Kastel believed that these purchases involved similar low risk short-term money market like liquid investments. Howard Kastel believed that the ARPS renewed or rolled over every week unless he decided not to renew. Howard Kastel believed that in the event he did not elect to continue renewing the ARPS, they would be redeemed as in the case of money market funds held in the Howard L. Kastel Trust Account. His understanding was that the term "auction rate" referred to the method of determining the interest rate. Larry Cohen knew from numerous discussions with Howard Kastel that he had an account with an Investment Adviser who invested in other types of securities. The investments in the other account were considered less conservative because they involved Common stock and Bonds. Larry Cohen knew that Howard Kastel depended on the low risk liquid short-term investments he made through Mesirow to have a balanced retirement portfolio. At all times, material hereto, Larry Cohen described the investments in Nuveen Funds as "weeklies, liquid, short term and good as cash". Larry Cohen knew that the ARPS liquidity was a complete fiction. To this date, the monthly reports issued by Mesirow show that the value of these investments to be the same as the price paid per share when the original investments were made. Since February 2008 these Statements and this information is false and misleading.

27. In August 2007, Larry Cohen suggested in substance: "In view of your move to North Carolina, I am going to put you into Nuveen North Carolina Funds to take

advantage of the double tax exemption". Commencing shortly after this conversation, the following transaction were effected in the Kastel's accounts:

Howard L. Kastel Trust

8/20 Sold Nuveen Mun Mkt Opportunity FD 7 Shares $175,000

8/21 Sold Nuveen Insd Premium Income Mun FD 12 Shares $300,000

8/21 Sold Nuveen Mun Mkt Opportunity FD 6 Shares $150,000

8/23 Buy  Nuveen NC Prem Income Mun FD 8 Shares $200,000

8/29 Buy  Nuveen NC Divid Adv FD 3 Mun 20 Shares $500,000

9/05 Sell Nuveen Prem Inc Fd 4 Mun  12 Shares $300,000

9/06 Sell Nuveen Prem Inc Fund 4 Mun 15  Shares $375,000

9/06 Sell Nuveen Insd Prem fd 2 Mun 10 Shares $250,000

9/07 Sell Nuveen Multi Strategy Income Fd 12 Shares $300,000

8/30 Buy  Nuveen NC Prem Income Mun Fd 6 Shares $150,000

9/05 Buy  Nuveen NC Divid Fd 3 Mun 12 Shares $300,000

9/06 Buy  Nuveen NC Prem Income Mun Fd 25 Shares $650,000

9/07 Buy  Nuveen NC Divid Adv FD 2 Mun 12 Shares $300,000

Joan H. Kastel

8/23 Sell Nuveen Perf Municpal FD 5 Shares $125,000

8/23 Buy Nuveen NC Prem Income FD 5 Shares $125,000

The transactions Referenced above resulted in 83 Shares of Nuveen North Carolina Funds in the Account of Howard L. Kastel Trust as of October 1, 2007 at a cost of $2,075,000 and 5 Shares of Nuveen North Carolina Funds in the Account of Joan H. Kastel at a cost of $125,000.

21

28. Mesirow and Nuveen did not disclosure any of the risk factors and unlawful practices to the Kastels at the time of these transactions. Mesirow and Nuveen did not disclose that their officers and employees and the Trustees of the Nuveen Funds had various conflicts including, but not limited to, ownership of Common Shares of the Nuveen Funds. These conflicts of interest existed because the Common Shares benefited from the leverage created by the artificially low rates paid to the ARPS investors. On February 15, 2008, Larry Cohen first disclosed this conflict of interest to Howard Kastel. Mesirow and Nuveen knew that the effect of setting the dividend rates below a fair market rates, and the prospect of low "maximum rates" that would result from a failed auction, alienated institutional and other sophisticated investors. This lack of market interest resulted in an accelerated propping up of the auctions by the Underwriter Broker Dealers. The reality was the Auction process had already failed because Nuveen and Underwriter Broker Dealers, assisted by Deutsche Bank creating a false market for the purpose of intentionally deceiving investors. The artificially low rates also deprived the Kastel and other investors from receiving the return of on their investments that they would have received absent the interference and manipulation orchestrated by Nuveen and the Underwriter Broker Dealers. Mesirow and Nuveen had knowledge information that auctions had failed prior to August 23, 2007, that the risk of auction failure had increased and continued to increase in late 2007 and January 2008. By January Nuveen had knowledge of auction failures involving Nuveen Funds and the pending failure of more Nuveen Fund auctions that would result from Lehman Brothers' decision to discontinue propping up the Nuveen ARPS auctions as of (on or about) February 13, 2008. By January 2008 the date for the collapse of the ARPS market had been set. Lehman

Brothers' withdrawal of support triggered the simultaneous withdrawal by other Underwriter Broker Dealers. On January 28, 2008, 16 days before the Auction Market collapsed, Nuveen met with Merrill Lynch to discuss a proposal that Merrill Lynch serve as a replacement for the $2.4 billion the managed by Lehman. Nuveen and Merrill knew that the Lehman withdrawal was timed for, on or about, February 14, 2008. In fact, Lehman Brother withdrew and the market collapsed on February 13. Nuveen's Underwriter Brokers Dealers had a plan and implemented it by their parallel conduct thereby freezing the ARPS held by the Kastels and thousands of other individual investors.

29. As Broker Dealers, Mesirow and Nuveen were in the business of gathering information regarding these transaction and communicating information that would have put the Kastels on Notice of the warnings and risks, including the risk that the ARPS market could stop functioning, thereby locking up innocent investors money. This information was known in the securities business since 2004 or earlier.

30. The Kastels' relationship with Mesirow was based on trust and decency. Mesirow breached its duty of trust by knowingly misleading the Kastels in connection with their purchase of the Nuveen ARPS. Mesirow and Nuveen had fiduciary duty of utmost good faith and loyalty to the Kastels to recommend an investment only after careful study of the risks. Mesirow and Nuveen has a continuing duty to disclose all of the risks, to refrain from self dealing and to refrain from misrepresenting any material fact in respect to the ARPS. By not selling or redeeming the ARPS each week Mesirow and Nuveen were "placing orders to Hold the ARPS. In substance and fact, Mesirow and Nuveen "bought"

Case 1:09-cv-00646-UA-WWD    Document 1    Filed 08/21/2009    Page 23 of 50

the ARPS each week by not selling or redeeming the shares. Hence, each week Nuveen, as Sponsor, and the Nuveen Funds, the underwriter Broker Dealers and Deutsche Bank, were remarketing the ARPS without a Registration statement and without providing any disclosure statement as required under the securities laws. Moreover, Mesirow knew that the Nuveen North Carolina Funds were not a suitable investment for the Kastels. Although the Kastels' monies were invested in three separate Nuveen Funds, these funds carried a common risk and an overly concentrated investment that increased an already great and undisclosed risk. The ultimate breach of duty committed by Mesirow and Nuveen was the breach of trust and both are guilty. The Kastels justifiably relied on Mesirow's Misrepresentations. The Kastels' goals and objectives that were focused on liquidity and minimal risk were known to Larry Cohen and Mesirow. Mesirow not only acted as the Kastels Financial Adviser, but Mesirow, for years, acted as the Kastels' insurance agent and adviser.

31. Starting in about early November 2007 and continuing until January 2008, Howard Kastel contacted his investment adviser Larry Cohen with concerns related to the Nuveen investments. These concerns were prompted by newspaper articles referencing problems with some of the insurance companies that insured the quality of the certain underlying investments held by the funds and the effect on the credit worthiness of the Funds. Howard Kastel received repeated reassurance as to the safety of the ARPS because of their so-called 300% preference on liquidation. Unknown to the Kastels, Larry Cohen had become concerned as result of his knowledge of the liquidity risk and the continued support of the Auctions and had contacted Nuveen in about November 2007 with respect to these concerns. He never advised the Kastels of his concerns or the

24

increased risk of a market collapse and the potential freeze up that ultimately occurred in February 2008. Meanwhile Mesirow, Nuveen and the other defendants continued to be paid huge fees on a monthly basis in respect to the Nuveen Closed End Funds.

## Undisclosed Risks

32. Mesirow and Nuveen failed to disclose:

   a) The "Dutch Auction" was not an auction but an arranged, manipulated, unlawful private exchange;

   b) That by utilizing the fiction of an auction, Nuveen sponsored a process that enabled the ARPS to be sold to thousands of unsuspecting investors;

   c) Broker-Dealers under contracts with and paid by Nuveen were "propping up" the auctions to give the appearance of active trading;

   d) The ARPS were not short-term money market like liquid securities;

   e) That Nuveen reference to ARPS as "weeklies" was false and misleading;

   f) The ARPS were perpetual long term debt packaged as Preferred Shares without a maturity date;

   g) Auctions could fail and investors would be locked into ARPS at interest rates that were unconscionably low;

   h) Only the Funds had an option to redeem ARPS shares;

   i) Nuveen had no plan to redeem the illiquid APRS by causing the funds to sell assets;

   j) That the ARPS were not puttable and there was no liquidity backstop which would allow the investors to redeem their shares at par;

   k) That the ARPS preference existed only if the Fund was liquidated;

Case 1:09-cv-00646-UA-WWD    Document 1    Filed 08/21/2009    Page 25 of 50

l) The Trustees of the Funds were controlled by Nuveen and the two so-called Trustees elected by the ARPS shareholders did not sit on the board in a representative capacity;

m) Nuveen and the Fund Trustee had conflicts of interest;

n) That the SEC had brought enforcement actions in 2006 and 2007 against the Auction Broker Dealers;

o) Auctions had to be propped up because the maximum rate" was too low to create a real market for the ARPS;

p) That Mesirow's Chief Economist believed that recommending investors purchase Auction Rate Securities "was bad advice";

q) That in 2006 the SEC's municipal securities chief had stated that the way rates are actually set on auction rate securities bears little resemblance to the way the process was described in offering statements or the kind of Dutch Auctions known to most investors.

r) That as a result of insufficient investor participation at the auctions, the Underwriter Broker Dealers were able to assert almost complete control over the rates of interest paid on the Nuveen fund's ARPS.

### The Unlawful Exchange

33. For several years Nuveen sponsored and Deutsche Bank conducted an unregistered Securities Exchange, as that term is defined in the Exchange Act, in violation of that Act. The other Defendants and other large broker dealers including Nuveen were members of this unlawful exchange. This unlawful Exchange, operated by Deutsche Bank pursuant to written agreements between Nuveen and Deutsche Bank, engaged in unlawful practices that included

Case 1:09-cv-00646-UA-WWD    Document 1    Filed 08/21/2009    Page 26 of 50

artificially supporting and manipulating the so-called auction market to maintain the appearance of liquidity and stability. Each of the Defendants knew that the ARPS would become illiquid as soon as Merrill Lynch, Citigroup and Bank of America, along with other undisclosed Broker Dealers known to Nuveen and Deutsche Bank, stopped maintaining and supporting the market. The Exchange, which was established as part of the scheme, was a private organization sponsored by Nuveen with membership only open to Broker Dealers designated by Nuveen and the Nuveen Funds. The unlawful Exchange did not have safeguards required of exchanges registered with the SEC. This unregistered Exchange operated without any oversight in an opaque process . The exchange permitted its participants to favor themselves and share pricing and other information over non-member brokers. The exchange had a central facility and a limited membership and was designed to give a false appearance of active trading. In addition to operating an unregulated unlawful Securities Exchange, Nuveen and Deutsche Bank were, in effect reissuing the shares that were being sold on the Exchange, "remarketing" the shares (in the nature of Treasury shares) without a registration statement and without delivering a prospectus or disclosure statement right under the SEC's nose. In substance, the so-called auction sponsored and managed by Nuveen constituted a continuous offering of the ARPS through affiliates and underwriters. Under the securities laws, the participants were obligated to deliver an amended prospectus to the Kastels and other innocent purchasers. Nuveen and the participants failed to delivery any disclosure statements. Alternatively, because of the remarketing scheme the ARPS were not, in fact or substance, closed end funds. As a result of this scheme, the Nuveen Funds were operated and managed (limited only as to total dollar amount) as ARPS "Open end mutual funds" that required the delivery of a Prospectus to investors.

27

34. Moreover, the auction was not even an Auction. It was a managed process that permitted the Participants, including Defendant Nuveen, Deutsche Bank, Merrill Lynch, CitiGroup, and others national broker dealers, to secretly game the system and control the rates. The so-called auctions were not in fact real auctions but "arranged" transactions that involved Broker Dealers who had been Underwriters, including Nuveen, Bank of America, Merrill Lynch, and CitiGroup acting as market makers, secretly supporting the market. The Defendants knew that in a true "Dutch Auction" no bidder has knowledge of the bids submitted by other bidding thus protecting the auction process from manipulation and ensuring that the price set is truly reflective of the market.

34A. Nuveen and Mesirow had actual knowledge that investors did not receive a Prospectus or other disclosure information at the time of purchases. Nuveen knew that Mesirow and other downstream broker dealers were marketing the ARPS as short-term cash equivalents—a place to safely park an investor's money. Nuveen never intended that the risks of illiquidity be transparent to individual investors.

The Ponzi Scheme

35. By utilizing the fiction of a "Dutch Auction", Nuveen and the Nuveen Closed End Funds sponsored a process that enabled it to transfer the ARPS to unsuspecting individual investors without any disclosures. This process was a sophisticated "Ponzi Scheme" where new investors were enticed by Mesirow and other downstream brokers to purchase ARPS. This scheme permitted Nuveen and the other Underwriter Broker Dealers to siphon off large fees. Like any Ponzi

28

Scheme, the perpetrators required new investors to bring in new money to pay off the old investors and keep the cycle going. The plan and process also constituted an unlawful conspiracy. Nuveen and the Underwriter Broker Dealers knew that to keep the Scheme going they needed a constant flow of new money. They also knew that if they could not entice downstream broker dealers to keep the flow of new investors, the Scheme would fail. Nuveen caused the downstream broker dealers to receive misleading, incomplete, inadequate, mostly word of mouth fragments of information regarding the risks associated with the ARPS. Notwithstanding, Mesirow and the downstream broker dealers had independent obligations to know and understand the investments securities being sold to their clients, Nuveen assumed its reputation would lull Mesirow and the other downstream brokers into a state of complacency. On information and belief, Nuveen knew that most investors had no information regarding the risks. Nuveen, and, on information and belief Robert Bremner and the Nuveen Funds' Board of Trustees, knew that downstream broker dealers were marketing Auction Rate Securities as "the conservative's conservative" investment. Because Nuveen was the co-broker in connection with Mesirow transactions, Nuveen had the same obligations to Mesirow's customers.

36. Nuveen's Scheme was always contingent on getting a continuous flow of investors' dollars. The Scheme was propped up for years by the Underwriter Broker Dealers (which included Nuveen). They acted in concert with Deutsche Bank, Nuveen's Auction Agent, and the Underwriter Broker Dealers. The Underwriter Broker Dealers and the Auction Agents were paid by Nuveen and the Nuveen Funds. By intervening in the Auctions, the Underwriter Broker Dealers created a reasonable belief that the auctions were successful and that there was a

29

highly liquid market for these securities. By 2006 Nuveen, Deutsche Bank and the Underwriter Broker Dealers knew the auctions would fail but for the undisclosed support that was escalating the risks of a melt down. Nuveen's ARPS were only liquid as long as Nuveen could rely on the Underwriter Broker Dealers to prop up the auction markets. Nuveen also knew that the Underwriter Broker Dealers took the position that they were not under any legal obligation to continue propping up the market and intended to do so only as long as they deemed that was profitable.

37. Starting sometime in 2007, the exact time of which is known to Nuveen, Deutsche Bank and the Underwriter Broker Dealers, the members of the unregulated Exchange, devised a secret plan to sell off the shares they held and to stop propping up the market, thereby rendering the Nuveen ARPS held by the Kastels and other Nuveen Investors illiquid. By reason of the February 2008 freeze, Nuveen no longer needed the continuous flow of new funds. It had locked the investor's money and frozen the ARPS owned by thousands of individual investors. Until investors can obtain relief from the Court, Nuveen and the Nuveen Funds have the funds. As a result of the Ponzi Scheme and the "so called" maximum rate provided for in the undisclosed risks, the perpetual ARPS pay only about one half of one per cent interest (.534%), less than ten per cent of an appropriate rate of return for a similar security. Meanwhile, Nuveen recently announced that it had entered into a six-year loan agreement at a fixed interest of 12.5% and as a result of the fact that the loan was issued at 90 cents on the dollar, the return to investors is 15.08%.

38. The Ponzi Scheme constitutes "Theft by Deception" and "Obtaining Property Under False Pretenses" as stated or provided in North Carolina General Statutes Section 14-100. The Nuveen Funds cannot and should not keep these monies that

30

belong to the Kastels and other Investors. Nuveen and the Nuveen North Carolina Funds are treating the ARPS money as a windfall. As of 2008 the ARPS issued by Nuveen Closed End Funds generated roughly $1 billion in fees. Nuveen has always intended to treat the ARPS as equity securities. According to Nuveen's Chief Administrative Officer (Earnings Call Transcript March 3, 2008): "...there is $15 billion, roughly 55 to 60 basis points...the preferred securities related to our closed-end funds are perpetual; they're equity securities, so there is no maturity related to those shares...there's no contractual need to de-lever on a maturity in the security." Mesirow aided and abetted this scheme by failing to properly investigate the risks and by not informing the Kastels and other investors of the risks and unlawful practices. Mesirow by reason of this conduct is guilty of Fraud and Negligent Misrepresentation.

39. Auction Rate Securities represented an ingenious attempt to make a square appear to be a circle: to create a complex funding instrument that appeared to be long-term from the perspective of the borrowers, the Nuveen Closed End Municipal Funds and specifically, the North Carolina Municipal Funds that the Kastels invested in, but short-term from the perspective of the lenders, the investors in the Funds. After February 2008, the unsuspecting investors discovered what Nuveen, Deutsche Bank and the Defendant Underwriter Broker Dealers knew, that: "SUCH AN ARRANGEMENT WAS IMPOSSIBLE. If a funding instrument is long-term for one party, it must be long-term for the counterparty; any appearance to the contrary must be an illusion." (Chicago Fed, The Federal Reserve of Chicago Letter Number 256 dated November 2008)[Emphasis added]

40. Nuveen created the "illusion" that the "ARPS ... had a long history and a widespread reputation as both providing attractive after-tax returns and being highly liquid". (Letter on behalf of certain Nuveen ARPS Funds filed with SEC by its Counsel on July 27,2009). The illusion was further advanced by Nuveen's ARPS marketing materials which stated "Nuveen Munipreferred, A Great Place for Short Term Money". The materials contained limited, but nevertheless misleading and incomplete disclosures that were, on information and belief, seen by few investors and were discovered by the Kastels on March 11, 2009. Finally, perpetuation of the illusion that underpinned the Nuveen's fraudulent scheme depended on the willful blindness of the downstream broker dealers and the their intentional failure to heed the warnings published by the SEC, the Big-4 auditors and the advisory of some broker dealers who refused to go along with the ruse. Days before Mesirow invested almost all the Kastel moneys in the Nuveen North Carolina ARPS, an advisory issued by a leading Financial Group published a warning that Auction Rate Securities "the slight yield advantage available today does not merit the INHERENT RISKS...." (SVB Financial Group Advisory date August 15, 2007. The Kastel discovered this Advisory in 2009.

41. Nuveen has also engaged in a further Scheme to lull its ARPS Municipal Fund Investors and the SEC and other regulatory agencies into believing that it had a plan to redeem all of it ARPS. Nuveen has been issuing press releases and statements that it is doing all it can to redeem all of its municipal ARPS. The true facts are that Nuveen intends to do nothing that will reduce the leverage of its common shareholder or reduce the fees it pays itself for managing the funds. In June 2009 Nuveen redeemed two Shares of North Carolina ARPS held by the Howard L. Kastel Trust. The redemption took place in the Howard L. Kastel Trust

Case 1:09-cv-00646-UA-WWD    Document 1    Filed 08/21/2009    Page 32 of 50

account at Mesirow. At the time of this redemption, the account still held 80 ARPS shares. The redemption represented less than 3% of the Kastel frozen ARPS. In re response to a statement by Kastel "that at this rate I will have to live to 110 to get my money back", a Mesirow Investment Advisor stated that the redemption was a one time occurrence and Mesirow has no definitive plan to redeem any more of the Kastels' ARPS shares. None of Joan Kastel's shares have been redeemed. The lack of a definitive plan was confirmed in Nuveen letter to Howard Kastel dated July 17, 2009: "We understand your frustration regarding the fact that to date only a small portion of your ARPS have been redeemed and that WE CANNOT PROVIDE YOU WITH A SPECIFIC TIMETABLE AS TO WHEN AND IF YOUR REMAINING ARPS WILL BE REDEEMED".

42. Incredible as it appears, Nuveen has redeemed Nuveen North Carolina ARPS held by Defendants Deutsch Bank, Merrill Lynch, Bank of America, CitiGroup and other broker dealers who participated in Nuveen's unlawful scheme.

## LOSS CAUSATION/ECONOMIC LOSS

43. As alleged above, Defendants engaged in a scheme and course of conduct to sponsor, create, maintain, prop up and perpetuate, for their own benefit, an artificial market for Nuveen North Carolina ARPS in order to inflate the perceived value of these securities and all Nuveen ARPS and to generate underwriting fees, auction management fees, trail fees and other fees to the detriment of innocent investors including the Kastels.

44. This Scheme and course of conduct operated as a fraud and deceit on Plaintiffs, by omitting to disclose material foreseeable risks concerning the market

33

for sale and redemption of the ARPS and the value, and liquidity risks of these investments. The materialization of the risks concealed from the Kastels was foreseeable. These risks materialized when the auction market collapsed on February 13, 2008. The Defendant knew that the ARPS auction market would collapse at the time the Underwriter Broker Dealers, specifically Nuveen, Merrill Lynch, Citigroup and Deutsche withdrew their support and the fraud became apparent to the investing public. Materialization of these risks and their subsequent disclosure, directly or proximately, caused the damages sustained by the Plaintiffs.

45. But for the Defendants omissions and false and misleading statements of material facts, the Kastels would not have permitted Mesirow and Nuveen to purchase the Nuveen North Carolina ARPS for their accounts.

46. But for the Defendants wrongful, fraudulent and deceptive conduct, the interest and dividend rates before and after the February 2008 auction collapse would have been substantially higher then the plaintiffs received for the Nuveen ARPS they purchased since 2003, including the Nuveen North Carolina ARPS. The Defendants deceptive conduct caused the interest rates to be artificially low, considerably lower than the rates that the market would have placed on them had the investing public been aware of the true characteristics and risks of the Nuveen ARPS. Given a higher interest rate, the Kastels would have received higher dollar amounts of interest and would have been able to purchase the ARPS at lower rates sufficient to compensate for the lack of liquidity and other undisclosed risks.

47. As a result of the concealed risks, the Defendants received huge and excessive fees and unconscionably high income and profits that they should be required to disgorge.

34

48. As a result of the materialization of the concealed risks, the perceived value of the ARPS has declined substantially. Finally, the interest and dividends paid to the Kastels is fraction of the interest sufficient to compensate the Kastels for the lack of liquidity and other risks inherent in the securities.

## COUNT I
## DECLARATORY JUDGEMENT AGAIN MESIROW

49. The Kastels repeat and reallege the allegations set forth in Paragraphs 1 through 48 above as if set forth herein.

50. An actual justiciable controversy exists between the Kastels and Mesirow concerning whether said Defendants have an obligation to repurchase the Kastel's ARPS.

51. That the claims set forth herein are not subject to an Agreement to Arbitrate and That Mesirow has an obligation to repurchase the ARPS purchased for the Kastels. Accounts and ordering Mesirow to repurchase said ARPS.

## COUNT II
## BREACH OF FIDUCIARY DUTY AGAINST
## MESIROW AND NUVEEN

52. The Kastels repeat and reallege the allegations set forth in paragraphs 1 through 51 above as if set forth herein.

53. The Kastels placed trust and confidence in Mesirow Financial based upon their reputation. By reason of Nuveen acting as co-broker and sharing the fees paid in

35

respect to the Kastels' ARPS shares they are liable along with Mesirow Financial for and in respect to said breach. The Kastel reasonably relied on the purported expertise of Mesirow Financial in bestowing trust and confidence on Mesirow Financial.

54. Mesirow Financial accepted responsibility and the trust and confidence of the Kastels and thereby assumed a fiduciary duty to the Kastels. Mesirow Financial breached its fiduciary duty to the Kastels by investing in the ARPS that did not comply with the Kastel's stated investment goals and objectives. Mesirow Financial and Nuveen Investments breached their fiduciary duty by intentionally misleading the Kastels into believing that the ARPS were safe and liquid.

55. The Kastels have suffered and will continue to suffer damage and financial loss as a result of Mesirow Financial and Nuveen Investments breaches of duty.

## COUNT III

## VIOLATIONS OF SECTION 10(b) OF THE
## EXCHANGE ACT AND RULE 10 (b) 5 ALL DEFENDANTS

56. The Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 through 55 above as if set forth herein.

57. From February 2003 to February 13, 2008 the Defendants employed manipulative and deceptive devices in violation of Rule 10b-5 promulgated by the SEC, which devices were intended to and deceived the investing public, including the Kastels enabling the Defendants to sell $millions of ARPS to the Kastels including $2.2 million of the securities of the Nuveen North Carolina

36

Funds on which the Defendants made substantial fees and commissions and caused the Kastels to purchase overvalued ARPS from the Defendants including Mesirow And Nuveen.

58. Defendants, jointly and severally (and each of them) engaged in a scheme to defraud and made untrue statements, in light of the circumstances under which they were made, misleading, in violation of Section 10 (b) of the Exchange Act and Rule 10b-5.

59. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

60. Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentations of interstate commerce and/or of the mails, engaged and participated in a comprehensive scheme to defraud and a continuous course of conduct to conceal adverse material information about auction rate securities.

61. The information that Defendants failed to disclose to the Kastels was material information and altered the total mix of information about ARPS made available.

62. Defendants employed manipulative and deceptive devices and contrivances, while in the possession of material adverse information, and engaged in acts, practices and a course of conduct as alleged herein in an effort to assure the Kastels and other individual investors that the ARPS were substantially the same as cash and were highly liquid, safe short-term investment vehicles suitable for the Kastels.

63. Defendants had actual knowledge of the misrepresentations and omissions of material fact or acted with deliberate disregard for the truth in that they failed to ascertain and to disclose such facts. Defendants made the material misrepresentations and/or admissions hereinabove describe for the purpose and

37

effect of (a) concealing the truth about the value, liquidity and risks of the ARPS and (b) supporting the overvalued price and low interest rates for the ARPS.

64. If Bremner or Mesirow did not have the actual knowledge of the misrepresentations and omissions alleged herein, they were reckless in failing to obtain such knowledge and refraining from taking steps necessary to discover that those statements were false and misleading. As a result of the dissemination of the materially false and misleading information the interest rates paid in respect to the ARPS were artificially low and the prices artificially high.

65. At the time of the misrepresentations and omissions, the Kastels were ignorant of their falsity and believed them to be true. The Kastels acted with due diligence, did not act with recklessness and could not have discovered the true facts that Defendants misstated and or failed to disclose.

66. By virtue of the foregoing, Defendants have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

## COUNT IV
## VIOLATION OF SECTION 20 (A) OF THE EXCHANGE ACT AGAINST ROBERT P. BREMNER, CHAIRMAN OF THE NUVEEN FUND BOARD

67. The Kastels repeat and reallege the allegations set forth in paragraphs 1 through 66 above as if set forth herein.

38

68. Bremner acted as controlling person of the Nuveen North Carolina Funds within the meaning of Section 20(a) of the Exchange Act for reasons alleged in this Complaint. By virtue of Board's statutory responsibility and management control of the Nuveen North Carolina Funds business and involvement in the business and conduct of the Nuveen North Carolina Funds. Bremner and the Board had the power to influence and control and did influence and control, directly or indirectly, the decision making and actions of the Nuveen North Carolina Funds. Bremner and the Board had the power to cause the Funds to discontinue the unlawful practices that Nuveen Investments had instigated and promoted. Bremner had the power, along with other Board members, to stop the Funds participation in the Ponzi scheme. By virtue of his position as a controlling person he liable pursuant to Section 20(a) of the Exchange Act.

## COUNT V
## FRAUD BY ALL DEFENDANTS EXCEPT BREMNER

69. The Kastels repeat and reallege the allegations set forth in paragraphs 1 through 68 above as if set forth herein.

70. All of said Defendants, and each of them, acted in concert and made material misrepresentations or omissions to the Kastels and other investors in the Nuveen North Carolina Funds with knowledge that those misrepresentations or omissions would be justifiably relied upon by the Kastels in connection with the Kastels decision not to sell the Nuveen North Carolina ARPS prior the time that the auction market process collapsed in February 2008. All of said defendants participated in the operation of the unlawful exchange and the Ponzi described herein and engaged in

39

manipulation and other legal acts and liable to the Kastels and other individual investors in the Nuveen North Carolina Funds;

71. Mesirow and Nuveen, and each of them, provided the Kastels with false information regarding the liquidity of the ARPS and failed to disclose other information that led the Kastels to believe the Nuveen North Carolina ARPS investments conformed with their stated investment goals although Mesirow knew and Nuveen is charged with knowing, as co-broker, that the illiquidity of the ARPS did not meet said investment goals;

72. That the Kastels justifiably relied upon Mesirow's and Nuveen's misrepresentations and omissions of material fact leading to the Kastel suffering damages and financial loss;

73. The Kastels were damaged by the unlawful acts participated in and perpetrated by said all of the Defendants.


COUNT VI

NEGILGENT MISREPRESENTATION AGAINST
MESIROW AND NUVEEN

74. The Kastels repeat and reallege the allegations set forth in paragraphs 1 through 73above as if set forth herein.

75. Mesirow and Nuveen had an affirmative duty to provide the Kastels with all the material information regarding risks associated with the Nuveen North Carolina ARPS investments, Nuveen's role in sponsoring the ARPS auction process and risks associated with the potential collapse of the ARPS auction process.

76. Mesirow and Nuveen did not exercise due care in obtaining or communicating information to the Kastels. Mesirow and Nuveen

Case 1:09-cv-00646-UA-WWD    Document 1    Filed 08/21/2009    Page 40 of 50

negligently made material representations in the course of their business as stated above and knew or should have known that their representations were false.

77. Mesirow and Nuveen made these representations with the intent that the Kastels would be induced to act and the Kastels justifiably relied leading the Kastels to suffer damages and financial loss.

## COUNT VII
## RESCISSION AND RELATED RELIEF UNDER THE ILLINOIS ACT 815 ILCS 5/1, et seq. AGAINST MESIROW, NUVEEN AND DEUTSCHE BANK

78. The Kastels repeat and reallege the allegations set forth in paragraphs 1 through 77 above as if set forth herein.

79. Mesirow, Nuveen and Deutsche Bank violated the Act by:

    a. engaging in transactions, practices and a course of business in connection with the sales of Nuveen North Carolina ARPS which worked a fraud or deceit on the Kastels;

    b. obtaining money through the sale of Nuveen North Carolina ARPS by means of untrue statements of material facts and omissions to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading;

    c. employing devices, schemes and artifices to defraud the Kastels in connection with purchase of the Nuveen North Carolina ARPS;

41

d. offering and selling Nuveen North Carolina ARPS in noncompliance with the Illinois Securities Act;

80. Mesirow, Nuveen and Deutsche Bank are securities dealers as defined in the Act.

81. The Kastels properly and timely exercised their right to void and rescind their Nuveen North Carolina investments.

82. Mesirow, Nuveen and Deutsche Bank have failed and refused to return the monies paid by the Kastels.

83. Mesirow's, Nuveen's and Deutsche Bank's actions constitute a violation of the Illinois Securities Act, 815 ILCS 5/1, et seq.

84. Mesirow, Nuveen and Deutsche Bank are jointly and severally liable to the Kastels for the full amount paid together with interest from the dates of payment at the rate of 10% less any dividends paid by the Nuveen North Carolina Funds to the Kastels together with reasonable attorneys fees and costs as provided in the Act.

## COUNT VIII
## RESCISSION AND RELATED RELIEF UNDER
## NORTH CAROLINA STATUTES SECTION 78A-56
## AGAINST MESIROW, NUVEEN AND DEUTSCHE BANK

85. The Kastels repeat and reallege the allegations set forth in paragraphs 1 through 77 above as if set forth herein.

86. Mesirow, Nuveen and Deutsche Bank violated the Securities Act of North Carolina and specifically Section 78-56 by selling Nuveen North Carolina ARPS to the Kastels by means of untrue statements of material facts and

42

omissions to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

87. The Kastels did not know that the statements made were untrue or contained omissions of material facts.

88. Mesirow, Nuveen and Deutsche Bank acted willfully and materially aided each other in making said statement omissions.

89. The Kastels have made timely demands to recover the monies paid by certified mail addressed to said Defendants.

90. No offer to repurchase the ARPS has been made by said Defendants

## COUNT IX
## THEFT BY DECEPTION AND OBTAINING
## PROPERTY BY FALSE PRETENSES BY ALL OF
## THE DEFENDANTS

91. The Kastels repeat and allege the allegations set forth in paragraphs 1 through 77 as if set forth herein.

92. A person is guilty of theft by deception if it, he or they intentionally obtain or withhold property of another by deception. All of the Defendants are persons under the law. The Defendant Bremner is sued as the Chairman of the Board of the Nuveen Funds. Bremner and the Board permitted the Funds to obtain the Kastel's and other individual investors money under False Pretenses.

93. The Defendants knowingly, and by means of false pretense, obtained from the Kastels monies in their accounts at Mesirow with the intent to cheat and

43

defraud the Kastels. The amount of said property is more than $300,000 and constitutes a felony under North Carolina General Statute Section 14-100. The Defendants have failed to correct their deception and return the monies wrongfully taken.

94. The Defendants actions constituted a Tort under applicable law.


## COUNT X

## COMMISSION OF THE TORT OF INTENTIONAL OR NEGILGENT INFLICTION OF EMOTIONAL DISTRESS BY MESIROW, NUVEEN AND THE NUVEEN NORTH CAROLINA FUNDS

95. The Kastel repeat and reallege the allegations set forth in paragraphs 1 through 77 above as if set forth herein.

96. A person or corporation is guilty of the Tort of intentional infliction of emotional distress by reason of extreme and outrageous conduct, which is intended to cause and does in fact cause severe emotional distress.

97. It was reasonably foreseeable that the wrongful conduct of said Defendants that continues to this would cause severe emotional distress to the Kastels and to other innocent investors in Nuveen Fund ARPS.

98. These Defendants compounded this tortuous conduct by repeated suggesting they had a plan to redeem Plaintiffs when knew that that these statements were false and misleading and would cause the Kastels to have false hopes that they would be whole.

44

99. The Defendants further compounded this tortuous conduct by repeatedly suggesting that the Kastels be patient notwithstanding that they would not agree to redeem the Kastels ARPS in the Kastel's lifetime and that the Kastels would have to abandon their retirement plan.

100.    The Kastels' allegation of Fraud, Theft by Deception and Obtaining Monies by False Pretenses, continue after 18 months since the ARPS collapsed and Mesirow's refusal to Funds refusal to rescind the fraudulent ARPS transaction and Nuveen and the Nuveen Funds refusal to redeem the Kastels' ARPS constitute evidence of the extreme and outrageous conduct that is the basis of this claim.

101.    The conduct of Mesirow, Nuveen and the Nuveen Funds constitutes a Tort under applicable law.


WHEREFORE, The Howard L. Kastel Trust and Joan H. Kastel pray for:

A. Judgment against Mesirow Financial Inc and Nuveen Investments Inc on Count I of this Complaint as follows:

    1. Declaring that the claims against Mesirow Financial are not subject Arbitration;

    2. Declaring that Mesirow Financial and Nuveen Investments are jointly and severally liable to repurchase or cause the Nuveen North Carolina Funds to redeem the ARPS purchased by the Kastels;

    3. Ordering Mesirow Financial and Nuveen Investments Inc to repurchase or cause the Nuveen North Carolina Funds to redeem the ARPS purchased by the Kastels;

    4. Awarding the Kastels interest and costs attorney's fees and such further relief as the Court deems just and proper.

B.  Judgment against Mesirow Financial and Nuveen Investments Inc as follows:

    1. Declaring the Cash Account Agreement executed individually by Howard L. Kastel, Dated August 15, 1989, void and unenforceable;

    2. Rescinding the Client Agreement between Joan H. Kastel and Mesirow Financial and returning the funds that the Kastels entrusted to said Defendants;

    3) Disgorging all profits earned by Mesirow and Nuveen through the purchase and sale of the North Carolina ARPS;

    4) Awarding Compensatory and Punitive and Exemplary Damages;

    5) Awarding pre and post judgment interest;

    6) Awarding the Kastels reasonable attorney fees and costs and

    7) Awarding the Kastels such further relief as the Court deems just and proper.

C. Judgment against all Defendants for violations of Section 10(b) of the Exchange Act and Rule 10(b)5 against all Defendants as follows:

    1) Awarding the Kastels damages not limited to rescission, recessional damages, restitution, disgorgement of ill-gotten gains and profits. compensatory and punitive and exemplary damages as provided for under law and equity Federal Laws, jointly and severally;

    2) Awarding pre and post judgment interest;

    3) Awarding extraordinary, equitable and injunctive relief, appointment of an Independent Trustee as ;

46

4) Awarding the Kastels interest and costs and attorney's fees and such further relief as the Court deems just and proper.

D. Judgment against Robert P. Bremner and the Nuveen North Carolina Funds as follows:

1) Awarding the Kastels damages not limited to redemption of the Kastels ARPS;

2) Awarding the Kastels a temporary and permanent injunction against paying interest or dividends to common shareholders of the Nuveen North Carolina Funds , making any investments other than short-term cash equivalents investments and appointing an Independent Trustee to carry out the orders of this Court pending redemption and payment of all monies due to the Kastel and other individual investors in the Nuveen North Carolina Funds and such other equitable relief as the Court shall determine is just and fair to protect the ARPS shareholders against further loss or damages;

3) Awarding the Kastels interest and costs attorney's fees and such other relief as the Court deems just and fair.

E. Judgment against all Defendants for Fraud and Against Mesirow and Nuveen for Negligent Misrepresentation as follows:

1) Rescinding the transactions and redeeming the ARPS shares held in the Kastels' accounts;

2) Disgorging all profits and income received by said Defendants in respect to all Nuveen ARPS purchased for the Kastel accounts since January 2003.

47

3) Awarding compensatory, punitive and exemplary damages as well as pre and post judgment interest;

4) Awarding the Kastels costs and attorney's fees and such other relief as the Court deems just and proper.

F. Judgment against Mesirow, Nuveen and Deutsche Bank for violation of the Illinois Securities Act as follows:

1) Declaring the sale of the North Carolina ARPS void and ordering the full amount paid for said ARPS, together with pre and post judgment interest at the rate of 10% less any amounts received by the Kastels;

2) Awarding the Kastels attorney fees and costs and such other relief as provided for in Section 5/13 of the ACT.

G. Judgment against Mesirow, Nuveen and Deutsche for violation of the North Carolina Securities ACT specifically Section 78A-56 as follows:

1) Repay amounts that the Kastels paid for the Nuveen North Carolina ARPS together with interest at the legal rate, costs and attorney's fees less the amount of income received by the Kastels on the ARPS;

2) Declare that said rights and remedies are in addition to any other rights that the Kastels at law or in equity as herein and above prayed for in this complaint and punitive damages as provided for;

3) Such other relief as the Court deems just and proper.

H. Judgment against All Defendants for the crime of theft by deception and obtaining property under false pretenses as follows.

48

1) By reason of the fraud perpetrated as above described and in the case of the Funds the receipt of the Kastels' monies from the Kastel Accounts at Mesirow, the Defendants repay amounts that the Kastels Nuveen North Carolina ARPS with interest;

2) Disgorge all profits earned by the Defendants for the ARPs sold by fraud and deception to the Kastel and North Carolina investors;.

3) Award compensatory and Punitive and Exemplary damages to the Kastels;

4) Award pre and post judgment interest and reasonable attorney's fees and costs to the Kastels;

5) Award the Kastels such further relief as the Court deems just and proper.

I. Judgment against Mesirow, Nuveen and Nuveen North Carolina Funds

1) Award the Kastels damages not less than three times the amount taken and withheld from the Kastels as shall be determined by the by the jury at trial for the emotional distress suffered by the Kastels by reason of these Defendants intentional and extreme and outrageous conduct in refusing to redeem the Kastels' ARPS;

JURY TRIAL DEMANDED

The Plaintiffs, Howard L. Kastel Trustee under the Howard L. Kastel Trust dated November 13, 1985 and Joan H. Kastel hereby respectfully demand a trial by jury.

49

Dated:  August 21, 2009

Respectfully submitted

Howard L. Kastel

919-933-3181

10393 Holt

Chapel Hill, North Carolina 27517

N.C. State Bar #34615

Admitted to Practice before the U.S. District

Court for the Middle District of North Carolina