# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
## GREENSBORO DIVISION
Civil Action No. 1:09-CV-646

HOWARD KASTEL, TRUSTEE of the
HOWARD L. KASTEL TRUST DATED
NOVEMBER 13, 1985 and JOAN H. KASTEL,

    Plaintiffs,

    v.

NUVEEN INVESTMENTS, INC.,
ROBERT P. BREMNER,
MESIROW FINANCIAL INC.,
DEUTSCHE BANK AG,
MERRILL LYNCH & CO., INC.
AND CITIGROUP GLOBAL MARKETS,

    Defendants.

 

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS MERRILL LYNCH & CO. AND MERRILL LYNCH,
## PIERCE, FENNER & SMITH, INCORPORATED'S MOTION
## <u>TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT</u>

# TABLE OF CONTENTS

I.   PRELIMINARY STATEMENT ........................................................................... 1

II.  FACTUAL ALLEGATIONS ............................................................................... 2

    A.   The ARS Market .................................................................................. 2

    B.   Plaintiffs' Investments In ARS ........................................................... 5

    C.   The Collapse Of The ARS Market ...................................................... 6

III. ARGUMENT ...................................................................................................... 7

    A.   The Complaint Fails To State A Claim Under Section 10(b)
       And Rule 10-B(5)................................................................................. 8

         1.   Plaintiffs Have Failed To State A Market Manipulation
            Claim. ...................................................................................... 8

    B.   Plaintiffs Have Failed To State A Disclosure Claim. ................................ 16

         1.   The Complaint Fails To Identify A Misrepresentation
            Or Omission By Merrill Lynch. ............................................... 17

         2.   The Complaint Fails To Plead Adequately The
            Remaining Elements. ............................................................... 18

    C.   Plaintiffs' Claim For Common Law Fraud Fails ........................................ 19

    D.   Plaintiffs' Claim For Theft By Deception Or Obtaining
       Property By False Pretenses Also Fails...................................................... 19

IV.  CONCLUSION .................................................................................................. 20

# TABLE OF AUTHORITIES

## *Cases*

*Affiliated Ute Citizens v. United States*
    406 U.S. 128 (1972) ............................................................ 13

*Ashcroft v. Iqbal*
    129 S. Ct. 1937 (2009) ........................................................ 7

*Ashland Inc. v. Morgan Stanley & Co.*
    2010 WL 1253932 (S.D.N.Y. Mar. 20, 2010) ............................ 15

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*
    493 F.3d 87 (2d Cir. 2007) ............................................... 3, 8

*Bell Atlantic Corp. v. Twombly*
    550 U.S. 544 (2007) ............................................................ 7

*Central Bank of Denver v. First Interstate Bank of Denver*
    511 U.S. 164 (1994) .......................................................... 17

*Chiarella v. United States*
    445 U.S. 222 (1980) .......................................................... 17

*Davidoff v. Farina*
    2005 WL 2030501 (S.D.N.Y. Aug. 22, 2005) ......................... 15

*Defer LP v. Raymond James Finance, Inc.*
    654 F. Supp. 2d 204 (S.D.N.Y. 2009) .................................. 15

*Desai v. Deutsche Bank Securities Ltd.*
    573 F.3d 931 (9th Cir. 2009) ............................................. 13

*Fortson v. Winstead, McGuire, Sechrest & Minick*
    961 F.2d 469 (4th Cir. 1992) ............................................. 17

*Harrison v. Westinghouse Savannah River*
    352 F.3d 921 ................................................................... 10

*Harsco Corp. v. Segui*
    91 F.3d 337 (2d Cir. 1996) ........................................... 12, 18

*Heliotrope General, Inc. v. Ford Motor Co.*
    189 F.3d 971 (9th Cir. 1999) ................................................................. 13

*In re Citigroup*
    2009 WL 2914370 (S.D.N.Y Sept. 11, 2009) ............................. 9, 12, 15

*In re IPO Sec. Litigation*
    471 F.3d 42 ............................................................................................. 13

*In re Loral Space & Comm'ns Ltd. Sec. Litigation*
    2004 WL 376442 (S.D.N.Y. Feb. 27, 2004) ......................................... 14

*In re Merrill Lynch ARS Litigation*
    2010 WL 1257597 ................................................................ 1, 11, 12, 13

*In re Mutual Funds Invest. Litigation*
    566 F.3d 111 (4th Cir. 2009) ................................................................ 16

*In re WOW Sec. Litigation*
    35 F.3d 1407 (9th Cir. 1994) ................................................................ 14

*Johnson v. Pozen Inc.*
    2009 WL 426235 (M.D.N.C. Feb. 19, 2009) ......................................... 3

*Joseph v. Wiles*
    223 F.3d 1155 (10th Cir. 2000) ............................................................ 13

*Juntti v. Prudential-Bache Sec., Inc.*
    No. 92-2066 (4th Cir., May 3, 1993) ...................................................... 8

*Kalnit v. Eichler*
    264 F.3d 131 (2d Cir. 2001) ................................................................. 15

*Lentell v. Merrill Lynch & Co., Inc.*
    396 F.3d 161 (2d Cir. 2005) ............................................................. 7, 18

*Longman v. Food Lion, Inc.*
    197 F.3d 675 (4th Cir. 1999) ........................................................... 17, 18

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*
    547 U.S. 71 (2006) ............................................................................... 16

iii

*Moore v. PaineWebber, Inc.*
  306 F.3d 1247 (2d Cir. 2002) ................................................................. 17

*Ottmann v. Hanger Orthopedic Group, Inc.*
  353 F.3d 338 (4th Cir. 2003) ................................................................. 14

*Phillips v. LCI Intern., Inc.*
  190 F.3d 609 (4th Cir. 1999) ................................................................. 15

*Piper v. Chris-Craft Industrial, Inc.*
  430 U.S. 1 (1977) ................................................................................. 13

*Public Employees' Retirement Association of Colorado v. Deloitte & Touche LLP*
  551 F.3d 305 (4th Cir. 2009) ................................................................... 8

*Ragsdale v. Kennedy*
  286 N.C. 130 (N.C. 1974) ...................................................................... 19

*Santa Fe Industrial, Inc. v. Green*
  97 S. Ct. 1292 (1977) ........................................................................... 11

*Starr ex rel. Estate of Sampson v. Georgeson Shareholder, Inc.*
  412 F.3d 103 (2d Cir. 2005) ................................................................... 12

*State v. Wright*
  685 S.E.2d 109 (N.C. App. Ct. 2009) ...................................................... 19

*Stoneridge Investment Partners, LLC v. Scientific-Atlanta, Inc.*
  128 S. Ct. 761 (2008) ........................................................................... 16

*Teague v. Bakker*
  35 F.3d 978 (4th Cir. 1994) ................................................................... 17

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*
  551 U.S. 308 (2007) ............................................................................. 14

*Thomas H. Lee Equity Fund V, L.P. v. Mayer Brown, Rowe & Maw LLP*
  612 F. Supp. 2d 267 (S.D.N.Y. 2009) ................................................. 9, 18

*Zaremski v. Keystone Title Associates, Inc.*
  884 F.2d 1391 (4th Cir. 1989) ................................................................. 9

## Statutes

15 U.S.C. § 78u-4 ......................................................................................................... 16

15 U.S.C. § 78u-4(b)(2).................................................................................................. 18

15 U.S.C. § 78u-4(b)(1).................................................................................................. 14

Fed. R. Civ. P. 9(b) ....................................................................................................... 16

Fed. R. Evid. 201(b)(2).................................................................................................... 3

N.C. Gen. Stat. § 14-100(a) ........................................................................................... 19

Defendants Merrill Lynch & Co., Inc. and Merrill Lynch, Pierce, Fenner & Smith Incorporated ("Merrill Lynch")[1] respectfully submit this memorandum of law in support of their motion to dismiss Plaintiffs' First Amended Complaint ("Complaint") pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure.

## I.
## PRELIMINARY STATEMENT

Plaintiffs' claims against Merrill Lynch should be dismissed. They are premised on Plaintiffs' purchase of auction rate securities ("ARS"), but Merrill Lynch did not make any representations about ARS to Plaintiffs, did not send Plaintiffs any written materials about ARS, did not sell Plaintiffs any ARS, and more specifically did not sell Plaintiffs the ARS that are at issue in this lawsuit. Merrill Lynch is nothing more than a tangential fellow investor that, like Plaintiffs, purchased ARS in the market. Although the Complaint is wholly devoid of any relationship between Plaintiffs and Merrill Lynch, Plaintiffs try to claim that Merrill Lynch is responsible for their investment losses. The law does not countenance such a fanciful claim.

Moreover, even if Plaintiffs had plausibly alleged a direct claim against Merrill Lynch, that claim would fail as a matter of law. Recently, in a multidistrict litigation action pending in the Southern District of New York, the court dismissed claims substantially identical to Plaintiffs' allegations on the ground that securities fraud claims founded on allegations that a broker-dealer intervened in the auction market fail *as a matter of law* when the broker-dealer has fully disclosed the very conduct of which plaintiff complains. *In re Merrill Lynch ARS Litig.*, No. 09-md-2030, 2010 WL 1257597,

---

[1]      The Complaint impermissibly lumps Merrill Lynch & Co., Inc. and Merrill Lynch, Pierce, Fenner & Smith Inc. together as "Merrill Lynch." (*See* Compl. ¶ 16). For purposes of this motion only, Defendants refer to "Merrill Lynch" without distinguishing between the two entities.

1

at *10-12 (S.D.N.Y. Mar. 31, 2010). Because Merrill Lynch expressly disclosed its participation in the ARS market, the court held that claims by purchasers of ARS **underwritten by Merrill Lynch** could not survive a motion to dismiss. *Id.* at *22. If claimants who only have a remote connection between their investment and Merrill Lynch cannot sustain securities fraud claims, then surely the Plaintiffs herein, who allege no association with Merrill Lynch whatsoever, cannot prevail on their tenuous claims, particularly in the light of the extensive disclosures Merrill Lynch made to the ARS market and investors.

## II.
## FACTUAL ALLEGATIONS

### A.   THE ARS MARKET

This litigation stems from investments made by Mr. Kastel in ARS through various accounts with Mesirow Financial Inc. ("Mesirow"), a broker-dealer and investment consultant.[2]  (Compl. ¶ 30).  ARS were securities that have long-term maturities and pay varied interest rates based on periodic "Dutch auctions."  (*See id.* ¶¶ 2, 12, 24).  Publicly-traded ARS consisted mainly of debt instruments, including corporate bonds, municipal bonds, and preferred shares issued by closed-end funds.  (*See id.* ¶ 24). Under the auction system, current and prospective investors submitted bids through a broker-dealer, and based on the bids, the auction agent set the interest rate for the next period at the lowest rate of return at which all of the available securities would be purchased or held.  If insufficient bids existed, then the auction "failed," and the current

---

[2]     Mr. Kastel first opened an account with Mesirow in 1988, under his name, which he maintained until 2002.  (Compl. ¶ 30).  In 2002, Mr. Kastel opened an account on behalf of the Howard L. Kastel Trust with Mesirow.  (*Id.* ¶ 31).  Mrs. Kastel also opened her account with Mesirow in the mid-2000s when she transferred her assets from an account with another broker-dealer.  (*Id.*).

holders of the securities retained ownership of the ARS until a subsequent, successful auction. During this holding period, owners of the ARS continued to earn a default rate of interest, as outlined in the prospectus for each ARS. (*See, e.g.*, *id.* ¶ 28).

As a part of the successful auction market, broker-dealers, including Merrill Lynch, routinely submitted bids for their own accounts in ARS auctions. The SEC investigated the ARS market and, in 2006, issued a publicly-available order concluding that broker-dealers, including Merrill Lynch, had "intervened in auctions by bidding for their proprietary account" to prevent auction failures and to set clearing rates without adequate disclosures. ("2006 SEC Order") (Exh. A at 6).[3] The order expressly stated that it did "***not*** prohibit broker-dealers from bidding for their proprietary accounts when properly disclosed." (*Id.* at 6 n.6 (emphasis supplied)).

In October 2006, in response to the 2006 SEC Order, Merrill Lynch described the features of the auction market in a document titled *Description of Merrill Lynch's Auction Rate Securities Practices and Procedures* ("ARS Practices and Procedures") that was publicly available through the Merrill Lynch website. (Exh. B). The ARS Practices and Procedures contained the following disclosures:

- "Merrill Lynch receives underwriting fees for underwriting issuances of auction rate securities." (p. 4)

---

[3]      In ruling on a motion to dismiss, the Court "may consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, legally required public disclosure documents filed with the SEC, and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007); *Johnson v. Pozen Inc.*, No. 1:07CV599, 2009 WL 426235, at *1-2 (M.D.N.C. Feb. 19, 2009) ("[I]n securities fraud cases, courts routinely take judicial notice of newspaper articles, analysts reports, and press releases in order to assess what the market knew at particular points in time, even where the materials were not specifically referenced in the complaint."). The Court may also take judicial notice of facts that are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b)(2).

3

- "Issuers of auction rate securities pay firms that they select, like Merrill Lynch, to act as a dealer through which investors must submit orders into auctions for the issuers' securities. . . . Auction dealers receive fees for these services . . . . Merrill Lynch, on a regular basis, participates as an auction dealer in several hundred auctions each day that the U.S. securities markets are open." (p. 4-5)

- "Merrill Lynch plays multiple roles in the auction rate securities market, including providing services to issuers of auction rate securities, acting as an agent for investors . . . and purchasing and selling as principal for Merrill Lynch's own account." (p. 4)

- "Merrill Lynch's interests in participating in [the ARS] market may differ from yours." (p. 4)

- "Merrill Lynch is permitted, but not obligated, to submit orders in auctions for its own account either as a bidder or a seller, or both, and *routinely* does so in its sole discretion." (p. 15)

- "Merrill Lynch may *routinely place one or more bids in an auction for its own account* to acquire auction rate securities for its inventory, *to prevent an auction failure* . . . or an auction from clearing at a rate that Merrill Lynch believes does not reflect the market for the securities." (p. 16)

- "Merrill Lynch is not obligated to place orders for its own account in auctions, nor is it obligated to buy and sell securities for its own account between auctions in the secondary market. When it does so, it does so in its sole discretion." (p. 16)

- "Bids by Merrill Lynch or by those it may encourage to place bids are likely to affect the clearing rate, including preventing the clearing rate from being set at the maximum rate or otherwise causing bidders to receive a higher or lower rate than they might have received had Merrill Lynch not bid or not encouraged others to bid." (p. 16)

- "Because of these practices, the fact that an auction clears successfully does not mean that an investment in the securities involves no significant liquidity or credit risk." (p. 16)

- "Merrill Lynch *is not obligated to continue to place such bids* and encourage other bidders to do so in any particular auction to prevent an auction from failing or clearing at a rate Merrill Lynch believes does not reflect the market for the securities." (p. 16)

- "Investors *should not assume* that Merrill Lynch will [continue to place support bids] or *that auction failures will not occur*." (p. 16)

(Exh. B) (emphases supplied).

4

## B.      PLAINTIFFS' INVESTMENTS IN ARS

Mr. Kastel first invested in ARS in January 1998 with the purchase of $350,000 in ARS issued by Nuveen Investments Inc.  (Compl. ¶ 30).  Mr. Kastel alleges that, in connection with this purchase, Lawrence Cohen, the Kastels' investment advisor at Mesirow, described the Nuveen ARS as "safe short term preferred" shares and did not disclose that "the auctions were orchestrated by Nuveen and were not a public auction" or that "the shares had no maturity date, no right of redemption, [were] not puttable and needed to be sold at an auction and had a risk of illiquidity."  (*Id.*).  According to Mr. Kastel, Cohen described the ARS as "similar to money market shares except that they rolled over weekly."  (*Id.*).  Mr. Kastel alleges that Cohen selected the ARS and "[h]ad Kastel known of the undisclosed risks and the true facts related to Nuveen shares he would not have permitted Cohen to purchase any Nuveen shares for his account."  (*Id.*).

Although Mr. Kastel sold his initial shares of Nuveen ARS in January 2001, he continued to invest in Nuveen ARS.  (*Id.* ¶¶ 31-32).  At the end of 2006, Mr. Kastel held a total of $1.85 million in Nuveen ARS in a Mesirow account under the name of the Howard L. Kastel Trust ("Kastel Trust").  (*Id.* ¶ 31).  Joan Kastel also held $125,000 in Nuveen ARS in a personal account with Mesirow.  (*Id.*).

In 2006, the Kastels moved to North Carolina, (*id.* ¶ 11), and, in 2007, at the suggestion of Cohen, sold their current investments in Nuveen ARS and reinvested the proceeds in "Nuveen's North Carolina Funds."  (*Id.* ¶ 32).  Through a series of transactions, allegedly initiated by Cohen and Mesirow, the Kastel Trust purchased $2.075 million in ARS backed by Nuveen's North Carolina Funds.[4]  (*Id.* ¶¶ 32-33).  An

---

[4]      According to the Complaint, as of February 15, 2008, the Kastel Trust account held shares of the following Funds:  Nuveen North Carolina Premium Income Fund Series TH;

5

additional $125,000 of Nuveen ARS were purchased for Mrs. Kastel's account in August 2007. (*Id.*). According to the Complaint, although Mr. Kastel believed that Cohen "designated the number of Shares to be sold and the funds to be sold . . . and purchased," Mr. Kastel "learned later in 2008 that the decision as to which funds to invest in was made by Mesirow's or Nuveen's trading desk" based on availability. (*Id.*). Mr. Kastel alleges that the Nuveen ARS "were held in Mesirow's name[,] not the Kastels" and that "[Mr.] Kastel as Trustee or otherwise never received any disclosure documents," such as a prospectus. (*Id.* ¶ 31). Kastel did receive a trade confirmation from Mesirow for each of the purchases, however. (*Id.*).

Mr. Kastel alleges that he was unaware of the risks associated with investing in ARS and believed "that the Nuveen Funds were 'actually' safe, liquid short term money market clones." (*Id.* ¶ 34). According to Mr. Kastel, the basis for this belief was communications between Mr. Kastel and Cohen and others at Mesirow. (*Id.* ¶ 32-34). The Complaint alleges a laundry list of "material facts relating to liquidity and risk factors of the Nuveen [ARS]" that "Cohen, Mesirow, and Nuveen failed to disclose." (*Id.* ¶ 34). Mr. Kastel avers that "[i]f the Kastels had known the true facts they would not have permitted the Nuveen Funds to be purchased for their accounts." (*Id.*).

## C.     THE COLLAPSE OF THE ARS MARKET

In late 2007, based in large part on the widespread credit crisis, the demand for ARS began to decrease. (*See* Compl. ¶ 35). In February 2008, Merrill Lynch, and other broker-dealers, stopped placing support bids in auctions. (*Id.*). Those auctions began to fail, and then the entire ARS market, engulfed in a crisis of confidence, collapsed. (*Id.* ¶¶

---

Nuveen North Carolina Dividend Advantage Municipal Fund 2 Series F; and Nuveen North Carolina Dividend Advantage Municipal Fund 3 Series W. (Compl. ¶¶ 5, 32). Mrs. Kastel's account held five shares of Nuveen North Carolina Premium Income Fund Series TH. (*Id.* ¶ 32).

6

35, 41). Absent an active market, investors were unable to sell their ARS or liquidate their investment.

Since the market's collapse, Nuveen has redeemed over 75% of the ARS held by the Kastel Trust and 60% of the ARS held by Joan Kastel. (*Id.* ¶ 54). Between July 2008 and April 2010, Nuveen repurchased approximately $1.625 million of the $2.075 million in ARS held in the Kastel Trust account and $75,000 of the $125,000 in ARS held by Joan Kastel. (*Id.*). As of the filing of the Complaint, $500,000 of the Nuveen ARS were yet to be redeemed: $450,000 in the Kastel Trust account and $50,000 in Joan Kastel's account. (*Id.*). Although Mr. Kastel has recouped all but $500,000 of his original investment, he seeks $8.1 million in damages through this lawsuit that was originally filed on August 21, 2009, against a myriad of entities and individuals, many of whom have only the most tangential connection to Mr. Kastel or his investments. (*Id.* ¶ 2).

### III.
### ARGUMENT

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Where a plaintiff "ha[s] not nudged [its] claims across the line from conceivable to plausible, the[] complaint must be dismissed." *Twombly*, 550 U.S. at 570. Claims that sound in fraud must be pled with greater specificity under Federal Rule of Civil Procedure 9(b), which "is applied assiduously to securities fraud." *Lentell v. Merrill Lynch & Co., Inc.*, 396 F.3d 161, 168 (2d Cir. 2005). Under the Private Securities Litigation Reform Act ("PSLRA") and Rule 9(b), the circumstances constituting fraud must be pled with particularity and "supported by specific factual allegations." *Id.*; *see*

7

*also Public Employees' Retirement Ass'n of Colorado v. Deloitte & Touche LLP*, 551 F.3d 305, 311-312 (4th Cir. 2009).

The Complaint fails to allege sufficiently a single viable claim against Merrill Lynch. Notably, Mr. Kastel's primary allegations are directed at Cohen and Mesirow, who sold Mr. Kastel the ARS in question, and Nuveen Investments, who issued and later redeemed the ARS. Of the ten counts identified in the Complaint, Merrill Lynch is not specifically named in a single count. Instead, three of the counts – which allege securities fraud, common law fraud, and theft by deception – are directed generally at all Defendants. (Compl. ¶¶ 56-74, 80, 98). The Fourth Circuit has rejected such "impermissible aggregation of defendants without specifically alleging which defendant was responsible for which act." *Juntti v. Prudential-Bache Sec., Inc.*, No. 92-2066 (4th Cir. May 3, 1993). (Exh. C). The Complaint fails to meet the most minimum pleading standard – identifying the alleged wrongdoing of each defendant – much less the heightened standards attendant with allegations of fraud. As explained below, because each claim is fatally deficient, the Complaint should be dismissed as to Merrill Lynch.

**A.     THE COMPLAINT FAILS TO STATE A CLAIM UNDER SECTION 10(B) AND RULE 10-B(5)**

**1.     Plaintiffs Have Failed To State A Market Manipulation Claim.**

"Market manipulation requires . . . (1) manipulative acts; (2) damage (3) caused by reliance on an assumption of an efficient market free of manipulation; (4) scienter; (5) in connection with the purchase or sale of securities; (6) furthered by the defendant's use of the mails or any facility of a national securities exchange." *ATSI*, 493 F.3d at 101. Additionally, because a claim of market manipulation sounds in fraud, it must be pled with sufficient particularity under Rule 9(b). *Id.* Here, Plaintiffs' vague references to

8

"manipulative and deceptive devices and contrivances," (Compl. ¶ 73), are insufficient to allege market manipulation. *See id.* Moreover, Merrill Lynch's extensive disclosures are fatal to any claim of market manipulation.

### a. The Complaint Fails To Allege With Particularity The Specific Acts of Each Defendant.

To plead a claim of market manipulation with the requisite specificity required under Rule 9(b), the complaint "must specify what deceptive or manipulative acts were performed, which defendants performed them, when the acts were performed, and the effect the scheme had on investors in the securities at issue." *Thomas H. Lee Equity Fund V, L.P. v. Mayer Brown, Rowe & Maw LLP*, 612 F. Supp. 2d 267, 274 (S.D.N.Y. 2009) (internal quotation marks omitted); *In re Citigroup,* 2009 WL 2914370, at * 5. Moreover, "Rule 9(b) of the Federal Rules of Civil Procedure requires that allegations of fraud be specific enough to give defendants sufficient notice of the particular misconduct that is alleged to constitute fraud so that they can defend against the charge." *Zaremski v. Keystone Title Assocs., Inc.*, 884 F.2d 1391 (4th Cir. 1989). "Thus, where multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud." *Zaremski*, 884 F.2d 1391 (internal quotation marks omitted).

Despite its length and verbosity, Plaintiffs' Complaint fails even to approach the specificity standard for pleading a claim of market manipulation. As an initial matter, Plaintiffs have failed to identify the alleged specific deceptive or manipulative acts they claim caused their loss. The Complaint alleges that the collective Defendants "participated in the manipulation of the auction markets"; "engaged in unlawful practices that included artificially supporting and manipulating the so-called auction market to

9

maintain the appearance of liquidity and stability"; and "employed manipulative and deceptive devices." (Compl. ¶¶ 19, 24, 44, 45, 56, 68, 73).  As a result, Defendants are left to speculate as to exactly what conduct Plaintiffs assert was manipulative, when those acts occurred, or how the alleged conduct affected Plaintiffs' investment.  Such speculation is the antithesis of the Rule 9(b) pleading standard.

In addition to the vague allegations regarding the "what" and "when," Plaintiffs have also failed to identify the "who."  Rather than attribute the alleged misdeeds to the many individual defendants, Plaintiffs opt instead to allocate blame to "Merrill Lynch" or "Defendants" generally.  This "lumping" together of defendants falls far short of the requirements of Rule 9(b) and fails to provide the sufficient notice required to mount an effective defense.  *See Harrison v. Westinghouse Savannah River*, 352 F.3d at 921.  Not only does the Complaint refer to defendants Merrill Lynch & Co. and Merrill Lynch, Pierce, Fenner & Smith Inc. interchangeably as "Merrill Lynch," it confusingly lumps ***all*** of the Defendants together, repeatedly attributing alleged misconduct to "All Defendants," "Defendants, jointly and severally (and each of them)," or just "Defendants."  (*See, e.g.*, Compl. 68-76).  This all-encompassing approach to pleading flies in the face of the specificity required under Rule 9(b) and warrants dismissal of the Complaint.

**b.    The Complaint Fails To Identify Any Alleged Manipulative Acts.**

Even setting aside the clear pleading deficiencies, Plaintiffs have failed to plead a claim of market manipulation against Merrill Lynch.  Market manipulation requires a manipulative or deceptive act that is ***prohibited***, "such as wash sales, matched orders, or

10

rigged prices." *See Santa Fe Indus., Inc. v. Green*, 97 S. Ct. 1292, 1301-02 (1977).

Plaintiffs do not, and cannot, identify any prohibited conduct by Merrill Lynch.

Moreover, conduct cannot be market manipulation unless it is aimed at deceiving investors, and "[t]he market is not misled when a transaction's terms are fully disclosed." *In re Merrill Lynch ARS Litig.*, 2010 WL 1257597, at *10; *Santa Fe*, 97 S. Ct. at 1303. Despite the Complaint's vague allegations that Merrill Lynch manipulated the auction market, presumably by submitting bids for its own account to prevent auction failures and to create the appearance of liquidity, the practice by broker-dealers, including Merrill Lynch, of submitting support bids to prevent auction failure and affect the price of ARS was widely disclosed to investors, the market, and the public.[5]  As the Southern District of New York recently stated when considering identical claims of market manipulation, "[t]hese disclosures, issued in the wake of the 2006 SEC Order, preclude the Plaintiffs from pleading manipulative acts *as a matter of law*." *Id.* (emphasis supplied); *id.* at 27 ("These disclosures negate the Plaintiffs' claims that Merrill Lynch misled the market into believing that the price of the securities and the clearing rates set by the auction were

---

[5]      For example, the 2006 SEC Order, which was available to the public on the SEC's website, highlighted that broker-dealers placed support bids to affect the auction market and specifically noted that the conduct was not prohibited as long as it was properly disclosed.  (*See* Exh. A).  The order also required broker-dealers, including Merrill Lynch, to disclose fully their role in the auction market by making a written description of their auction practices and procedures available on each firm's publicly-accessible website.  (*Id.*).  Complying with this directive, Merrill Lynch fully disclosed its role in the auction market in a 23-page detailed document that extensively discussed the multiple, and potentially conflicting, roles played by Merrill Lynch, the practice of support bids, the effect of Merrill Lynch's intervention in the market, the possibility that Merrill Lynch could cease its support of the market, and the potential risk factors associated with investing in the auction market.  (Exh. B).  Specifically, Merrill Lynch *expressly disclosed*, among other things, "the fact that Merrill Lynch might routinely submit support bids to prevent auction failures, that Merrill Lynch's bidding could determine clearing rates, that auction failures were possible 'especially if . . . Merrill Lynch were unable or unwilling to bid,' and that failed auctions could result in investors[] not being able to sell any of their securities."  *In re Merrill Lynch ARS Litig.*, 2010 WL 1257597, at *12; (*See* Exh. B).

dictated by the natural interplay of supply and demand."). Likewise, Plaintiffs' claim of market manipulation evaporates in the light of Merrill Lynch's ample and widely-available disclosures.

### c. The Complaint Fails To Plead Reliance Sufficiently.

Merrill Lynch's extensive disclosures to the market and the investing public about its involvement in the ARS market also preclude a finding of reasonable reliance, a critical element of a market manipulation claim. Reliance "on an (ultimately incorrect) assumption of an efficient market free of manipulation" is a necessary element of market manipulation. *In re Citigroup*, 2009 WL 2914370, at *6. "[T]he general rule" is that reliance must be **reasonable**, *Harsco Corp. v. Segui*, 91 F.3d 337, 343 (2d Cir. 1996), and Merrill Lynch's extensive disclosures "render any reliance unjustifiable." *In re Merrill Lynch ARS Litig.*, 2010 WL 1257597, at *20; *In re Citigroup*, 2009 WL 2914370, at *6.

Plaintiffs allege that they believed the auction market was operating efficiently without the intervention of the broker-dealers, (Compl. ¶¶ 45-51), but any such reliance in the face of the extensive disclosures about the auction market would be patently unreasonable. *See In re Citigroup*, 2009 WL 2914370, at *7-8. "Plaintiffs cannot establish reasonable reliance if, through minimal diligence, they should have discovered Merrill Lynch's market activity." *In re Merrill Lynch ARS Litig.*, 2010 WL 1257597, at *20; *Starr ex rel. Estate of Sampson v. Georgeson Shareholder, Inc.*, 412 F.3d 103, 109 (2d Cir. 2005) ("An investor may not justifiably rely on a misrepresentation if, through minimal diligence, the investor should have discovered the truth."). "[T]he fact that broker-dealers had historically made the ARS market – and the fact that they could continue to do so for the ARS held by Plaintiffs – did not require exhaustive research to uncover." *In re Merrill Lynch ARS Litig.*, 2010 WL 1257597, at *21. Plaintiffs could

12

have discovered the exact information they now claim was undisclosed simply by reading the 2006 SEC Order, Merrill Lynch's ARS Practices and Procedures, or various media reports.[6]

Nor can Plaintiffs invoke presumptive reliance under *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 153-54 (1972), where reliance is presumed if the claim rests on an omission of material fact. The *Affiliated Ute* presumption does not apply when, as here, a plaintiff alleges claims of market manipulation. *Desai v. Deutsche Bank Securities Ltd.*, 573 F.3d 931, 940-41 (9th Cir. 2009); *Joseph v. Wiles*, 223 F.3d 1155, 1162-63 (10th Cir. 2000); *see also Piper v. Chris-Craft Indus.*, Inc., 430 U.S. 1, 52 n.2 (1977) (Blackmun, J., concurring). Moreover, the extensive disclosures regarding Merrill Lynch's role in the auction market preclude any presumption of reliance premised on non-disclosure. *See In re Merrill Lynch ARS Litig.*, 2010 WL 1257597, at *17.[7]

---

[6]     Nor can Plaintiffs benefit from a presumption of reliance. Reliance may be presumed if a plaintiff successfully pleads fraud on the market, which is based on the premise that "the market price of shares traded on well-developed markets reflects all publicly available information, and hence any material misrepresentations," *Basic Inc. v. Levinson*, 485 U.S. 224, 246 (1988), or "manipulative misconduct," *In re Merrill Lynch ARS Litig.*, 2010 WL 1257597, at *14. When a plaintiff's "own allegations and evidence demonstrate that an efficient market cannot be established[,]" however, the fraud-on-the-market presumption is not applicable. *In re IPO Sec. Litig.*, 471 F.3d at 42-43. Plaintiffs have disavowed that the auction market was efficient by expressly alleging that the ARS traded on "an artificial market." (Compl. ¶ 56; *see also id.* ¶¶ 19, 26, 35, 44).

[7]     Merrill Lynch's disclosure of its involvement in the ARS market also negates a fraud-on-the-market theory of reliance. *See Heliotrope Gen., Inc. v. Ford Motor Co.*, 189 F.3d 971, 975 (9th Cir. 1999) ("In a fraud-on-the-market case, an omission is actionable under section 10(b) and Rule 10b-5 only if the [allegedly undisclosed] information has not already entered the market."). "Merrill Lynch's participation in the ARS market was revealed to the public with the degree of credibility and intensity necessary to counterbalance any misinterpretations resulting from the alleged manipulation." *In re Merrill Lynch ARS Litig.*, 2010 WL 1257597, at *15. Therefore, even if one were to assume that the ARS market was efficient, "no reasonable investor could have been misled by Merrill Lynch's alleged failure to disclose its involvement in the ARS market" and Plaintiffs "cannot benefit from that doctrine's presumption of reliance." *Id.* at 40-41.

### d. The Complaint Fails To Sufficiently Plead Scienter.

The PSLRA heightened pleading standard requires the Complaint to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2); *Ottmann v. Hanger Orthopedic Group, Inc.*, 353 F.3d 338, 345 (4th Cir. 2003). When evaluating whether the facts alleged give rise to a strong inference of scienter, "a court must consider plausible nonculpable explanations for the defendant's conduct." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323 (2007). "A complaint will survive . . . only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Id.* at 324.

### 1. The Non-Fraudulent Inferences Are More Compelling than Any Inference of Scienter.

Far from suggesting the requisite intent, Merrill Lynch's actions refute any inference of scienter. Merrill Lynch expressly disclosed that it "routinely" submitted support bids on its own account to prevent auction failures and to affect the clearing rate, but that investors should not assume that Merrill Lynch would continue to enter support bids or that a successful auction reflected liquidity or low risk. (*See supra* pp.3-4.). This full disclosure by Merrill Lynch negates any inference that Merrill Lynch was acting with an intent to defraud investors regarding its support for the ARS market. *See In re WOW Sec. Litig.*, 35 F.3d 1407, 1425 (9th Cir. 1994) ("detailed risk disclosure[s] negate[] an inference of scienter"); *In re Loral Space & Comm'ns Ltd. Sec. Litig.*, No. 01 Civ. 4388, 2004 WL 376442, at *15 (S.D.N.Y. Feb. 27, 2004).[8]

---

[8]      Additionally, Merrill Lynch's own purchases of ARS preclude an inference of scienter. As the Complaint implicitly acknowledges, Merrill Lynch regularly purchased ARS in auctions for its own account. (*See* Compl. ¶ 16). These investments belie any intent to defraud. Because

14

Considering all nonculpable explanations, the compelling inference arises that Merrill Lynch believed ARS to be a sound financial investment for its own accounts and those of its customers. The eventual collapse of the entire ARS market suggests, at most, that Merrill Lynch "engaged in bad (in hindsight) business judgments in connection with ARS." *In re Citigroup*, 2009 WL 2914370, at *6. It is an impermissible leap from bad business judgment to fraud.

> **2. The Mere Receipt of Fees and a General Desire for Profitability Do Not Permit a Compelling Inference of Scienter.**

Despite asserting that "[e]ach of the Defendants acted with particular state of mind with respect to each act or omission alleged here," (Compl. ¶¶ 37, 45), Plaintiffs offer little more than conclusory allegations about Merrill Lynch's desire to earn fees in a weak attempt to plead scienter. (*Id.* ¶¶ 26, 68). A generalized motive to show or increase profitability is insufficient to allege scienter, however. *See Kalnit v. Eichler*, 264 F.3d 131, 140 (2d Cir. 2001); *Ashland Inc. v. Morgan Stanley & Co.*, No. 09-cv-5415, 2010 WL 1253932, at *12 (S.D.N.Y. Mar. 20, 2010). Plaintiffs must allege that Merrill Lynch "benefited in some concrete and personal way from the purported fraud," *see Defer LP v. Raymond James Fin., Inc.*, 654 F. Supp. 2d 204, 217 (S.D.N.Y. 2009), and allegations that Merrill Lynch sought to prevent auction failure or continue collecting fees fail to approach this standard because those objectives are legitimate business motives. *See, e.g.*, *Phillips v. LCI Intern., Inc.*, 190 F.3d 609, 623 (4th Cir. 1999) ("Because the

---

"it would have made no economic sense for defendants to invest literally billions of dollars in a venture that they knew would fail," "[t]hese facts . . . compel the conclusion that defendants did not act with the scienter that is required under the securities laws." *Davidoff v. Farina*, No. 04 Civ. 7617, 2005 WL 2030501, at *11 n.19 (S.D.N.Y. Aug. 22, 2005).

15

stockholders' allegations pertain to motivations common to every corporate merger, those allegations cannot demonstrate scienter.").

## B.     PLAINTIFFS HAVE FAILED TO STATE A DISCLOSURE CLAIM.

In addition to failing to plead a market manipulation claim, Plaintiffs have also failed to allege a claim based on purported misrepresentations and omissions by Merrill Lynch.  To state a claim for relief under section 10(b) and Rule 10b-5, a plaintiff must sufficiently plead each of the following elements: (1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation.  *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 128 S. Ct. 761, 768 (2008).  Such claims, which sound in fraud, are subject to the heightened pleading requirements of the PSLRA and of Rule 9(b). 15 U.S.C. § 78u-4; FED. R. CIV. P. 9(b).  The PSLRA mandates "that securities fraud complaints specify each misleading statement; that they set forth the facts on which [a] belief that a statement is misleading was formed; and that they state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."  *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 81-82 (2006) (internal quotation marks omitted).  Likewise, "Rule 9(b) requires that plaintiffs plead 'with particularity  . . . the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'"  *In re Mut. Funds Invest. Litig.*, 566 F.3d 111, 120 (4th Cir. 2009) (one set of internal quotation marks omitted).  Because the Plaintiffs failed to sufficiently plead these elements as to Merrill Lynch, their claim against Merrill Lynch should be dismissed.

**1.     The Complaint Fails To Identify A Misrepresentation Or Omission By Merrill Lynch.**

The gravamen of a securities disclosure claim is an actionable misrepresentation or omission made by the defendant.  Plaintiffs have failed to identify a single misstatement or omission by Merrill Lynch.  This failure is fatal.

To plead a securities claim, "each plaintiff must [allege] that he or she ***personally*** received a material misrepresentation, and that his or her reliance on this misrepresentation was the proximate cause of his or her loss."  *See Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1253 (2d Cir. 2002) (emphasis supplied); *Longman v. Food Lion, Inc.*, 197 F.3d 675, 682 (4th Cir. 1999).  Yet, the Complaint utterly fails to identify a single misrepresentation made to the Kastels by Merrill Lynch.  In fact, the Complaint is devoid of any interaction between Merrill Lynch and Plaintiffs.[9]

Notably, the only alleged misstatements or omissions actually identified in the complaint are attributed only to Nuveen, Mesirow, and Cohen.  (*See, e.g.*, Compl. ¶¶ 27, 28, 30-34).  Merrill Lynch cannot be held liable for statements made by other parties. *See Central Bank of Denver v. First Interstate Bank of Denver*, 511 U.S. 164, 176-77 (1994) (no aiding and abetting liability under Section 10(b)); *Teague v. Bakker*, 35 F.3d 978, 991 (4th Cir. 1994).  Because "section 10(b) imposes liability only on persons who, themselves, make a material misrepresentation or omission," Plaintiffs' failure to allege a

---

[9]     Nor have Plaintiffs identified an actionable omission by Merrill Lynch that could give rise to a securities claim.  The Complaint alleges no facts to support a claim that Merrill Lynch had a duty to disclose any supposedly omitted information.  "When an allegation of fraud is based upon nondisclosure, there can be no fraud absent a duty to speak."  *Chiarella v. United States*, 445 U.S. 222, 235 (1980).  "[F]ederal securities laws are not the source of such a duty. . . . Rather, the duty to disclose material facts arises only where there is some basis outside the securities laws, such as state law, for finding a fiduciary or other confidential relationship." *Fortson v. Winstead, McGuire, Sechrest & Minick*, 961 F.2d 469, 472 (4th Cir. 1992).

17

misstatement or omission by *Merrill Lynch* is fatal to their claim. *See Thomas H. Lee Equity Fund*, 612 F. Supp. 2d at 275; *see also* 15 U.S.C. § 78u-4(b)(1).[10]

### 2. The Complaint Fails To Plead Adequately The Remaining Elements.

Plaintiffs have failed to allege the remaining elements of its disclosure claim against Merrill Lynch with the specificity required to survive a motion to dismiss. For the same reasons the market manipulation claim should be dismissed for failing to plead particularized facts giving rise to a strong inference of fraudulent intent, Plaintiffs' disclosure claim likewise should be dismissed. (*See supra* pp. 9-12.).

Plaintiffs have also failed to plead reliance. To survive a motion to dismiss, the Complaint must allege reliance or transaction causation. *Lentell*, 396 F.3d at 172. A plaintiff usually satisfies this requirement with an "allegation that but for the claimed misrepresentations or omissions, the plaintiff would not have entered into the detrimental securities transaction." *Id.* However, as with a claim for market manipulation, this reliance must be ***reasonable***. *Harsco Corp.*, 91 F.3d at 343. Plaintiffs have not identified any statements by Merrill Lynch on which they allegedly relied. (*Cf.* Compl. ¶ 30 (pleading reliance on statements by Cohen)).[11]

---

[10] Moreover, the Complaint fails to plead an actionable misrepresentation or omission by Merrill Lynch because, as discussed above, *see supra* pp. 3-4, Merrill Lynch fully disclosed to investors and the general public on its website the very things Plaintiffs allege were misrepresented or omitted. These disclosures are fatal to a securities fraud claim based on alleged misrepresentations or omissions. *See Longman*, 197 F.3d at 684.

[11] Moreover, any reliance would be unreasonable as a matter of law in light of the public disclosures about the risks of ARS and the role of broker-dealers in the auctions, which Plaintiffs could have discovered with minimal diligence. *See In re Citigroup*, 2009 WL 2914370, at *7-8; *supra* pp. 3-4. Additionally, presumptive reliance remains unavailable to Plaintiffs for the reasons stated above. *See supra* p.13, n.6. Because Plaintiffs have failed to allege essential elements of a securities fraud claim, their claims against Merrill Lynch are due to be dismissed.

## C. PLAINTIFFS' CLAIM FOR COMMON LAW FRAUD FAILS

Under North Carolina law, a plaintiff must sufficiently allege the following elements of fraud to survive a motion to dismiss: "(1) False representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party." *Ragsdale v. Kennedy*, 286 N.C. 130, 138 (N.C. 1974). Because Plaintiffs have not sufficiently alleged the common elements of misrepresentation or omission, scienter, and reliance, the common law fraud claim is fatally deficient.

## D. PLAINTIFFS' CLAIM FOR THEFT BY DECEPTION OR OBTAINING PROPERTY BY FALSE PRETENSES ALSO FAILS

Under North Carolina law, obtaining property by false pretenses, which is a criminal offense, does not appear to be a private civil right of action. *See State v. Wright*, 685 S.E.2d 109, 115 (N.C. App. Ct. 2009) (discussing a "conviction for obtaining property by false pretenses"); N.C. Gen. Stat. § 14-100(a). Furthermore, even if there is a viable private cause of action, Plaintiffs have failed to allege adequately the necessary elements. The elements of obtaining property by false pretenses are "(1) [a] false representation of a past or subsisting fact or a future fulfillment or event, (2) which is calculated and intended to deceive, (3) which does in fact deceive, and (4) by which the defendant obtains or attempts to obtain anything of value from another person." *Wright*, 685 S.E.2d at 115. As explained above, Plaintiffs have not alleged that the Merrill Lynch made any false representations or possessed the requisite intent. (*See supra* pp. 17-18.). Moreover, because Merrill Lynch did not sell Plaintiffs the securities at issue, Merrill Lynch did not "obtain[] or attempt to obtain anything of value" from them. *Id.*

19

# IV.
## CONCLUSION

For the reasons set forth above, Merrill Lynch respectfully requests that the Court

dismiss the claims against Merrill Lynch in their entirety and with prejudice.

Dated:  June 11, 2010

Respectfully submitted,

By: /s/ Dana C. Lumsden
Dana C. Lumsden, Esq. [N.C. Bar No. 32497]
dlumsden@hunton.com
**HUNTON & WILLIAMS LLP**
Bank of America Plaza
101 South Tryon Street, Suite 3500
Charlotte, North Carolina 28280
(704) 378-4700

Carl Burkhalter, Esq.
CBurkhalter@maynardcooper.com
**MAYNARD COOPER & GALE PC**
1901 Sixth Avenue North
2400 Regions/Harbert Plaza
Birmingham, Alabama 35203
(205) 254-1000

ATTORNEYS for DEFENDANTS
MERRILL LYNCH & CO., and
MERRILL LYNCH, PIERCE, FENNER & SMITH,
INCORPORATED

20

## CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of June, 2010, I caused a true and correct copy of this **MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT BY DEFENDANTS MERRILL LYNCH & CO. AND MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED** to be electronically filed with the clerk of the court for the United States District Court for the Middle District of North Carolina and served on the following counsel for the parties to this lawsuit using the CM/ECF System:

| | |
|---|---|
| Howard L. Kastel, Esq.<br>10393 Holt<br>Chapel Hill, North Carolina 27517 | Jack M. Knight, Esq.<br>WINSTON & STRAWN LLP<br>214 North Tryon Street<br>Charlotte, North Carolina 28202-1078 |
| Alan M. Ruley, Esq.<br>BELL, DAVIS & PITT, P.A.<br>Century Plaza, Suite 600<br>100 North Cherry Street<br>Winston-Salem, North Carolina 27120-1029 | Ronald R. Davis, Esq.<br>WOMBLE CARLYLE SANDRIDGE<br>& RICE, PLLC<br>One West Fourth Street<br>Winston-Salem, North Carolina 27101 |

/s/ Dana C. Lumsden.
Dana C. Lumsden, Esq.

21