# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
## GREENSBORO DIVISION
Civil Action No. 1:09-CV-646

HOWARD L. KASTEL, TRUSTEE of the
HOWARD L. KASTEL TRUST DATED
NOVEMBER 13, 1985 and JOAN H. KASTEL,

    Plaintiffs,

    v.

NUVEEN INVESTMENTS, INC.,
NUVEEN INVESTMENTS LLC,
ROBERT P. BREMNER,
MESIROW FINANCIAL INC.,
LAWRENCE M. COHEN,
DEUTSCHE BANK AG,
DEUTSCHE BANK TRUST CO. AMERICAS,
DEUTSCHE BANK SECURITIES INC.
MERRILL LYNCH & CO., INC.,
MERRILL LYNCH, PIERCE, FENNER & SMITH,
and CITIGROUP GLOBAL MARKETS INC.,

    Defendants.

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT CITIGROUP GLOBAL MARKET INC.'S MOTION
## TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ii

PRELIMINARY STATEMENT ...................................................................................... 1

FACTUAL ALLEGATIONS ........................................................................................... 1

ARGUMENT.................................................................................................................... 5

    I.    Plaintiffs' Claims Against CGMI Are Time Barred ..................................... 6

    II.    The Complaint Fails To State a Claim of Securities Fraud
    Against CGMI ................................................................................................ 8

        A.    Plaintiffs Have Suffered No Cognizable Loss. ................................... 8

        B.    Plaintiffs Fail to State a Market Manipulation Claim
        Against CGMI. ................................................................................. 10

            1.    The Conduct at Issue Was Not Wrongful and
            Cannot Form the Basis of Liability Under the
            Securities Laws...................................................................... 10

            2.    Plaintiffs Fail to Plead Fraud with the
            Particularity Required by Rule 9(b) and the
            PSLRA................................................................................... 12

            3.    Plaintiffs Fail to Sufficiently Plead Reliance. ....................... 13

            4.    Plaintiffs Fail to Sufficiently Plead Scienter. ........................ 15

            5.    Plaintiffs Fail to Sufficiently Plead Loss
            Causation. .............................................................................. 17

        C.    Plaintiffs Fail to State a Misrepresentation or Omission
        Claim Against CGMI. ....................................................................... 19

    III.    Plaintiffs' State Law Claims Against CGMI Also Fail ............................... 20

CONCLUSION ............................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Ashcroft v. Iqbal*
    129 S. Ct. 1937 (2009) ...................................................................5

*Ashland Inc. v. Morgan Stanley & Co.*
    2010 WL 1253932 (S.D.N.Y. Mar. 20, 2010)..........................................17

*ATSI Communications, Inc. v. Shaar Fund, Ltd.*
    493 F.3d 87 (2d Cir. 2007) ..................................................... 10, 12, 15

*Barrientos v. Taylor*
    917 F. Supp. 375 (E.D.N.C. 1996) .................................................9

*Basic, Inc. v. Levinson*
    485 U.S. 224 (1988) .................................................................19

*Bell Atlantic Corp. v. Twombly*
    550 U.S. 544 (2007) ...........................................................5, 17

*Benak ex rel. Alliance Premier Growth Fund v. Alliance Capital Mgmt. L.P.*
    435 F.3d 396 (3d Cir. 2006) ........................................................6

*Columbia Venture, LLC v. Dewberry & Davis, LLC*
    604 F.3D 824 (4th Cir. 2010) ......................................................5

*Davidoff v. Farina*
    2005 WL 2030501 (S.D.N.Y. Aug. 22, 2005) .......................................16

*Defer LP v. Raymond James Financial, Inc.*
    654 F. Supp. 2d 204 (S.D.N.Y. 2009) ...............................................16

*Dura Pharmaceuticals, Inc. v. Broudo*
    544 U.S. 336 (2005) ...........................................................17, 18

*Gariety v. Grant Thornton, LLP*
    368 F.3d 356 (4th Cir. 2004) ...................................................14, 19

*GFL Advantage Fund, Ltd. v. Colkitt*
    272 F.3d 189 (3d Cir. 2001) .......................................................11

Case 1:09-cv-00646-NCT-WWD   Document 53   Filed 06/18/10   Page 3 of 28

*Healthcare Financial Group, Inc. v. Bank Leumi USA*
    669 F. Supp. 2d 344 (S.D.N.Y. 2009) ........................................................................ 18

*Hunt v. Miller*
    908 F.2d 1210 (4th Cir. 1990) ....................................................................................... 9

*In re Acterna Corp. Securities Litigation*
    378 F. Supp. 2d 561 (D. Md. 2005) ............................................................................ 18

*In re Citigroup Auction Rate Securities Litigation*
    2009 WL 2914370 (S.D.N.Y. Sept. 11, 2009) .................................................... passim

*In re Merrill Lynch Auction Rate Securities Litigation*
    2010 WL 1257597 (S.D.N.Y. Mar. 31, 2010) ..................................................... 11, 14

*In re Laboratory Corp. of America Holdings Securities Litigation*
    2006 WL 1367428 (M.D.N.C. May 18, 2006) ............................................................ 15

*In re WOW Securities Litigation*
    35 F.3d 1407 (9th Cir. 1994) ....................................................................................... 16

*Juntti v. Prudential-Bache Securities, Inc.*
    993 F.2d 228 (4th Cir. 1993) ....................................................................................... 13

*Matrix Capital Management Fund, LP v. BearingPoint, Inc.*
    576 F.3d 172 (4th Cir. 2009) ....................................................................................... 19

*Merck & Co. v. Reynolds*
    130 S. Ct. 1784, 1798 (2010) ......................................................................................... 6

*Ottmann v. Hanger Orthopedic Group, Inc.*
    353 F.3d 338 (4th Cir. 2003) ....................................................................................... 15

*Phillips v. LCI International, Inc.*
    190 F.3d 609 (4th Cir. 1999) ......................................................................................... 3

*Public Employees' Retirement Ass'n of Colorado v. Deloitte & Touche LLP*
    551 F.3d 305 (4th Cir. 2009) ......................................................................................... 6

*Ragsdale v. Kennedy*
    286 N.C. 130 (N.C. 1974) ........................................................................................... 20

*Rothman's Tobacco Co. v. Liggett Group, Inc.*
    770 F.2d 1246 (4th Cir. 1985) ................................................................. 8

*Santa Fe Industries, Inc. v. Green*
    430 U.S. 462 (1977) ...................................................................... 11, 15

*Schreiber v. Burlington N., Inc.*
    472 U.S. 1 (1985) ............................................................................ 11

*Sowell v. Butcher & Singer, Inc.*
    926 F.2d 289 (3d Cir. 1991) ............................................................... 9

*State Farm Mutual Automobile Insurance Co. v. Campbell*
    538 U.S. 408 (2003) .......................................................................... 9

*State v. Wright*
    685 S.E.2d 109 (N.C. App. Ct. 2009) ............................................... 20

*Stoneridge Investment Partners, LLC v. Scientific-Atlanta, Inc.*
    552 U.S. 148 (2008) ..................................................................... 13, 19

*Sullivan & Long, Inc. v. Scattered Corp.*
    47 F.3d 857 (7th Cir. 1995) .............................................................. 11

*Teachers' Retirement System of Louisiana v. Hunter*
    477 F.3d 162 (4th Cir. 2007) ............................................................ 17

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*
    551 U.S. 308 (2007) ........................................................................ 15

*Zaremski v. Keystone Title Associates, Inc.*
    884 F.2d 1391 (4th Cir. 1989) .......................................................... 13

*Zisholtz v. SunTrust Banks, Inc.*
    2009 WL 3132907 (N.D. Ga. Sept. 24, 2009) ................................... 12

## STATUTES AND RULES

15 U.S.C. § 78u-4(b) .................................................................. passim

28 U.S.C. § 1658(b) ............................................................................ 6

Fed. R. Evid. 201(b)(2) ....................................................................... 3

iv

Fed. R. Civ. P. 9(b) ................................................................................................ passim

Fed. R. Civ. P. 12(b)(6) ........................................................................................ 1, 5

N.C. Gen. Stat. § 1-52(9) ........................................................................................... 8

N.C. Gen. Stat. § 14-100(a) ..................................................................................... 20

## **OTHER AUTHORITIES**

*Enforcement Proceedings – Fifteen (15) Broker-Dealer Firms Settle SEC Charges*, SEC NEWS DIGEST, May 31, 2006 ................................................ 3

Jacob Fine, *SEC Auction Probe Raises Questions: Rate-Setting Process Draws Scrutiny*, BOND BUYER (USA), June 25, 2004 ............................................. 3

Jed Horowitz, *SEC Fines 15 Brokerages for Auction Violations*, ASSOCIATED PRESS, May 31, 2006 ................................................................ 3

Lynn Hume, *Auction-Rate Questions: SEC's Haines Skeptical of Market Practices*, BOND BUYER (USA), Oct. 2, 2006 ................................................ 3

Lynn Hume, *Auction-Rate Violations Result in $13M Penalty: SEC Announces Settlement with 15 Firms*, BOND BUYER (USA), June 1, 2006 ..................................... 3

Lynn Hume, *Regulation: TBMA Issues Draft Best Practices for Auction-Rate Securities*, BOND BUYER (USA), June 1, 2006 ............................................. 3

Lynn Hume, *SEC's Disclosure Concern – Haines: Auction-Rate Information Inadequate*, BOND BUYER (USA), Sept. 19, 2005 ......................................... 3

*S.E.C. Bond Inquiry Settled for $13 Million*, N.Y. TIMES, June 1, 2006 ............................ 3

*SEC Fines 15 over Auction-Rate Practices*, CFO MAGAZINE, May 31, 2006 .................... 3

*SEC Looks for Unfair Dealing in Bonds*, CHI. TRIB., June 25, 2004 .................................. 3

v

Defendant Citigroup Global Markets Inc. ("**CGMI**")[1] respectfully submits this Memorandum of Law in support of its Motion to Dismiss Plaintiffs' First Amended Complaint (the "Complaint") pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

Plaintiffs hold ARS issued by Nuveen Investments Inc. ("Nuveen") and purchased through Mesirow Financial Inc. ("Mesirow"). Plaintiffs' ARS holdings remain illiquid as a result of the impact of the recent credit crisis on the ARS market. While a large majority of Plaintiffs' ARS have been redeemed by Nuveen at par, Plaintiffs continue to seek not only the par value of their remaining ARS – $500,000 – but $7.6 million in other damages from a myriad of defendants, including CGMI. Plaintiffs allege a host of claims premised on allegations that, unbeknownst to Plaintiffs, broker-dealers – including CGMI – were manipulating the ARS market by submitting bids in the auctions on their own behalf. There is one major problem with Plaintiffs' theory of the case, however: CGMI's alleged secret, manipulative, and fraudulent behavior was actually and expressly disclosed. For this reason, and all the reasons disclosed in greater detail below, Plaintiffs' Complaint should be dismissed.

## FACTUAL ALLEGATIONS

### *Auction Rate Securities*

ARS are securities that have long-term maturities and pay varied interest rates

---

[1]      The Complaint appears to impermissibly lump together Citigroup Global Markets Inc. and certain of its subsidiaries and affiliates, including "Solomon Smith Barney," "Smith Barney," and "Morgan Stanley Smith Barney." (*See* ¶¶ 2, 17). For purposes of this motion only, "CGMI" refers to Citigroup Global Markets Inc., the only entity properly named as a defendant.

1

based on periodic "Dutch auctions." (*See* ¶¶ 2, 24).[2] Publicly-traded ARS consist mainly of debt instruments, including corporate bonds, municipal bonds, and preferred shares issued by closed-end funds. (*See* ¶ 24). Under the auction system, current and prospective investors submit bids through a broker-dealer and, based on the bids, an auction agent sets the interest rate for the next period at the lowest rate of return at which all the available securities will be purchased or held. If insufficient bids are made, the auction "fails," and current holders of the securities retain ownership until a subsequent, successful auction. During this holding period, owners of the ARS continue to earn a default rate of interest as outlined in the prospectus for each ARS. (*See, e.g.*, ¶ 28).

### Plaintiffs' Investments In ARS

Plaintiff Howard Kastel first opened an account with Mesirow in 1988, which he maintained until 2002. (¶ 30). In 2002, Mr. Kastel opened an account with Mesirow on behalf of the Howard L. Kastel Trust (the "Trust"). (¶ 31). Plaintiff Joan Kastel also opened an account with Mesirow in the mid-2000s when she transferred her assets from an account with another broker-dealer. (¶ 30). Mr. Kastel first invested in ARS through his Mesirow account in January 1998 (*id.*), and he and Mrs. Kastel continued to purchase and sell ARS through their Mesirow accounts through at least September 2007 (¶¶ 2, 32).

Plaintiffs do not allege to have ever maintained an account with, or to have ever purchased ARS from, CGMI. Rather, Plaintiffs allege that CGMI "managed the auctions" in which Plaintiffs' ARS were purchased and sold by others. (¶ 33).

---

[2] Citations in the form of "¶ __" refer to paragraphs in the Complaint.

*Disclosures*

Broker-dealers, including CGMI, routinely have submitted bids for their own accounts in ARS auctions. Such bidding practices were routinely disclosed in ARS prospectuses, including those for the ARS that Plaintiffs purchased. (*See, e.g.*, Exh. A at 47-48; Exh. B at 36). The SEC commenced an investigation of this practice in 2004 and, in May 2006, issued a publicly-available and widely publicized order concluding that broker-dealers, including CGMI, had "intervened in auctions by bidding for their proprietary accounts" to prevent auction failures and to set clearing rates without adequate disclosures. ("2006 SEC Order," Exh. C at 6).[3] (*See* ¶¶ 1, 17, 34). The 2006 SEC Order expressly states that the SEC was ***not*** "prohibit[ing] broker-dealers from bidding for their proprietary accounts when properly disclosed." (Exh. C at 6, n.6 (emphasis supplied)). This information was widely disseminated to the investing public, including in numerous press articles about the SEC investigation and Order.[4] (¶ 34(r)).

In September 2006, in response to the 2006 SEC Order, CGMI detailed the features of the auction market, including the attendant risks and CGMI's role in the

---

[3] In ruling on a motion to dismiss, the Court may consider documents "integral to and explicitly relied on in the complaint" where authenticity is not challenged. *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999). The Court may also take judicial notice of facts "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b)(2).

[4] *See, e.g.*, *Enforcement Proceedings – Fifteen (15) Broker-Dealer Firms Settle SEC Charges*, SEC News Digest, May 31, 2006; Jacob Fine, *SEC Auction Probe Raises Questions: Rate-Setting Process Draws Scrutiny*, Bond Buyer (USA), June 25, 2004, at 1; Jed Horowitz, *SEC Fines 15 Brokerages for Auction Violations*, Associated Press, May 31, 2006; Lynn Hume, *Auction-Rate Questions: SEC's Haines Skeptical of Market Practices*, Bond Buyer (USA), Oct. 2, 2006, at 1; Lynn Hume, *Auction-Rate Violations Result in $13M Penalty: SEC Announces Settlement with 15 Firms*, Bond Buyer (USA), June 1, 2006, at 1; Lynn Hume, *Regulation: TBMA Issues Draft Best Practices for Auction-Rate Securities*, Bond Buyer (USA), June 1, 2006, at 55; Lynn Hume, *SEC's Disclosure Concern – Haines: Auction-Rate Information Inadequate*, Bond Buyer (USA), Sept. 19, 2005, at 1; *S.E.C. Bond Inquiry Settled for $13 Million*, N.Y. Times, June 1, 2006, at C4; *SEC Fines 15 over Auction-Rate Practices*, CFO Magazine, May 31, 2006, at 4; *SEC Looks for Unfair Dealing in Bonds*, Chi. Trib., June 25, 2004, at 4.

3

market, in a document that was publicly available through the Citigroup website. ("ARS Practices and Procedures," Exh. D). The ARS Practices and Procedures contained, *inter alia*, the following disclosures:

- "Citigroup is permitted, but not obligated, to submit orders in auctions for its own account either as a bidder or a seller and *routinely* does so in the auction rate securities market in its sole discretion." (Exh. D at 4 (emphasis supplied)).

- "Citigroup may *routinely place one or more bids in an auction for its own account* to acquire ARS for its inventory, *to prevent an auction failure . . .* or an auction from clearing at a rate that Citigroup believes does not reflect the market for the particular ARS being auctioned." (*Id.* (emphasis supplied)).

- "Citigroup *is not obligated to continue to place such bids* or encourage other bidders to do so in any particular auction to prevent an auction from failing or clearing at a rate Citigroup believes does not reflect the market for the securities." (*Id.* at 4-5 (emphasis supplied)).

- "Investors *should not assume* that Citigroup will [continue to place support bids] or *that failed auctions and unfavorable auction rates will not occur*." (*Id.* at 5 (emphasis supplied)).

- "There may not always be enough bidders to prevent an auction from failing in the absence of Citigroup bidding in the auction for its own account. Therefore, failed auctions are possible, especially if the issuer's credit were to deteriorate, if a market disruption were to occur or if, for any reason, Citigroup were unable or unwilling to bid." (*Id.* at 6 (emphasis supplied)).

### *The Collapse Of The ARS Market*

In late 2007, due in large part to the widespread credit crisis, the demand for ARS began to decrease. (*See* ¶ 35). In February 2008, CGMI and other broker-dealers stopped placing support bids in auctions. (*Id.*) Those auctions began to fail, and then the entire ARS market, engulfed in a crisis of confidence, collapsed. (¶¶ 35, 41). Absent an active market, investors were unable to sell their ARS or liquidate their investment.

Since the market's collapse, Nuveen has redeemed over 75% of the $2.075 million

4

in ARS held in the Trust account and 60% of the $125,000 in ARS held by Mrs. Kastel. (¶¶ 33, 54). As of the filing of the Complaint, only $500,000 of the Nuveen ARS purchased by Plaintiffs had yet to be redeemed: $450,000 in the Trust account and $50,000 in Mrs. Kastel's account. (¶ 54).

### *Plaintiffs' Claims Against CGMI*

Plaintiffs filed their original complaint on August 21, 2009. Although Plaintiffs have now recouped all but $500,000 of their original investment and have continued to earn interest on their ARS holdings, they seek $8.1 million in damages against a myriad of defendants – including CGMI – many of whom had no direct involvement with Plaintiffs or their investments. (¶ 2). CGMI is not specifically named as a defendant in any of the ten counts in the Complaint; instead, the three counts alleging federal securities fraud (¶¶ 67-77), common law fraud (¶¶ 80-84), and theft by deception (¶¶ 101-103) are directed generally at all Defendants.

## <u>ARGUMENT</u>

In evaluating a motion to dismiss under Rule 12(b)(6), a court must accept well-pleaded factual allegations in the complaint as true, but need not accept as true conclusions unsupported by the facts alleged, legal conclusions, bald assertions, or unwarranted inferences. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (citing cases). "To survive a motion to dismiss," a plaintiff must plead "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Dismissal is appropriate where a plaintiff fails to "raise a right to relief above the speculative level." *Columbia Venture, LLC v. Dewberry & Davis, LLC*,

5

604 F.3D 824, 827 (4th Cir. 2010) (quoting *Twombly*, 550 U.S. at 555).

Plaintiffs alleging securities fraud also must satisfy the heightened pleading requirements of Rule 9(b) and the Private Securities Litigation Reform Act ("PSLRA"), codified at 15 U.S.C. § 78u-4(b) (1995). Under Rule 9(b) and the PSLRA, the circumstances constituting fraud must be pled with particularity and supported by specific factual allegations. *Public Employees' Retirement Ass'n of Colo. v. Deloitte & Touche LLP*, 551 F.3d 305, 311-12 (4th Cir. 2009).

Plaintiffs' claims against CGMI are deficient for several reasons, each of which independently compels dismissal of the Complaint as against CGMI.

## I. PLAINTIFFS' CLAIMS AGAINST CGMI ARE TIME-BARRED.

Plaintiffs' claims should be dismissed as time-barred because, by no later than mid-2006, a reasonably diligent plaintiff would have discovered the facts constituting the alleged misconduct—namely, CGMI's bidding in the auctions.

Plaintiffs asserting claims under the Securities Exchange Act of 1934 ("Exchange Act") must bring those claims within the earlier of two years after discovery of "the facts constituting the violation" or five years after the violation. 28 U.S.C. § 1658(b). A plaintiff need not have "actual knowledge" to trigger the running of the limitations period, but merely notice of the facts constituting the alleged violation. Such notice exists when an investor of ordinary intelligence, with reasonable diligence, should have discovered the potential existence of a claim. *See Merck & Co., Inc. v. Reynolds*, 130 S. Ct. 1784, 1798 (2010). Investors are presumed to have knowledge of "prospectuses, quarterly reports, and other information related to their investments," as well as "publicly

available news articles and analyst's reports to the extent that they constitute storm warnings sufficient to trigger inquiry notice." *Benak ex rel. Alliance Premier Growth Fund v. Alliance Capital Mgmt., L.P.*, 435 F.3d 396, 400 (3d Cir. 2006) (internal quotation marks omitted). Accordingly, based on the record of which this Court may take notice, Plaintiffs were on notice of their claims more than three years before they commenced this action, or by August 2006.

In this action, Plaintiffs allege that CGMI, along with the other defendants, engaged in a fraudulent scheme to "artificially support[] and manipulat[e] the so-called auction market" by placing bids in the auctions so that CGMI could continue to earn related fees. (*See, e.g.*, ¶¶ 26, 44). Setting aside the sufficiency of the allegations for the moment, Plaintiffs' claims fail because they were plainly on notice of the alleged fraudulent conduct by no later than May 2006, but failed to assert those claims for over three years, or until the original complaint was filed in August 2009.

Specifically, that broker-dealers bid in auctions for their own accounts and earned fees in connection with the auctions was disclosed in prospectuses for the ARS that Plaintiffs began purchasing as early as 1998. (*See, e.g.*, Exh. A at 47; Exh. B at 35-36). Moreover, the culmination of the SEC's investigation of CGMI (among other broker-dealers) in May 2006 provided Plaintiffs with additional notice at that time that CGMI had been intervening in the auctions to prevent auction failure. (*See* Exh. C at 6.) Indeed, Plaintiffs acknowledge this in the Complaint, as well as that the SEC's investigation was "announced" as early as 2004. (¶ 34). Plaintiffs also acknowledge that this information was reiterated in press articles about the SEC investigation and Order.

(*Id.*).  *See supra* at 3 n.4.  Moreover, beginning in 2006, CGMI's own disclosures clearly indicated to the public, including Plaintiffs, that "Citigroup may routinely place one or more bids in an auction for its own account . . .  to prevent an auction failure . . . or an auction from clearing at a rate that Citigroup believes does not reflect the market for the particular ARS being auctioned."  (Exh. D at 4).

Plaintiffs were therefore on notice of their federal securities fraud claims by no later than May 2006.  Having failed to assert those claims within two years, they are now time-barred.  For the same reasons, Plaintiffs' state common law fraud claim also should be dismissed as time-barred.  *See* N.C. GEN. STAT. § 1-52(9) (2010) (three-year statute of limitations); *Rothman's Tobacco Co. v. Liggett Group, Inc.*, 770 F.2d 1246, 1249 (4th Cir. 1985) (citing *Wilson v. Crab Orchard Dev. Co.*, 171 S.E.2d 873, 884 (N.C. 1970)).

## II.     THE COMPLAINT FAILS TO STATE A CLAIM OF SECURITIES FRAUD AGAINST CGMI

### A.     Plaintiffs Have Suffered No Cognizable Loss

This action should be dismissed because Plaintiffs have suffered no cognizable loss.  While conceding that they now hold only $500,000 of ARS, Plaintiffs seek $8.1 million in damages, including rescission of their remaining ARS holdings, lost interest, consequential damages, and $6.6 million in punitive damages.  (*See, e.g.*, ¶ 2).

The inability to sell certain ARS holdings at par does not constitute an economic loss.  If the auction for a particular ARS "fails," investors may be unable to sell the securities until the next successful auction, but they retain ownership of the security and continue to receive interest payments at the rate defined in the prospectus.  (*See, e.g.*, Exh. A at 44; Exh B at 33).  Though Plaintiffs allege that their ARS are "illiquid" (*see,*

*e.g.*, ¶¶ 44, 49), they fail to plead any facts showing how the illiquidity resulted in economic loss, such as by pleading that they tried but could not sell their ARS. While Plaintiffs claim that the "perceived value" of their ARS has "declined substantially" (¶ 59), nowhere do Plaintiffs plead with any particularity that the ARS they continue to hold actually have been valued below par or have stopped paying interest at the contract rate.

Plaintiffs also attempt to plead a loss by alleging that the interest rates they have received on their ARS, including those already sold, were and are lower than they otherwise would have been absent the alleged fraud. (*See, e.g.*, ¶¶ 2, 57). The flaw in this argument is twofold. First, as already stated, Plaintiffs cannot complain about the rates they have received when they were fully disclosed in the publicly-available prospectuses for the ARS Plaintiffs purchased. Second, Plaintiffs' contention that by concealing the true nature and risks of ARS from investors, Defendants caused interest rates on ARS to be artificially low, rather than artificially high, goes against reason.

To the extent Plaintiffs are seeking consequential and punitive damages, such claims also are without merit. Generally, the measure of damages for fraud is the actual "out-of-pocket" losses sustained, calculated by comparing the value of a plaintiff's account before and after the alleged misconduct. *See, e.g.*, *Sowell v. Butcher & Singer, Inc.*, 926 F.2d 289, 297 (3d Cir. 1991). Any attempt by Plaintiffs to recover damages for items such as alleged losses on other securities, cancelled vacations and "other normal expenditures" as a consequence of the alleged fraud in connection with their ARS investments is tenuous at best. (*See* ¶ 29). It is also well settled that punitive damages are not available on a claim under § 10(b) and Rule 10b-5. *See, e.g.*, *Hunt v. Miller*, 908

9

F.2d 1210, 1216 (4th Cir. 1990).[5] Accordingly, because Plaintiffs have suffered no legally cognizable loss, their securities fraud claims should be dismissed.

### B. Plaintiffs Fail To State a Market Manipulation Claim Against CGMI

Plaintiffs appear to assert a claim against CGMI for market manipulation in violation of § 10(b) and Rule 10b-5 of the Securities Exchange Act. To state a market manipulation claim, a plaintiff must plead: "(1) manipulative acts; (2) damages[;] (3) caused by reliance on an assumption of an efficient market free of manipulation; (4) scienter; (5) in connection with the purchase or sale of securities; (6) furthered by the defendant's use of the mails or any facility of a national securities exchange." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 101 (2d Cir. 2007). Additionally, because a claim of market manipulation sounds in fraud, it must be pleaded with sufficient particularity under Rule 9(b) and the PSLRA. *Id.* at 102 (applying particularity requirement to market manipulation claims).

### 1. The Conduct at Issue Was Not Wrongful And Cannot Form The Basis Of Liability Under The Securities Laws.

Plaintiffs' claim arises from the theory that CGMI – along with the other defendants – manipulated the ARS market, first by submitting bids to ensure that auctions for ARS would not fail, and then by withdrawing this support from the market resulting

---

[5] Nor are punitive damages available on Plaintiffs' state law claims. *See, e.g.*, *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 416 (2003) ("[t]he Due Process Clause . . . prohibits the imposition of grossly excessive or arbitrary punishments on a tortfeasor"); *Barrientos v. Taylor*, 917 F. Supp. 375, 386-87 (E.D.N.C. 1996) ("To recover punitive damages under the North Carolina common law, '[t]he tort in question must be accompanied by additional aggravating or outrageous conduct.'" (citation omitted)). Plaintiffs aver nothing more than the conclusory statement that the defendants' conduct was "outrageous," "inexcusable" and "extreme" (*see, e.g.*, ¶¶ 9, 29), and are thus not entitled to punitive damages.

10

in failed auctions. (*See, e.g.*, ¶¶ 44-49). "Manipulation" is "virtually a term of art when used in connection with securities markets," and refers to practices "such as wash sales, matched orders, or rigged prices," which have been "deemed by the SEC to be 'manipulative' . . . ." *Santa Fe Indus., Inc. v. Green*, 430 U.S. 462, 476-77 (1977) (internal quotation marks omitted). Here, the practice of bidding in auctions, including for the purpose of preventing auction failure, is not only legal, but is an industry practice that has been explicitly acknowledged and condoned by the SEC. (*See* Exh. C). Lawful conduct cannot form the basis for liability under the securities laws. *See GFL Advantage Fund, Ltd. v. Colkitt*, 272 F.3d 189, 209-11 (3d Cir. 2001); *Sullivan & Long, Inc. v. Scattered Corp.*, 47 F.3d 857, 864-65 (7th Cir. 1995).

Moreover, ***deception*** is essential to a claim of manipulation. *See Schreiber v. Burlington N., Inc.*, 472 U.S. 1, 7-8 (1985) (citing *Santa Fe Indus.*, 430 U.S. at 476-77). In this case, CGMI's bidding practices – including bidding to prevent auction failures – were both publicly known and expressly disclosed by CGMI. (*See* Exh. D). *See also In re Citigroup Auction Rate Sec. Litig.*, No. 08 Civ. 3095 (LTS) (FM), 2009 WL 2914370, at *7-8 (S.D.N.Y. Sept. 11, 2009). Indeed, Plaintiffs concede that prospectuses for the ARS that they purchased disclosed the nature and risks of ARS. (¶ 34). Because there was nothing hidden about the bidding practices at issue, they cannot constitute unlawful "manipulation" under Rule 10b-5. *See, e.g., In re Merrill Lynch Auction Rate Sec. Litig.*, No. 09 MD 2030 (LAP), 2010 WL 1257597, at *10-11 (S.D.N.Y. Mar. 31, 2010) ("The market is not misled when a transaction's terms are fully disclosed").

11

### 2.    Plaintiffs Fail To Plead Fraud With The Particularity Required by Rule 9(b) and the PSLRA.

Although less specificity may be required in a market manipulation case than in a misrepresentation case, a pleading that alleges market manipulation is still required to set forth with particularity "what manipulative acts were performed, which defendants performed them, when the manipulative acts were performed, and what effect the scheme had on the market for the securities at issue." *ATSI*, 493 F.3d at 102 (internal quotation marks omitted). "General allegations not tied to the defendants or resting upon speculation are insufficient." *Id.* Indeed, a similar securities fraud class action complaint relating to CGMI's role in the ARS market was recently dismissed, in part, because it "[did] not include specific allegations as to which Defendants performed what manipulative acts at what times and with what effect" and "relie[d] on general and conclusory allegations regarding Defendants' practices in connection with ARS auctions." *In re Citigroup*, 2009 WL 2914370, at *5; *see also Zisholtz v. SunTrust Banks, Inc.*, No. 08 Civ. 1287 (TWT), 2009 WL 3132907, at *6 (N.D. Ga. Sept. 24, 2009).

At the heart of Plaintiffs' claim is their conclusory allegation that CGMI – along with other defendants – engaged in a scheme to prop up the ARS market in order to attract investors and earn fees. (*See, e.g.*, ¶¶ 26, 44-49, 68-69). The Complaint, however, provides no details about the specific "manipulative acts" that were performed by CGMI in furtherance of this alleged scheme, instead vaguely alleging that CGMI, along with other defendants, "employed manipulative and deceptive devices and contrivances." (¶ 73). In fact, the Complaint fails to allege with particularity ***any single action taken by CGMI***, leaving CGMI to speculate as to what conduct Plaintiffs assert was manipulative.

12

For example, the Complaint does not identify a single auction for a single ARS in which CGMI submitted cover bids to prevent a failed auction, let alone an auction for ARS held by Plaintiffs. This is not surprising; it is uncontested that Plaintiffs were not CGMI customers, nor that Plaintiffs had any relationship with CGMI whatsoever.

Far from satisfying the heightened pleading standard required for federal securities fraud claims, the Complaint is replete with general allegations in which CGMI is consistently grouped with the other parties. (*See, e.g.*, ¶¶ 16, 19, 22, 24, 44-49, 56-58, 68-74, 76, 81, 102-103). The Fourth Circuit has repeatedly rejected such "impermissible aggregation of defendants without specifically alleging which defendant was responsible for which act." *Juntti v. Prudential-Bache Sec., Inc.*, 993 F.2d 228, at *2 (4th Cir. 1993) (unpublished opinion - Exh. E); *see also Zaremski v. Keystone Title Assocs., Inc.*, 884 F.2d 1391, at *2 (4th Cir. 1989) (unpublished opinion-Exh. E) (same).

### 3.  Plaintiffs Fail to Sufficiently Plead Reliance.

The Complaint also should be dismissed because CGMI's extensive public disclosures regarding its ARS practices preclude a finding of reasonable reliance upon the assumption that the ARS market was operating efficiently without the intervention of CGMI and other broker-dealers. "Reliance by the plaintiff upon the defendant's deceptive acts is an essential element of the § 10(b) private cause of action." *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 159 (2008); *see also In re Citigroup*, 2009 WL 2914370, at *6 (reliance "on an (ultimately incorrect) assumption of an efficient market free of manipulation" is a necessary element of market manipulation).

It is plainly unreasonable for Plaintiffs to have relied on assumptions about

13

CGMI's role in the ARS market that were directly contradicted by CGMI's own disclosures and other available information.  *See supra* at 3-4.  Indeed, the court in *In re Citigroup* found that plaintiffs had failed to plead reasonable reliance where, as here:

> The 2006 SEC Order . . . and the official statements issued in connection with [plaintiff's ARS holdings] . . . disclosed that Defendants could engage in the very conduct of which Plaintiff complains, the advantages that Defendants would have if they did engage in such conduct, the ability of such conduct to affect clearing rates and the possibility that the auctions would fail if Defendants did not intervene in them.  The documents disclosed that the ARS market was not necessarily set by the "natural interplay of supply and demand," but that they could be set by broker-dealers. . . .

2009 WL 2914370, at *7 (internal citations omitted); *see also In re Merrill*, 2010 WL 1257597, at *20-21.  Plaintiffs concede that the prospectuses for their ARS holdings – all of which were publicly available – "contain[ed] voluminous detail of the auction process and the risk of auction failure and the fact that these were long term securities . . . ." (¶ 34).  Plaintiffs also acknowledge that the SEC announced its investigation of these practices as early as 2004, and that the SEC's findings were reported in 2006.  (*Id.*)

In light of these disclosures, and the absence of any specific allegations of contrary representations by CGMI, Plaintiffs could not reasonably have relied upon an assumption that ARS were "safe, liquid short term money market clones" (¶ 34), or that CGMI did not bid in ARS auctions.  Dismissal of the claim is therefore warranted.[6]  *See Santa Fe*

---

[6]     Having alleged that the ARS market was inefficient, Plaintiffs cannot avail themselves of the "fraud on the market" presumption to plead reliance.  *Gariety v. Grant Thornton, LLP*, 368 F.3d 356, 364 (4th Cir. 2004) (limiting application of the presumption to where plaintiffs can show an efficient market); *see also In re Citigroup*, 2009 WL 2914370, at *7 ("[W]here a plaintiff does not plead that the market in which he purchased his shares was efficient, he cannot rely on the 'fraud-on-the-market presumption' of reliance, and must instead specifically allege reliance") (citations omitted).  CGMI's disclosure of its involvement in the ARS market also negates a "fraud on the market" theory of reliance.  *See, e.g., In re Merrill Lynch*, 2010 WL 1257597, at *15 (holding that due to existence of documents disclosing

*Indus.*, 430 U.S. at 477 ("[N]ondisclosure is usually essential to the success of a manipulative scheme") (internal citation omitted).

### 4. Plaintiffs Fail to Sufficiently Plead Scienter.

Under the PSLRA, plaintiffs are required to state "with particularity facts giving rise to a strong inference" that the defendant acted with fraudulent intent. 15 U.S.C. § 78u-4(b)(2); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 321 (2007); *Ottmann v. Hanger Orthopedic Group, Inc.*, 353 F.3d 338, 344 (4th Cir. 2003). When evaluating if the facts alleged give rise to a strong inference of scienter, "a court must consider plausible nonculpable explanations for the defendant's conduct." *Tellabs*, 551 U.S. at 323. "A complaint will survive . . . only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Id.* at 324. "This pleading requirement is particularly important in manipulation claims because in some cases scienter is the only factor that distinguishes legitimate trading from improper manipulation." *ATSI*, 493 F.3d at 102. The Fourth Circuit has held that courts "should examine all of the allegations in each case to determine whether they collectively establish a strong inference of scienter." *Ottman*, 353 F.3d at 345; *see also In re Lab. Corp. of Am. Holdings Sec. Litig.*, No. 03 Civ. 591, 2006 WL 1367428, at *11 n.10 (M.D.N.C. May 18, 2006).

Here, Plaintiffs' allegations that CGMI wanted to continue receiving fees and commissions associated with its role in the ARS market do not create a strong inference of scienter. (¶¶ 26, 47, 56, 68). Indeed, in several similar ARS-related cases, courts have

defendant broker-dealer's role in the ARS market, plaintiff could not benefit from the "fraud on the market" presumption).

consistently held that motives possessed by all corporations – to protect and improve their economic prospects, for example – do not satisfy the heightened pleading requirements of the PSLRA. *See Oughtred v. E\*Trade Fin. Corp.*, No. 08 Civ. 3295 (SHS), Tr. at 13-14 (Exh. F) (holding that defendant's incentive to earn fees associated with ARS "is insufficient to demonstrate motive and opportunity"); *Defer LP v. Raymond James Fin., Inc.*, 654 F. Supp. 2d 204, 217 (S.D.N.Y. 2009) (same); *In re Citigroup*, 2009 WL 2914370, at \*6 (same).

Plaintiffs' allegations that CGMI participated in a Ponzi-type scheme through which it propped up the market in order to attract new investors and sell its own ARS are equally without merit. (*See, e.g.*, ¶¶ 47-50, 56). The Complaint does not allege facts with any level of particularity that support the allegation that CGMI sought to induce Plaintiffs to purchase ARS, either to sustain overall demand or to allow CGMI to sell ARS from its own inventory. Moreover, CGMI does not dispute the fact that it placed bids in auctions to prevent auction failures, but, as discussed above, CGMI publicly disclosed this fact, and it was recognized as industry practice. *See supra* at 3-4. Such disclosures negate any inference that CGMI acted with an intent to defraud investors regarding its support for the ARS market. *See In re WOW Sec. Litig.*, 35 F.3d 1407, 1425 (9th Cir. 1994) ("[D]etailed risk disclosure[s] negate[] an inference of scienter").

Finally, the Complaint acknowledges that CGMI purchased ARS for its own account up until February 2008. (¶ 16). This increase in CGMI's own ARS inventory belies any inference that CGMI acted with fraudulent intent; it is inconsistent with a belief on CGMI's part that auctions would fail or that ARS would sustain a significant

decrease in value.  *See Ashland Inc. v. Morgan Stanley & Co.*, No. 09 Civ. 5415 (RPP), 2010 WL 1253932, at *11 (S.D.N.Y. Mar. 30, 2010) (finding allegations that a broker-dealer had increased its ARS holdings to induce plaintiff into "an already illiquid auction market" were "economically irrational"); *Davidoff v. Farina*, No. 04 Civ. 7617 (NRB), 2005 WL 2030501, at *11 n.19 (S.D.N.Y. Aug. 22, 2005) ("[I]t would have made no economic sense for defendants to invest literally billions of dollars in a venture that they knew would fail").  Indeed, the larger credit crisis that led to severe market dislocations across the industry gives rise to a stronger competing inference with respect to Plaintiffs' allegations of scienter.  As another court has observed:  "the 'subprime crisis' . . . give[s] rise to an opposing and competing inference that [CGMI] only engaged in bad (in hindsight) business judgments in connection with ARS, and did not engage in the alleged conduct with an intent to deceive investors."  *In re Citigroup*, 2009 WL 2914370, at *6.

### 5.	Plaintiffs Fail To Plead Loss Causation Sufficiently.

As shown in Section A, *supra*, Plaintiffs have suffered no loss and therefore no cognizable injury.  But even if they had suffered a loss, to state a claim under § 10(b) and Rule 10b-5, Plaintiffs must allege an injury that was proximately caused by the alleged misconduct.  *See generally* 15 U.S.C. § 78u-4(b)(4); *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341-42 (2005); *Teachers' Retirement Sys. of La. v. Hunter*, 477 F.3d 162, 186 (4th Cir. 2007).  Dismissal of a complaint is appropriate where a plaintiff has not alleged a causal connection between the alleged fraud and the losses claimed.  *See Dura*, 544 U.S. at 346-47; *Twombly*, 550 U.S. at 557-58.

Plaintiffs' allegations of causation are wholly conclusory (¶¶ 56-59), and therefore

17

insufficient.  Use of phrases such as "directly or proximately[] caused" (¶ 56), fails to meet the pleading requirements.  *See Twombly*, 550 U.S. at 545 ("[A] plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  (internal quotations omitted)).

To the extent Plaintiffs articulate any theory of causation, it appears to be that "[t]he Defendants [sic] deceptive conduct caused the interest rates [on their ARS] to be artificially low," and that these lower rates have also reduced the value of Plaintiff's ARS.  (¶ 57).  However, Plaintiffs allege no facts showing that any conduct or representations by CGMI artificially lowered the rates for Plaintiffs' ARS.  (Nor, as stated earlier, would this make any sense).  Thus, Plaintiffs have not shown that, but for CGMI's conduct, the interest rates and value of their ARS would have been higher.  *See, e.g.*, *Healthcare Fin. Group, Inc. v. Bank Leumi USA*, 669 F. Supp. 2d 344, 349-50 (S.D.N.Y. 2009) (dismissing § 10(b) claim in an ARS-related case for failure to show that auction failures were caused by alleged misconduct).

Moreover, the auction failures were a marketwide phenomenon resulting from an imbalance of supply and demand.  The courts have recognized that economic loss can be the product of a "tangle of factors."  *Dura*, 544 U.S. at 343.  Where, as here, the alleged "'loss coincides with a marketwide phenomenon causing comparable losses to other investors . . . a plaintiff's claim fails when it has not adequately ple[]d facts which, if proven, would show that its loss was caused by the alleged [misconduct] as opposed to intervening events.'"  *In re Acterna Corp. Sec. Litig.*, 378 F. Supp. 2d 561, 588 (D. Md.

2005) (quoting *Lentell v. Merrill Lynch & Co. Inc.*, 396 F.3d 161, 174 (2d Cir. 2005)).

## C. Plaintiffs Fail To State A Misrepresentation Or Omission Claim Against CGMI

In addition to failing to plead a market manipulation claim, Plaintiffs also have failed to plead a claim based on purported misrepresentations and omissions by CGMI. To state such a claim for relief under § 10(b) and Rule 10b-5, a plaintiff must sufficiently plead each of the following elements: (1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) loss causation. *See Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 157 (2008); *Matrix Capital Mgmt. Fund, LP v. BearingPoint, Inc.*, 576 F.3d 172, 181 (4th Cir. 2009).

Any claims by Plaintiffs that CGMI made material omissions and affirmative misstatements should fail. As an initial matter, Plaintiffs have not alleged – let alone alleged with particularity – a single misstatement made to them by CGMI. Indeed, it is uncontested that Plaintiffs were not CGMI customers, and Plaintiffs have failed to allege any interaction with CGMI. Plaintiffs' inability to identify any material misstatement made to them by CGMI is clearly fatal to a misrepresentation claim. *See Gariety*, 368 F.3d at 369. Equally fatal is Plaintiffs' failure to identify a single actionable omission by CGMI, or to allege facts supporting a claim that CGMI had a duty to disclose any purportedly omitted information. *See Basic, Inc. v. Levinson*, 485 U.S. 224, 239 n.17 (1988) ("Silence, absent a duty to disclose, is not misleading under Rule 10b-5"). Finally, because, as noted above, Plaintiffs have failed to sufficiently plead reasonable reliance, scienter, or loss causation, Plaintiffs' claim for misrepresentation or omission, if

19

any, should be dismissed.  *See supra* at 13-19.

### III.  PLAINTIFFS' STATE LAW CLAIMS AGAINST CGMI ALSO FAIL

Because Plaintiffs have not sufficiently alleged the common elements of misrepresentation or omission, scienter, and reliance, *see supra* at 13-20, their state law claims for common law fraud and obtaining property by false pretenses are fatally deficient.  *See, e.g.*, *Ragsdale v. Kennedy*, 286 N.C. 130, 138 (N.C. 1974) (outlining elements of a North Carolina common law fraud claim); *State v. Wright*, 685 S.E.2d 109, 115 (N.C. App. Ct. 2009) (discussing a "conviction for obtaining property by false pretenses").  Moreover, North Carolina law does not recognize a private civil right of action for obtaining property by false pretenses, a criminal offense.  *See generally*  N.C. GEN. STAT. § 14-100(a); *see also Wright*, 685 S.E.2d at 115.  Even if there were such a private right of action, because CGMI did not sell Plaintiffs the securities at issue, CGMI did not "obtain[] or attempt to obtain anything of value" from Plaintiffs, thereby further warranting dismissal of the claim.  *Wright*, 685 S.E.2d at 115.

### <u>CONCLUSION</u>

For the reasons set forth above, CGMI respectfully requests that the Court dismiss the claims against CGMI in their entirety and with prejudice.

Dated:  June 18, 2010

Carl Burkhalter
cburkhalter@maynardcooper.com
**MAYNARD COOPER & GALE PC**
1901 Sixth Avenue North
2400 Regions/Harbert Plaza

Respectfully submitted,

By: /s/ Dana C. Lumsden
Dana C. Lumsden [N.C. Bar No. 32497]
dlumsden@hunton.com
**HUNTON & WILLIAMS LLP**
Bank of America Plaza
101 South Tryon Street, Suite 3500

20

Birmingham, Alabama 35203  
(205) 254-1000  
(205) 254-1999 ~ Fax

Charlotte, North Carolina 28280  
(704) 378-4700  
(704) 378-4890 ~ Fax

*Attorneys for Defendant*  
*Citigroup Global Markets Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of June, 2010, I caused a true and correct copy of this **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT CITIGROUP GLOBAL MARKET INC.'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT** to be electronically filed with the clerk of the court for the United States District Court for the Middle District of North Carolina and served on the following counsel for the parties to this lawsuit using the CM/ECF System:

| | |
|---|---|
| Howard L. Kastel, Esq.<br>10393 Holt<br>Chapel Hill, North Carolina 27517 | Jack M. Knight, Esq.<br>WINSTON & STRAWN LLP<br>214 North Tryon Street<br>Charlotte, North Carolina 28202-1078 |
| Alan M. Ruley, Esq.<br>BELL, DAVIS & PITT, P.A.<br>Century Plaza, Suite 600<br>100 North Cherry Street<br>Winston-Salem, North Carolina 27120-1029 | Ronald R. Davis, Esq.<br>WOMBLE CARLYLE SANDRIDGE<br>& RICE, PLLC<br>One West Fourth Street<br>Winston-Salem, North Carolina 27101 |

/s/ Dana C. Lumsden.
Dana C. Lumsden, Esq.

22