IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION

| | | |
|---|---|---|
| HOWARD L. KASTEL, TRUSTEE OF<br>THE HOWARD L. KASTEL TRUST<br>DATED NOVEMBER 13, 1985 and<br>JOAN H. KASTEL, | ) <br>) <br>) <br>) <br>) | |
| Plaintiffs, | ) <br>) | |
| v. | ) <br>) | Case No. 1:09-CV-646 |
| NUVEEN INVESTMENTS, INC.,<br>NUVEEN INVESTMENTS LLC, ROBERT<br>P. BREMNER, MESIROW FINANCIAL<br>INC., LAWRENCE M. COHEN, | ) <br>) <br>) <br>) <br>) <br>) | |
| Defendants. | ) | |

**BRIEF IN SUPPORT OF MESIROW FINANCIAL, INC.
AND LAWRENCE M. COHEN'S MOTION TO DISMISS
SECOND AMENDED COMPLAINT**

## STATEMENT OF NATURE OF MATTER BEFORE THE COURT

Plaintiffs Howard Kastel, Trustee of the Howard L. Kastel Trust dated November 13, 1985, and Joan Kastel ("Plaintiffs") allege a plot by Nuveen Investments, Inc. ("Nuveen") to sponsor, conduct and promote a market for auction rate securities ("ARS") that Plaintiffs describe as a "Ponzi Scheme."[1] Plaintiffs contend that Nuveen coordinated with certain, unnamed broker dealers to artificially support and manipulate the ARS market to maintain the appearance of liquidity, purposefully kept regulators, brokers, and investors in the dark by withholding accurate disclosures and issuing false information to hide the market's risks of illiquidity, and conspired to sell their shares of ARS simultaneously, resulting in the collapse of the market in February 2008.[2] Plaintiffs allege that they were injured by the "Ponzi Scheme" when they were unable to redeem a portion of their shares of ARS.[3]

Critically, Plaintiffs acknowledge that Defendants Mesirow Financial Inc. ("Mesirow") and Lawrence Cohen ("Cohen") were not parties to this scheme. Rather, Plaintiffs allege that they purchased their ARS through Mesirow and Cohen. Plaintiffs

---

[1] In their original and first amended complaints, Plaintiffs alleged that Nuveen was joined in this scheme by former defendants Merrill Lynch & Co., Inc., Citigroup Global Markets, and Deutsche Bank AG. First Amended Complaint, ¶¶2-4.

[2] Mesirow and Cohen do not concede the existence of such a scheme, but accept as true Plaintiffs' allegations solely for the purposes of this Motion to Dismiss.

[3] In fact, Plaintiffs have already redeemed $1.7 million of the $2.2 million in ARS that Plaintiffs held at the time of the market's collapse. Compl., ¶ 51. Plaintiffs seek to recover the remaining $500,000 in unredeemed ARS, as well as consequential and exemplary damages, and attorney's fees. *Id.* It is Mesirow's understanding that the funds which include the remaining $500,000 in ARS held by Plaintiffs are scheduled to redeem those ARS in the first week of January 2011.

further allege – in conclusory fashion without any factual support – that Mesirow and Cohen somehow knew of the supposed scheme by Nuveen to artificially "prop up" the ARS market and that they knowingly misrepresented the liquidity risks of ARS.

Plaintiffs' theories of liability as to Mesirow and Cohen cannot withstand the weight of their own pleadings. Indeed, by their own admissions: (1) Plaintiffs bought and sold without incident over 100 shares of ARS over a ten-year period, prior to the ARS market's collapse; (2) Mesirow was not a party to the "unlawful exchange" that is the centerpiece of Plaintiffs' Complaint; (3) Nuveen intentionally disseminated misleading information regarding the risks of illiquidity to ARS; (4) Cohen invested over a million dollars of his own money in Nuveen ARS and held shares at the time the ARS market collapsed; and (5) Mesirow and Cohen were "shocked" upon the collapse of the ARS market and urged Nuveen to fully redeem Plaintiffs' shares of Nuveen ARS.

Although Plaintiffs ask the Court to infer, without any factual support, a corrupt motive for Mesirow and Cohen's sale of Nuveen ARS, the only plausible conclusion that can be drawn by Plaintiffs' Second Amended Complaint[4] (the "Complaint") is that Mesirow and Cohen did not know, nor had reason to know, that underwriting firms would withdraw their support of ARS and the market would collapse. Because Plaintiffs'

---

[4] Plaintiffs filed their original complaint on August 21, 2009. After the matter was temporarily stayed, Mesirow provided Plaintiffs with a letter dated December 10, 2009 (the "December Letter"), pursuant to agreement of the parties, setting forth the bases upon which a motion to dismiss would likely be made. A copy of the letter is attached hereto as Exhibit A. On April 28, 2010, Plaintiffs filed their First Amended Complaint, adding Mr. Cohen as a defendant and slightly altering their allegations against all of the defendants. On June 11, 2010, Mesirow and Mr. Cohen moved to dismiss the First Amended Complaint. (Dkt #40). On October 18, Plaintiffs moved for leave to file a Second Amended Complaint. (Dkt #66). On November 25, 2010 Plaintiffs filed their Second Amended Complaint. (Dkt #74).

own pleadings suggest no fraudulent behavior by Mesirow or Cohen – and, in fact, demonstrate the opposite – Plaintiffs' claims against Mesirow and Cohen should be dismissed with prejudice.

## PLAINTIFFS' UNDERLYING FACTUAL ALLEGATIONS

Plaintiffs allege that in ARS, Nuveen created a fraudulent investment device "that appeared to be long-term from the perspective of the borrowers . . . but short-term from the perspective of the [Plaintiffs] and other investors." Compl., ¶45.[5] Plaintiffs allege that Nuveen created an unregistered exchange that "constituted a continuous offering of [ARS] through affiliates and underwriters." *Id.* at ¶38. Plaintiffs describe the unlawful exchange as an "opaque process" that "permitted its participants to favor themselves over non-member brokers" (such as Mesirow). *Id.*[6] Plaintiffs allege that in conducting the unregistered exchange, Nuveen "artificially support[ed] and manipulat[ed] the so-called auction market to maintain the appearance of liquidity and stability." *Id.* Plaintiffs contend that Nuveen knew that the ARS market lacked sufficient investor interest in ARS, but that broker dealers participating in Nuveen's "Ponzi scheme" "propped up" the

---

[5] ARS are debt securities with a long-term maturity date and an interest rate that is regularly reset at periodic Dutch auctions that typically occur every 7, 14, 28 or 35 days. Buyers specify the number of shares they want and the lowest interest rate they would accept. The lowest rate at which all securities can be sold becomes the clearing rate, which then becomes applicable to all bids offered at that rate or lower. Where there are insufficient bids to cover all securities offered at a given auction, the auction fails and no securities can be sold. Compl., ¶14; *Healthcare Finance Group, Inc. v. Bank Leumi USA,* 669 F.Supp. 2d 344, 346 (S.D.N.Y. 2009) (explaining ARS market); *Defer LP v. Raymond James Fin., Inc.,* 654 F.Supp. 2d 204, 207 (S.D.N.Y. 2009) (same); *Aimis Art Corp. v. Northern Trust Secs., Inc.,* 641 F.Supp. 2d 314, 316-17 (S.D.N.Y. 2009) (same).

[6] Mesirow was not a member-broker of the alleged unlawful exchange. Compl., ¶¶15; 26(a); 38.

3

ARS market by purchasing ARS themselves, thereby inflating the perceived investor demand in the ARS market and preventing auctions from failing. *Id.* at ¶¶28, 30, 41-43.

Notably, the Complaint further contends that Nuveen hid its purported scheme by disbursing false and misleading information regarding the risks associated with ARS in order to promote a continuous flow of investor dollars into the ARS market. *Id.* at ¶¶13, 30, 38-46. Plaintiffs allege that in order to perpetuate the scheme and attract investor interest, Nuveen marketed ARS as liquid short-term investments, submitted misleading and obfuscatory registration statements to the Securities and Exchange Commission, and failed to issue prospectuses to investors – including Mesirow – disclosing the true risk regarding ARS investments. *Id.* at ¶¶37-38, 41, 43, 46. Plaintiffs assert that in January 2008, the rate of auction failures had increased and that "Nuveen had specific knowledge of the . . . pending failure of more Nuveen Fund auctions that would result from Lehman Brothers' decision to discontinue propping up the Nuveen ARPS auctions as of, on or about, February 13, 2008." *Id.* at ¶28. Plaintiffs further allege that "Lehman Brothers withdrawal of support triggered the simultaneous withdrawal by other broker dealers" from the ARS auction exchange, resulting in the collapse of the ARS market "when Nuveen's broker dealers, by parallel conduct, stopped supporting the auctions," and rendering Plaintiffs' ARS illiquid. *Id.* Finally, Plaintiffs allege that upon learning that ARS auctions had failed, rather than disclose this information to investors, Nuveen continued to publish false and misleading information regarding the risks involved with ARS in order to maintain investor confidence and demand in the ARS market. *Id.* at ¶30.

4

As to Defendants Mesirow and Cohen, Plaintiffs fail to allege any particularized *facts* demonstrating that Mesirow or Cohen had any knowledge of Nuveen's supposed scheme to articificially prop up the ARS market. Instead, the Complaint only alleges that between January 1998 and February 2008, Mesirow sold ARS to Plaintiffs without adequately disclosing the risks of illiquidity associated with ARS. *Id.* at ¶¶23-26. Although Plaintiffs had purchased and sold ARS through Cohen and Mesirow without incident for over ten years, Plaintiffs contend that Cohen's description of ARS as a liquid and "safe short term preferred" investment was inaccurate, and that had Plaintiffs known of the risks associated with purchasing ARS, they would not have purchased any shares. *Id.* at ¶23. Remarkably, Plaintiffs readily acknowledge that Cohen invested millions of his own dollars in Nuveen ARS, and that upon the market's collapse in February 2008, Cohen wrote to Nuveen, telling Nuveen that he was "shocked" by the collapse because "Nuveen ha[d] not uttered a word about this crisis," and advising Nuveen that it should redeem the ARS purchased by shareholders, including Plaintiffs. *Id.* at ¶54. Since the collapse of the market, $1.7 million of Plaintiffs' $2.2 million investment in Nuveen ARS have, in fact, been redeemed. *Id.* at ¶¶50-51.

## QUESTIONS PRESENTED

1) Whether Plaintiffs have pled a cause of action for federal securities fraud when they have failed to allege facts sufficient to meet the particularity pleading requirements of Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4(b)(2), have failed to allege facts giving rise to a strong inference that Mesirow and Cohen acted with scienter in selling Nuveen ARS, and have failed to allege facts demonstrating that their purported damages were caused by the misrepresentations that Mesirow and Cohen are alleged to have made.

5

2)    Whether Plaintiffs have stated claims for common law fraud and unjust
      enrichment, and for violations of state securities laws, where Plaintiffs failed to
      allege facts with particularity and have failed to allege facts demonstrating that
      Mesirow and Cohen acted with the requisite scienter in selling Nuveen ARS.

3)    Whether Plaintiffs have stated a claim for breach of fiduciary duty when neither
      Mesirow nor Cohen owed Plaintiffs any fiduciary duty.

4)    Whether Plaintiffs' allegations of economic worries adequately state a claim for
      intentional or negligent infliction of emotional distress.

## ARGUMENT

## I.    PLAINTIFFS HAVE FAILED TO ALLEGE A CLAIM UNDER SECTION 10(b) OF THE SECURITIES EXCHANGE ACT AND RULE 10b-5.

Plaintiffs purport to state a claim against all Defendants for violation of Section

10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and SEC Rule 10b-5,

17 C.F.R. § 240.10b-5 (Count III).  In order to set forth a claim under Rule 10b-5 against

Mesirow and Cohen, Plaintiffs must allege that Mesirow and Cohen:  (1) made

misstatements or omissions of material fact; (2) with *scienter*; (3) upon which Plaintiffs

relied; (4) and which proximately caused Plaintiffs economic loss.  *See, e.g., Cozzarelli v.*

*Inspire Pharms., Inc.*, 549 F.3d 618, 623 (4th Cir. 2008); *Matrix Corp. Mgmt. Fund v.*

*BearingPoint, Inc.*, 576 F.3d 172, 192 (4th Cir. 2009).  These substantive elements are

"demanding," and are not met if the facts alleged give rise to a benign inference that is at

least as compelling as the opposing inference.  *Cozzarelli*, 549 F.3d at 623.

### A.    The Complaint Fails To Allege With Particularity A Material Misrepresentation Or Omission By Mesirow.

Because claims under § 10(b) sound in fraud, they are governed by Rule 9(b) and

the heightened pleading requirements of the PSLRA.  As such, in order to plead a

misstatement or omission of material fact:

6

Particularity of pleading is required with regard to the time, place, speaker, and contents, as well as the manner in which statements are false and the specific acts raising an inference of fraud – the "who, what, where, why and when."

*In re First Union Sec. Litig.*, 128 F.Supp. 2d 871, 884 (W.D.N.C. 2001).

The Plaintiffs' allegations do not meet the heightened particularity requirements of the PSLRA. In fact, despite being 56 pages long, the Complaint contains virtually none of the "who, what, where, why and when" regarding any supposed misrepresentations by Mesirow. Instead, Plaintiffs repeatedly refer to the "Defendants" indiscriminately, without setting forth facts specific to each individual defendant. Indeed, after generally describing their relationship with Cohen, the Plaintiffs' only allegations of misrepresentation specific to Cohen or Mesirow are limited to a handful of alleged conversations in which Cohen purportedly described ARS as "short term," liquid investments. Compl., ¶¶23-25, 35.[7] These isolated allegations, however, are entirely too vague to support Plaintiffs' claim. There is no description of the context in which the alleged statements were made, or the specific time and place of such statements. The precise timing and specific context of any alleged misstatement is critical in a case alleging securities fraud. *Hillson PartnersLtd. v. Adage, Inc.,* 42 F.3d 204, 216-17 (4th Cir. 1994). Absent particularized allegations describing precisely what Mr. Cohen said,

---

[7] Of the five statements alleged to have been made by Cohen to Plaintiffs regarding ARS, *see* Compl., ¶¶23-25, 35, 37, at least two did not even concern the Nuveen ARS that are at issue here. Instead, these allegations date back to Plaintiffs' initial purchases of ARS – shares, as Plaintiffs concede in their Complaint, that were in fact liquid and were sold without incident upon Plaintiffs' instruction. *See* Compl., ¶¶23-24.

7

when he said it and the context in which it was said, neither Mesirow, Cohen nor this Court have any basis upon which to evaluate the Plaintiffs' claims of misrepresentation.

Not only do these allegations fail to specifically set forth the "what," the "when," and the "where" of any alleged misrepresentations by Mesirow or Cohen, Plaintiffs also fail to explain the reasons "why" any statement was false or misleading at the time it was made. *See Teachers' Ret. Sys. of Louisiana v. Hunter*, 477 F.3d 162, 172 (4th Cir. 2007) (noting that the PLSRA requires a complaint to include, *inter alia*, the "*reason* or reasons why the statement is misleading"). To the contrary, Plaintiffs acknowledge that between 1998 and 2008 they bought and sold numerous ARS without incident. Compl., ¶23-25. Indeed, between their initial investment in ARS in 1998 and the time of their move to North Carolina, Plaintiffs bought and sold no less than 101 shares of ARS with no inhibition to their liquidity. *Id.* Thus, to the extent that Cohen characterized ARS as "safe" or "liquid" at those times, during 1998 through 2007, this was not a misrepresentation. Moreover, the ARS held by Plaintiffs when this suit was launched were purchased in August and early September of 2007. The Plaintiffs have not alleged any particularized facts suggesting that at the time of these purchases, Cohen or Mesirow had reason to believe that these ARS had any greater liquidity risk than those readily bought and sold by Plaintiffs during the previous nine years. Without such particularized allegations, the Complaint alleges nothing more than "fraud by hindsight." *Winer Family Trust v. Queen*, 503 F.3d 319, 332 (7th Cir. 2007) (dismissing securities fraud claim because complaint was "an impermissible attempt to prove fraud by hindsight").

8

**B.** **The Complaint Lacks Facts Leading To A Strong Inference of Scienter**

The PLSRA requires that the Complaint "state with particularity facts giving rise

to a strong inference that [each] defendant acted with the required state of mind." 15

U.S.C. § 78u-4(b)(2). Plaintiffs satisfy this heavy burden "only if a reasonable person

would deem the inference of scienter cogent and at least as compelling as any opposing

inference one could draw from the facts alleged." *Tellabs, Inc. v. Makor Issues & Rights,*

*Ltd.*, 551 U.S. 308, 324 (2007). To demonstrate scienter, Plaintiffs must allege facts that

support a "strong inference" that "each defendant acted with intent to deceive,

manipulate, or defraud or with severe recklessness regarding the danger the Plaintiffs

would be misled." *In re Inspire Pharms., Inc. Sec. Lit.*, 515 F.Supp. 2d 631, 639

(M.D.N.C. 2007) (internal quotations omitted). Where there is a corporate defendant, the

corporation "is deemed to have the requisite scienter for fraud only if the individual

corporate officer making the misstatement has the requisite level of scienter." *Ahmed v.*

*Porter*, No. 09-0101, 2009 U.S. Dist. LEXIS 73650, at *60 (W.D.N.C. June 23, 2009).

Finally, only "particularized" facts can be considered in determining whether Plaintiffs

have met their pleading burden. *In re First Union Corp. Sec. Lit.*, 128 F.Supp. 2d at 886.

As such, Plaintiffs cannot demonstrate that Mesirow and Cohen acted with scienter

merely by repeatedly saying so. While Plaintiffs routinely assert that the "Defendants"

knew that ARS had a risk of illquidity, the Complaint lacks any facts to support

Plaintiffs' conclusory assertions as to Mesirow or Cohen. Therefore, those conclusory

9

allegations must be disregarded. *See Berry Floor NV*, 2010 U.S. Dist. LEXIS 39423, at

*8; *Breeden v. Richmond Comm. College*, 171 F.R.D. 189, 197-98 n.8 (M.D.N.C. 1997).

In the wake of the unanticipated collapse of the ARS market, a number of courts

have dismissed claims brought by investors against brokers involving allegations similar

to those raised by Plaintiffs here. Most recently, in *Vining v. Oppenheimer Holdings,*

*Inc.*, No. 08-4435, 2010 WL 3825722 (S.D.N.Y. Sept. 29, 2010), the court dismissed

Rule 10b-5 claims against financial advisors, where the plaintiffs asserted that the advisor

defendants misleadingly described ARS as "better than cash," "highly liquid," and "cash-

like investments." *Id.* at *2-3. The *Vining* plaintiffs claimed that the defendants failed to

disclose that the artificial demand in ARS was created by auction dealers' intervention in

the ARS market, that the cessation of dealer intervention would result in a dramatic loss

of liquidity, and that market failures had, in fact, occurred prior to the plaintiffs' purchase

of ARS. *Id.* at *3. The district court dismissed the complaint, finding the plaintiffs had

failed to allege facts supporting a strong inference of scienter. The court reasoned that

the complaint had not suggested that the defendants had any particular motive to defraud

the plaintiffs, as the defendants' receipt of brokerage fees and their desire to maintain

business relationships with auction dealers was nothing more than a "generalized motive"

that was equally applicable to all for-profit advisors. *Id.* at *7. The court held further

that in light of the 20-year successful history of the ARS market, the defendants'

knowledge of the potential effect of dealer withdrawal did not amount to recklessness,

10

explaining "[s]imply knowing what would happen if those policies changed does not equate with knowing that they would change." *Id.* at *9.

The opinion in *Vining* follows the well-tread path of other courts that have likewise rejected § 10b-5 claims arising from the collapse of the ARS market. *See, e.g., Defer v. Raymond James Fin., Inc.*, 654 F.Supp. 2d 204, 219 (S.D.N.Y. 2009) (holding that broker-dealer subsidiary defendant not alleged to have acted with scienter in selling ARS underwritten by its corporate sibling); *In re Merrill Lynch Auction Rate Securities Lit.*, 704 F.Supp.2d 378, 403 (S.D.N.Y. 2010) (dismissing §10b-5 claims against sponsor of ARS market); *Zisholtz v. SunTrust Banks, Inc.*, No. 08-cv-1287, 2009 U.S. Dist. LEXIS 88465, at *6 (N.D. Ga. Sept. 24, 2009) (dismissing §10b-5 claims brought against brokers where plaintiffs allege brokers failed to inform plaintiffs of risks of illiquidity in ARS market and falsely advised plaintiffs that ARS were a "7 day paper, money market account" and would provide "complete liquidity in 7 days, low risk/low yield"). *See also supra*, note 5 (citing cases).

The same result is compelled here. Not only do Plaintiffs' allegations fall well short of demonstrating scienter, the facts asserted in the Complaint strongly suggest that Mesirow and Cohen sold Nuveen ARS without any intention to deceive or defraud Plaintiffs. In fact, Plaintiffs' allegations make it clear that Mesirow and Cohen were outsiders to the fraudulent scheme attributed to Nuveen. Specifically, Plaintiffs allege that: (1) Nuveen created and managed an "unlawful exchange" to administer the sale of ARS (Compl., ¶38); (2) Mesirow was not a participating broker in the exchange (*id.* at

11

¶¶15, 26, 38); (3) "[b]y utilizing the fiction of a 'Dutch Auction,' Nuveen and the so-called Nuveen Closed End Funds sponsored a process that enabled it to transfer the ARPS to unsuspecting individual investors without any corrected or updated disclosures" (*id.* at ¶42); (4) a lack of market interest "resulted in an accelerated propping up of the auctions by the Broker Dealers" (*id.* at ¶28); (5) Nuveen published marketing materials that were out-of-date and incorrect and marketed ARS as liquid despite being on notice that ARS "were not short term liquid money market investments" (*id.* at ¶¶41-42); (6) Nuveen filed misleading and obfuscatory registration statements with the SEC and "engaged in sophisticated trickery to avoid disclosure" of the risks associated with ARS (*id.* at ¶43); (7) it was essential to the alleged scheme to hide the illiquid nature of the ARS and thus to refuse to issue prospectuses (*id.* at ¶37); and (8) neither Mesirow nor Cohen received from Nuveen a copy of the relevant prospectuses (*id.* at ¶52).

Tellingly, Plaintiffs further acknowledge that Mesirow and Cohen -- who had invested millions of his personal funds in Nuveen ARS -- were as surprised by the ARS market collapse in February 2008 as were the Plaintiffs. Indeed, Plaintiffs attach to their Complaint an email from Cohen sent on the date of the market's collapse, wherein he wrote to Nuveen explaining that he was "shocked" that ARS auctions were failing. Cohen wrote further: "As an advisor and a shareholder in both the ARPS (several million of my own money) and common stocks of your funds Nuveen has not uttered a word about this crisis." *Id.* at ¶54. Cohen in fact urged Nuveen to repay Plaintiffs, writing that that his "view is that the funds should borrow money and offer liquidity to the preferred

12

shareholders who want to redeem." *Id.* Thus, based upon Plaintiffs' own allegations, the most cogent and compelling inference is that Mesirow and Cohen were unaware of the supposed scheme by Nuveen and, therefore, lacked the requisite scienter to support a Rule 10b-5 claim. Because Cohen is not alleged to have acted with the requisite scienter, his employer Mesirow cannot be deemed to have made representations with the intent to defraud Plaintiffs. *Ahmed* 2009 U.S. Dist. LEXIS 73650, at *60.[8]

Plaintiffs' Complaint also fails to allege facts demonstrating that Mesirow or Cohen had any motive to defraud Plaintiffs. Plaintiffs allege that Mesirow was motivated to sell ARS to the Plaintiffs because of the fees it received from Nuveen. Compl., ¶30. A generalized desire to earn fees, however, cannot provide a basis upon which to infer that Mesirow acted with intent to defraud. *See Ottmann v. Hanger Orthopedic Group, Inc.*, 353 F.3d 338, 352 (4th Cir. 2003). Likewise, Plaintiffs' allegation that Mesirow had an incentive to promote Nuveen ARS because certain unnamed "officers and employees" owned common shares of Nuveen funds fails to demonstrate that Mesirow or Cohen acted with an intent to defraud. Compl., ¶28 Plaintiffs do not identify the officers and employees who allegedly owned common shares in Nuveen funds, the specific Nuveen funds in question, or the amount of Nuveen shares allegedly owned by Mesirow officers

---

[8] Although not the basis of this motion, it is telling that Plaintiffs conceded in their original Complaint that Mesirow and Cohen were fellow victims of an alleged conspiracy among Nuveen and certain underwriting firm defendants, acknowledging that "Nuveen caused the downstream broker dealers [such as Mesirow] to receive misleading, incomplete, inadequate, mostly word of mouth fragments of information regarding the risks associated with the ARPS." Original Compl., ¶ 35. It was only after receiving Mesirow's December Letter outlining the deficiencies in the original complaint that Plaintiffs amended their complaint and removed this allegation from their First Amended Complaint.

and employees. Plaintiffs also fail to allege whether this unspecified ownership of common shares of Nuveen funds was known to other Mesirow employees (i.e., Cohen), whether Nuveen ARS were promoted for sale more prominently as a result, or how the sale of Nuveen ARS benefitted these unnamed Mesirow officers and employees. Thus, Plaintiffs' allegation is nothing more than a generalized, conclusory assertion of conflicted interest without any facts to support it, and it should be disregarded. *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009).

By pleading that Nuveen disseminated false information to the market, and acknowledging that Mesirow and Cohen were "shocked" by the sudden illiquidity in the ARS market in February 2008, Plaintiffs' Complaint gives rise to the compelling inference that Mesirow and Cohen were unaware that the ARS market was somehow being "propped up" by Nuveen and its collaborating broker dealers and was at risk of collapsing in 2007 when Plaintiffs purchased the Nuveen ARS at issue. Not only does the Complaint fail to allege particularized facts supporting a strong inference of scienter for Mesirow and Cohen, it affirmatively acknowledges that Mesirow and Cohen were unaware of the supposed scheme upon which Plaintiffs' Complaint is based.

### C. Plaintiffs Cannot Show Loss Causation

Plaintiffs' Complaint also fails because they cannot show that any losses they suffered as a result of the ARS market collapse were caused by the misrepresentations they allege Mesirow and Cohen to have made. "Loss causation . . . is the proximate causal link between the alleged misconduct and the plaintiff's economic harm." *ATSI*

14

*Comms., Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 106 (2d Cir. 2007). To prove loss causation in the Rule 10b-5 context, a plaintiff must show that the defendants' alleged misrepresentations or omissions caused the loss suffered by the plaintiff. *Teachers' Ret. Sys.*, 477 F.3d at 185; *see also Gasner v. Bd. Of Supervisors*, 103 F.3d 351, 360 (4th Cir. 1996). Plaintiffs' securities fraud claims fail because they cannot show that purported misrepresentations made by Mesirow and Cohen caused the harm they allege – the illiquidity of their investments due to the failure of Nuveen ARS auctions. Instead, by Plaintiffs' own allegations, Plaintiffs' ARS became illiquid when "Lehman Brothers withdrew and the market collapsed [on] or about February 11, 2008 when Nuveen's broker dealers (a group that did not include Mesirow), by parallel conduct, stopped supporting the auctions thereby freezing the ARPS held by the Kastels and thousands of other individual investors." Compl., ¶28.

The recent opinion in *Healthcare Finance Group, Inc. v. Bank Leumi USA*, 669 F.Supp. 344 (S.D.N.Y. 2009) ("*HFG*") is instructive and virtually on all fours on this issue. In *HFG*, plaintiff asserted securities fraud claims against the broker-dealer defendant for losses arising out of the collapse of the ARS market. The *HFG* plaintiff claimed that the defendant fraudulently assured plaintiff that the ARS "were virtually the same as cash or money market funds and highly liquid, safe, short-term investment vehicles" and that the *HFG* defendants failed to "provide basic information about the auction rate securities, including the fact that auctions were historically supported by

15

underwriter/broker-dealers who placed last minute support bids in order to prevent auction failure." *HFG*, 669 F.Supp. 2d at 347.

On the defendant's motion to dismiss, the *HFG* court held that although the plaintiff's pleadings satisfied the transaction causation requirement of a Rule 10b-5 claim – by asserting that it would not have purchased the ARS but for the claimed misrepresentations –the plaintiff had not alleged that the misrepresentations caused the failure of the ARS auctions that had rendered the plaintiff's investment illiquid and inaccessible. *Id.* at 349. The court explained:

> The Amended Complaint states that "the collapse in the auction rate securities market" resulted when "all of the major underwriter/broker-dealers refused to continue to support the auctions." HFG thus has not alleged that the *subjects* of the fraudulent statements or omissions were the cause of the actual loss suffered.

*Id.* (internal citations and alterations omitted).

For the same reasons, Plaintiffs here cannot establish that Mesirow and Cohen's alleged misstatements caused Plaintiffs' purported losses. The collapse of the ARS market caused Plaintiffs' losses. According to Plaintiffs' allegations, the market collapse was caused by the parallel withdrawal from the ARS market by Lehman Brothers and other broker dealer members of the "unlawful exchange." Compl., ¶28. This cause of the collapse of the ARS market has no relation to any misrepresentation alleged to have been made by Mesirow and Cohen. Thus, Plaintiffs have not plausibly alleged that the collapse of the ARS market was caused by the revelation of the information that Mesirow and Cohen had allegedly misrepresented or omitted.

16

## II.    PLAINTIFFS' STATE LAW CLAIMS SOUNDING IN FRAUD FAIL.

Plaintiffs' failure to plead with particularity and inability to plead facts plausibly raising a strong inference of scienter likewise dooms their claims arising under the Illinois and North Carolina securities acts (Counts VII and VIII). *See Baron v. Chrans*, No. 05-3240, 2008 U.S. Dist. LEXIS 56727, at *61 (C.D. Ill. July 21, 2008); *Donovan v. ABC-Naco, Inc.*, No. 02-1951, 2002 U.S. Dist. LEXIS 12797, at *12-15 (N.D. Ill. July 12, 2002); *Ahmed*, 2009 U.S. Dist. LEXIS 73650, at *58-59; *see also Timberlake Collection, Inc. v. Edwards*, 626 S.E.2d 315, 322 (N.C. Ct. App. 2006).

Similarly, Plaintiffs' North Carolina state common law claim for fraud (Count V) must be dismissed for the Plaintiffs' failure to meet the heightened pleading standards and their inability to plead facts plausibly suggesting a strong inference of scienter. *Forbes v. The Par Ten Group, Inc.*, 394 S.E.2d 643, 647 (N.C. Ct. App. 1990) (setting forth elements of fraud claim under North Carolina law and noting that fraud requires showing of scienter); *TSC Research, LLC v. Bayer Chems. Corp.*, 552 F.Supp. 2d 534, 543 (M.D.N.C. 2007). Likewise, because Plaintiffs have not satisfied Rule 9(b)'s stringent pleading requirements, their claim for negligent misrepresentation (Count VI) must also be dismissed. *Madison River Mgmt. Co. v. Business Mgmt. Software Corp.*, 351 F.Supp. 2d 436, 447 (M.D.N.C. 2005) (FRCP 9(b) applies to negligent misrepresentation claim); *Dealers Supply Co., Inc. v. Cheil Indus., Inc.*, 348 F.Supp. 2d 579, 590 (M.D.N.C. 2004) (same).

## III. DEFENDANTS OWED PLAINTIFFS NO FIDUCIARY DUTIES.

Mesirow and Cohen are also entitled to dismissal of Plaintiffs' claim for breach of fiduciary duty. First, neither Mesirow nor Cohen can be deemed to have breached any fiduciary duties to Plaintiffs because neither Defendant owed any fiduciary duties to Plaintiffs. It is well-established that a traditional, nondiscretionary brokerage account does not give rise to a fiduciary relationship between broker and customer. *See, e.g., Trumball Investments Ltd. I v. Wachovia Bank, N.A.*, 436 F.3d 443, 445-46 (4th Cir. 2006) (contrasting obligations owed by discretionary and nondiscretionary brokers). Despite Plaintiffs' repeated assertions of the existence of a fiduciary relationship, the presence "of a few conclusory legal terms does not insulate a complaint from dismissal under Rule 12(b)(6)," *Young v. City of Mount Ranier*, 238 F.3d 567, 577 (4th Cir. 2001), when the law does not give rise to a fiduciary duty. *Labram v. Havel*, 43 F.3d 918, 921 (4th Cir. 1995). Where no fiduciary duty is owed, no breach of fiduciary duty claim can prevail. *See, e.g., Berman v. Physical Med. Assocs.*, 225 F.3d 429, 433-34 (4th Cir. 2001); *Hammitt v. Pettit*, No. COA05-648, 2006 N.C. App. LEXIS 381, at *10 (N.C. Ct. App. Feb. 21, 2006) (copy attached).[9] As Plaintiffs' Complaint makes clear, Cohen merely counseled with the Plaintiffs at the time of each purchase and proposed certain investments to Plaintiffs from time to time. Compl., ¶¶23-25. Plaintiffs do not allege

---

[9] Plaintiffs do not specify whether their breach of fiduciary duty claim arises under North Carolina or Illinois law. Plaintiffs' failure to do so, however, is ultimately immaterial, as Illinois law – like North Carolina law – does not create a fiduciary duty for a general nondiscretionary broker. *See, e.g., CFTC v. Heritage Capital Advisory Svcs., Ltd.*, 823 F.2d 171, 173 (7th Cir. 1987) (dismissing breach of fiduciary duty claim against broker and observing that "[o]nly a broker operating a discretionary account . . . is viewed as a fiduciary"); *ADM Investor Services, Inc. v. Collins*, No. 05-1823, 2006 U.S. Dist. LEXIS 3282, at *17 (N.D. Ill. Jan. 26, 2006).

that Cohen had discretion to make investments on Plaintiffs' behalf without consultation or approval.[10] Accordingly, Mesirow and Cohen had a nondiscretionary broker relationship with Plaintiffs and owed Plaintiffs no fiduciary duty.

Second, Mesirow and Cohen were outsiders to the alleged unlawful exchange created and sponsored by Nuveen and were "shocked" by the ARS market collapse in February 2008. Compl., ¶¶38, 54. Thus, even if Mesirow or Cohen had been fiduciaries to Plaintiffs, neither Mesirow nor Cohen could be deemed to have breached any duties by executing the purchase of ARS, since they lacked knowledge of the alleged scheme or the possibility of an impending collapse in the ARS market. *See, e.g, Garcia v. Unique Realty & Prop. Mgmt. Co., Inc.*, 424 S.E.2d 14, 16 (Ga. Ct. App. 1992) (affirming dismissal of breach of fiduciary duty claim, explaining that defendants "cannot be held liable for failing to disclose what they did not know and could not have foretold").

## IV. PLAINTIFFS FAILED TO STATE A CLAIM FOR INTENTIONAL OR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS.

Finally, Plaintiffs' Complaint falls well short of stating a claim for relief for infliction of emotional distress (Count IX). The allegations concerning this claim focus on Mesirow's conduct following the collapse of the ARS market in 2008 and the Defendants' purported refusal to redeem the remaining portion of Plaintiffs' ARS. Compl. ¶¶ 107-08. Plaintiffs must show that Mesirow and Cohen (1) intentionally or

---

[10] In fact, dating back to the December Letter and Mesirow and Cohen's initial Motion to Dismiss, Plaintiffs have now had at least three opportunities to allege the existence of a discretionary brokerage account. They have consistently and pointedly failed to do so.

19

negligently; (2) engaged in extreme and outrageous conduct (3) that foreseeably and actually caused (4) Plaintiffs to suffer severe emotional distress. *See Jolly v. Academy Collection Service, Inc.*, 400 F.Supp. 2d 851, 866 (M.D.N.C. 2005).[11]

The Complaint does not satisfy any of these elements. Mesirow and Cohen are not alleged to have engaged in "extreme and outrageous" behavior giving rise to a claim for intentional infliction of emotional distress. Plaintiffs' allegations that they received "bad advice" from their broker regarding investing in Nuveen ARS, Compl., ¶27, or that Mesirow concluded that it is not required to redeem Plaintiffs' ARS, do not rise to the level of "conduct that exceeds all bounds of human decency and . . . is regarded as intolerable in a civilized community." *Adams v. Sussman & Hertzberg, Ltd.*, 684 N.E.2d 935, 941 (Ill. Ct. App. 1997). Nor have Plaintiffs adequately pled that they actually suffered severe emotional distress. Plaintiffs' conclusory allegations that the Defendants' conduct "has had a major economic and psychological effect on the quality of their lives," Compl., ¶55, do not set forth any facts indicating what distress they have actually suffered. Plaintiffs' claim of "severe emotional distress" is thus simply an unsupported conclusion that cannot support a claim for relief. *Jolly*, 400 F.Supp. 2d at 866.

## CONCLUSION

For the reasons stated above, Defendants Mesirow and Cohen respectfully request the Court dismiss Plaintiffs' Second Amended Complaint with prejudice.

---

[11] Again, Plaintiffs failed to specify whether their infliction of emotional distress claim arises under North Carolina or Illinois law. Plaintiffs have failed to state a claim under either North Carolina or Illinois law, as each requires identical elements. *See Welsh v. Commonwealth Edison Co.*, 713 N.E.2d 679, 683 (Ill. Ct. App. 1999).

By: /s/ Ronald Davis
Ronald R. Davis, Esq.
[N.C. Bar No. 20408]
rdavis@wcsr.com
**WOMBLE CARLYLE**
One West Fourth Street
Winston-Salem, North Carolina 27101
(336) 721-3600
(336) 721-3660 ~ Fax
*ATTORNEYS FOR DEFENDANTS MESIROW*
*FINANCIAL, INC. and LAWRENCE COHEN*

Of counsel:

Dean M. Jeske
FOLEY & LARDNER LLP
321 North Clark Street, Suite 280
Chicago, IL 60654
(312) 832-4500
(312) 832-4700 ~ Fax

## CERTIFICATE OF SERVICE

I hereby certify that on December 23, 2010, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Alan M. Ruley, Esquire
Bell Davis & Pitt
P.O. Box 21029
Winston-Salem, NC 27120-1029
*Attorney for Defendant Deutsche Bank AG*

Howard L. Kastel, Esquire
10393 Holt
Chapel Hill, NC 27517

Jack M. Knight, Jr., Esquire
Winston & Strawn LLP
214 North Tryon Street
Charlotte, NC 28202
*Attorney for Defendants Nuveen*
*Investments Inc. and Robert P. Bremner*

Frank E. Emory, Jr., Esquire
Dana C. Lumsden, Esquire
Patrick P.L. Robson, Esquire
Hunton & Williams LLP
Bank of America Plaza
100 South Tryon Street, Suite 3500
Charlotte, NC 28280
*Attorneys for Defendants Merrill Lynch & Co.*
*Inc. and CitiGroup Global Markets*

By: /s/ Ronald Davis_____
Ronald R. Davis, Esq., N.C. Bar No. 20408
**WOMBLE CARLYLE**
One West Fourth Street
Winston-Salem, North Carolina 27101
Telephone: (336) 721-3600
Facsimile: (336) 721-3660
*Attorney for Defendants Mesirow Financial,*
*Inc. and Lawrence M. Cohen*