IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION

| | | |
|---|---|---|
| HOWARD L. KASTEL, TRUSTEE OF | ) | |
| THE HOWARD L. KASTEL TRUST | ) | |
| DATED NOVEMBER 12, 1985 and | ) | |
| JOAN H. KASTEL | ) | |
| | ) | |
| Plaintiffs | ) | |
| | ) | |
| v. | ) | CASE NO. 1: 09-CV-646 |
| | ) | |
| NUVEEN INVESTSMENTS, INC., | ) | |
| NUVEEN INVESTMENTS LLC. | ) | |
| ROBERT P. BREMMER, | ) | |
| MESIROW FINANCIAL INC. and | ) | |
| LAWRENCE M. COHEN | ) | |
| | ) | |
| Defendants | ) | |

PLAINTIFFS BRIEF IN RESPONSE TO DEFENDANTS MOTIONS TO
DISMISS THE SECOND AMENDED COMPLAINT

1

## Opening Statement To The Court

Not every loss results from actionable activity by a financial adviser, broker or investment adviser, but each breaches a duty it owes to its customer if the rules promulgated to present fraud, manipulative acts and practices are violated and are the proximate cause for the loss. Here Plaintiffs' injuries and losses were the direct result of the Defendants unlawful acts; hence, the Defendants Act and Omissions as detailed in the Second Amended Complaint (the "Complaint") state a cause of action and the Motions to Dismiss should be denied.

## Statement of Issues Presented

1) Does the Complaint plead the required elements of certain causes of action, specifically do the Counts that allege Fraud comply with Rule 9 (b) and, as applicable, the Private Securities Litigation Reform Act ("PSLRA").

2) Does the Complaint demonstrate that the Defendants acted in concert to create a fiduciary relationship between the Plaintiffs and Nuveen.

3) Did the elaborate and sophisticated scheme designed and sponsored by Nuveen, that may have been lawful when first conceived, become a (intermediate) Ponzi Scheme that perpetrated a fraud on investors in the Nuveen North Carolina Funds and specifically on the Plaintiffs.

4) Does the Complaint show that there is a casual connection between the alleged misrepresentations and omissions (concealed risks) and Plaintiffs' loss.

5) Did the Plaintiffs suffer an economic loss when they invested $2.2 million to purchase Nuveen North Carolina ARPS when they were potentially worthless in the absence of the undisclosed broker dealer support.

## Preliminary Statement

The Defendants' Motions are a transparent attempt to rewrite history. The Defendants have crafted arguments that ignore the detailed identification of a

2

myriad of misrepresentations and omissions. The allegations in the Complaint clearly demonstrate the basis for holding all of the Defendants accountable for their wrongful conduct. The Complaint projects a picture of wrongdoing that is mirrored by the thousand of pages of financial news, books and on line disclosures that have resulted in a series of SEC enforcement actions and state regulatory actions since February 2008[1]. In fact, Nuveen has disclosed, in filings with the SEC, that "In connection with an inquiry by the Financial Industry Regulatory Agency ("FINRA") into Nuveen Investments, Inc's broker dealer subsidiary, Nuveen Investments, LLC relating to the marketing and distribution of auction rate preferred securities ("ARPS'), FINRA's staff has notified Nuveen's broker dealer that the staff has made a preliminary determination that a disciplinary action be brought against the broker dealer. The potential charges recommended by the staff of FINRA in such action would allege that certain ARPS market materials provided by Nuveen's broker dealer were false and misleading from 2006 to 2008…"[2].

The Complaint alleges, with the requisite specificity[3] in Paragraphs 23, 24 and 25, the conversations with Mesirow's Lawrence M. Cohen ("Cohen") that led to the purchase of the Nuveen ARPS. This is the "who, what, where, when" of the Defendants' fraud. Mesirow's reliance on *Teachers' Ret. Sys. Of Louisiana v.*

---

[1] www.auctionratepreferreds.org
[2] Exhibit to Affidavit or Howard L. Kastel ("Affidavit")
[3] "The pleader … must state with particularity the time, place and content of the false representation …[and] must identify the particular individuals who dealt with him when he was defrauded by a group or association of persons…While the facts constituting the fraud must be alleged with particularity, there is no requirement that any precise formula be followed or any certain language be used…It is sufficient if upon a liberal construction the WHOLE PLEADING [EMPHASIS ADDED], the charge of fraud might be supported by proof of the alleged constitutive facts…A requirement of specificity is not a requirement of perfect and complete specificity. (citations omitted) Hudgins v. Wagoner, N.C. App, 694 S.E. 2d 436, 443 (2010).

*Hunter* 477 F. 3d 162 (4th Cir. 2007) (and the decision by this court in that case) is misplaced because facts are clearly not comparable.[4] Moreover Mesirow's reliance on the decision in the *Vining v. Oppenheimer*, Inc 2010 WL 3825722 (S.D. NY 2010) and the reasoning therein does not square with facts in this case because Nuveen (a) was the broker of record; (b) was the adviser to the funds; (c) designed and perpetrated the scheme and (d) made the final decisions regarding the Kastels' investments acting in concert with Mesirow. Mesirow also conveniently ignores the basis for the claims in this case. Mesirow knew that the ARPS were not a short-term, but instead, were a perpetual security with no maturity date. It is inconceivable that either of Defendants didn't know that these problems were roiling the financial industry 2004-2007. Failing to disclose a known risk when it is material coupled with the misrepresentation and other omission was not an oversight. An investor must have a description of the facts (in plain English), in order to determine the nature of the "risk" and evaluate the appropriateness of an investment.

Nuveen, with Mesirow's approval, continued to systematically put in "Hold" orders on behalf of the Kastels until the week of February 11, 2008 knowing that its auctions were going to implode that very week. The fact is that these misrepresentations and the continuing deception are the basis for the claim and not the fact that the Nuveen auctions failed.

### An Example of a Plain English Disclosure

"ARPS are bought and sold in a private auction process that is only open to a certain group of broker dealers. Keep in mind that liquidity is dependant on your ability to sell your ARPS at these auctions. These broker dealers customarily add

---

[4] In re Cree, Inc 2005 WL 1847004

4

to demand at auctions, but they are not obligated to continue to provide these cover bids. In the event that there is insufficient demand, the auctions will fail because the default "rate" of interest will be less than the market rate for long-term preferred shares. Unless the fund elects to redeem your shares (which it is not obligated to do because the low rate of interest leverages the return to the Common Shareholders of the Funds), you may end up holding them in perpetuity. The low interest rate paid in respect to ARPS enables Nuveen to offset the large fees paid to Nuveen as the Funds' investment adviser. Nuveen and the Trustees of the Funds have a fiduciary duty to shareholders of the Funds. **Disclosure of risks** would have had an adverse effect on Nuveen's business and its continued ability to market its ARPS.[5] Although Nuveen and Mesirow had an obligation of good faith and fair dealing, they had an incentive not to make the disclosures mandated by the SEC, SIFMA and The Bond Market Association and to continue to mislead the ARPS investors in respect to the risks. Their goal was not to "rock the boat".[6]

Mesirow's self serving reliance on the contents of the Cohen email demonstrates that the facts in this case are different. Moreover, the attempt to bootstrap an argument from this rank hearsay is the subject of a Motion to Strike[7].

### Defendants Course of Conduct was a Fraud

In August 2007, the Kastel believed that were safe short-term liquid investments that rolled over every seven days. Cohen statements to the Kastels

---

[5] SVB Financial Group "Auction RateSecurities—Know the Risks and Rewards" attached to Affidavit.

[6] "Citigroup, 14 other Firms Settle Bond-Auction Probe" Bloomberg News May 31,2006; "Auction-Rate Violations Result in $13M Penalty" The Bond Buyer June 1, 2006 Ex to Affidavit

[7] At page 12 of Mesirow's Brief it states "Indeed, Plaintiffs attach to their Complaint an email from Cohen". While the Complaint quotes from the email it is not attached. See Motion filed as Document Number 90.

5

may have been generally consistent with Nuveen's marketing materials,[8] but they were known to be false because they failed to disclose all of the material facts described in Paragraph 26. These specific allegations demonstrate that the Defendants willfully pursued a course of conduct in dealings with the Kastels that was a fraud. The Defendants self-serving pronouncements that the allegations do not plead "with the requisite specificity" are not supported because:

1) Nuveen provided the "misleading" marketing materials and sponsored the operative scheme;
2) Mesirow had the direct sales contact and did the "speaking" for Nuveen;
3) Nuveen selected the investments for the Kastels and placed the bids with its Auction Agent;
4) Nuveen and Mesirow placed weekly "hold" orders until the week of February 11, 2008 that locked in the Kastels;
5) Nuveen contracted with broker dealers to remarket the ARPS without providing disclosure documents[9];
6) Mesirow sold the North Carolina ARPS without delivering a disclosure documents;
7) Nuveen received the fees and paid Mesirow its share;
8) Mesirow maintained the records of the identity of the customers;
9) Nuveen determined which fund was to be redeemed and the timing of each redemption.

---

[8] Copies of relevant pages of marketing materials "a great Place for Short Term Money',Cash alternative Attached to Affidavit

[9] Nuveen utilized a fiction to wit that the ARPS were issued by Closed End Funds Complaint ¶42.

6

The simple truth is that each of Defendants played a role in the Ponzi scheme [10]. Nuveen developed and maintained the sophisticated process, which was authorized and approved by Bremner and the Board of Trustees. Mesirow was a "feeder" and participated in putting the Kastels money into Nuveen's control.

The Plaintiffs do not challenge many of Defendants citations[11] (although citing a California Appellate Case interpreting a California Statute is a stretch[12]) but the law courts have uniformly recognized that the analysis are fact intensive. The facts in other lower cases are distinctly different[13]. Many arise in the context of class actions or did not involve Closed End Funds. Moreover, the fact that the defendants in other cases published detailed disclosure documents in 2006 and 2007 underscores the fact that these Defendants waited until after the ARPS market collapsed in February 2008 to make any disclosures.[14] In September 2010, Judge Kaplan upheld part of the Complaint in *Defer LP vs. Raymond James* 08-CV-3449 U.S.D.C SD NY holding in pertinent part "A trier of fact would be

---

[10] As used herein a "Ponzi Scheme" is an investment mechanism that depends upon the operators and participants to continue to raise money from new investors for its survival. An Intermediate Ponzi Scheme is where it starts out as a legitimate operation and the operators continue after they become aware that is dependant on a process that under the circumstances is a fraud.

[11] Nuveen cites *Mosely v. Arth,* 2003 Bankr. Lexis 1437 (Bankr. M.D.N.C.2003. Plaintiffs have engaged in a search to locate this case including Pacer Case Locator. Advised of this problem, Nuvveen's Counsel has refused to provide a copy of this case "Due to [their] representation of [their clients]; hence, the Plaintiffs ask the Court to disregard this citation. Affidavit EX. __

[12] The facts in *Apollo Capital Fund, LLC v Roth* 138. Cal. App 4th 226 (2007) are noteworthy for the distinction with facts in this case. Notwithstanding Nuveen's stretch to find a case to support its argument, a reading of the case supports that under the law (North Carolina) a "stockbroker" owes a duty to his or her customer where the broker, as in this case, was an adviser to the customer about investment decisions.

[13] Most of the cases were class actions; none involved allegations of an Intermediate Ponzi Scheme nor did any of the cases allege with specifity the interaction and relationship of the Defendants.

[14] Nuveen admitted in a press release dated February 15, 2008 (distributed to Kastel by Mesirow) that a practice of "cover bids" was used by certain broker dealers to add to demand and avoid failures.

7

entitled to find that it would have been important to a reasonable investor, in deciding whether to buy or sell ARS, that the ARS—supposedly liquid investments—were liquid only because auction brokers routinely intervened in the auctions to keep them from failing to ensure their success…RJA was under a duty to disclose this information."   The problems with the auction rate securities were widely disseminated in the financial press including numerous articles available to Nuveen and Mesirow including Bond Buyer (USA) described at Page 3 of Document 53 filed in this case and Document 48-2 also filed in this case.  No such description was ever provided to the Kastels.

### Nuveen was at Core of the Fraud

Nuveen was at the core of the fraud that caused the Kastels and other Nuveen ARPS Investors to suffer damages—Mesirow was at the heart of the conduct that directly damaged the Kastels.  Nuveen was entangled with Mesirow because **it had to have known** that Mesirow would rely on the misrepresentations authored by Nuveen.  It had to know, notwithstanding, Mesirow's concurrent obligation to conduct its own investigation of the facts before recommending the purchase of these securities.   Had there been transparency and disclosure of the liquidity risk, the Kastels would never have permitted the Defendants to put $2.2 of their retirement money into these sophisticated derivatives whose value, as they later discovered, on the dates of purchase was a fraction of their fair market value. As detailed in the Complaint, the risks were known to the Defendants prior to August 2007 when the Kastels purchased the ARPS.

At the time the North Carolina ARPS were purchased for the Kastel's account, the market for Nuveen ARPS was on life support.  Nuveen and Mesirow

8

had an obligation to disclose their practices, but it was not until February 15, 2008 that Nuveen admitted and Mesirow disclosed to the Kastels that certain broker dealers "customarily" added to demand at Auctions and that "So-called 'cover bids' were insufficient or absent".[15] Nuveen continued to promote its ARPS as short term until at least March 2008. Nuveen knew both Mesirow and it had a duty to disclose material information in their possession. Silence is fraudulent when one has a duty to speak. Moreover a constructive fiduciary duty arises where a party has knowledge of a latent defect that the other party is ignorant of and takes advantage of the other party and causes injury.[16] The Complaint demonstrates that by withholding the truth Nuveen was able to prolong its $Billion Ponzi scheme.

What was Mesirow's and Nuveen's business—providing advise and trust. What were the Kastels looking for—a safe, liquid cash equivalent. What did the Defendants provide—a lock grip on the Kastel's money which permitted them to continue to siphon off $billions of continuing fees even after the broker dealers had withdraw their support. How did they accomplish this—by ignoring their disclosure obligations and intentionally misleading investors—while taking advantage of a series of regulatory failures to operate a ponzi scheme. The final step—mislead this court into believing that the financial crisis relieved them of

---

[15] Affidavit Nuveen Press Release dated February 15, 2008.
[16] See comprehensive discussion by this court in *Breeden v. Richmond Community College* 171 F.R.D. 189 at 194 (U.S.D.C.M.D.N.C. 1997) following North Carolina Law " In some circumstances, such concealment or nondisclosure may be considered akin to a positive misrepresentation and serve as a basis for actionable fraud." "In North Carolina, the general rule is that silence, in order to be an actionable fraud, must relate to a material mater known to party; and which it is his legal duty to communicate to the other party, whether the duty arises from a relation of trust, from confidence, inequality of condition and knowledge, or other attendant circumstances…[The] silence must, under the circumstances existing amount to fraud, because it amounts to affirmation that a state of things exists which does not, and the uninformed party is deprived to the same extent that he would have been by positive assertion.

9

their obligations to answer for selling exotic instruments that contained fatal flaws. The Defendants knew about the growing risk of illiquidity which was hidden from the Kastels and other investors[17]. They knew that the description of the shares, stripped of the window dressing "as short term", was a lie and that the "default" interest rate did not reflected a market rate. They knew that no buyer, with knowledge of the risks, would purchase these instruments. By 2006 the Defendants knew, in wake of the 2006 SEC Order describing the practice of "support bids" (well publicized within the financial industry) was that support bids were prohibited unless the broker dealers disclosed to their customers in a written description of the practices (Merrill Lynch and the other large broker dealers providing support bids to the Nuveen Funds made detailed written descriptions to the customers[18]). Not so, in the case of Nuveen and the Nuveen Funds or Mesirow and Cohen despite the fact Nuveen had contracted with Merrill Lynch and other broker dealers to perform the support services. These were "in your face" violations.[19] One of the pernicious aspects of their conduct was building and maintaining a false picture of liquidity. By August 2007, the ARPS operation was a full-fledged ponzi scheme destined to crash.[20] Citing the obvious, the scheme worked. From at least 2006, the Kastels were lulled into a false sense of security. The scheme allowed Nuveen to continue to market and remarket a defective product. No matter what, Nuveen's motivation was when the original registration

---

[17] Bloomberg Law Reporter re Auction Rate Securities authored by Foley & Lardner, Attorneys for Mesirow and Cohen in this case where at page 1 referencing auction failures in August 2007, Ibid Page 2 "after the auction failures of August 2007"–attached to Affidavit
[18] See "Description of Merrill Lynch's Auction Rate Securities Practices and Procedures" originally filed as Document 48-2 filled in this case on June 11, 2010.
[19] See email attached to affidavit which was filed as an exhibit in a Massachusetts enforcement action.
[20] Following the reasoning in *Ahmed*, 2009 U.S. Dist. Lexis 73650 (W.D.N.C. 2009) (cited at page 17 of Mesirow's brief "Constructive knowledge" may be inferred denying the Motion to Dismiss.

10

statements were filed, it was clear by 2006 that the scheme constituted a fraud and was unlawful. The liquidity risk, hidden from the Kastels, was obvious to the Defendants. The liquidity problem was neither unprecedented nor unforeseeable; hence, what happened was predictable. The myth of liquidity ended.

The disclosure, that the ARPS were long term perpetual instruments with interest at unconscionably low rates, led to the discovery of a stunning case of wrongdoing. But the Kastels suffered a loss when the Defendants sold the Nuveen North Carolina ARPS to them in 2007. The fair market value (measured by what an informed seller would pay for a long term instrument that paid short-term rates that had a default rate) was substantially less than par value. The fact that the Kastels did not become aware that the loss occurred at the time of purchase is a product of the continuing fraud. An economic loss occurs when the market ceases to exist. It was the very facts about which the Defendants lied that caused the injury. There was no market for the ARPS. The fact that the brokers dealers elected to discontinue supporting the auction market was not an intervening act by a third party and was not the superseding cause of Plaintiffs' losses.

## Complaint to view in its Entirety

Faced with a Rule 12(b)(6) Motion to Dismiss, the Court should consider the Complaint in its entirety. The Court must consider all factual allegations to be true and may consider other sources that courts ordinarily examine in their reviews. The facts alleged meet the standard enunciated by the Supreme Court in Tellabs . See *Tellabs, Inc v. Makor Issues & Rights, Ltd* 551 U.S. 308 (2007). Motive may be relevant and weigh in favor of a scienter inference, but "the absence of a motive, however, is not fatal".[21] Plaintiffs believe that the Complaint clearly shows the

---

[21] Tellabs II,

11

Case 1:09-cv-00646-NCT -WWD   Document 91   Filed 02/28/11   Page 11 of 20

motive—it was to keep the money so it could pay itself $billions—as much 15% of the monies earned by funds--not just for brokering the transactions, but "trail fees" and advisory fees that would continue to be paid in perpetuity. PLSRA presents a challenging hurdle to maintain a 10(b)5 claim of Fraud. The Complaint demonstrates that the Defendants acted with the required intent. Moreover, in the case of Mesirow, the Complaint alleges reckless behavior that is sufficient to establish liability. See *Ottmann v. Hanger Orthopedic, Inc* 353 F.3d. 338 (4th Cir. 2003). Seven months after the scheme collapsed, Mesirow's Chief Economist Diane Swonk stated, in an interview advising "that auction-rate securities were the way to go was bad advise". Swonk concluded, "You know, I do think that there's fraud out there, there definitely was some misleading of investors…." [22]

    Asserting a claim for fraud under the securities laws is challenging, but Congress never intended to grant immunity to a wrongdoer. Yet the Defendants ask the Court to ignore the well-pleaded facts and approve their unlawful behavior by throwing this case out. Plaintiffs ask the court to follow the law. The Nuveen ARPS were imbedded with a "virus" that was programmed to attack investors the moment that Broker Dealers, supporting the so-called auctions, elected to withdraw their support. It is clear that the Kastels were misled about a crucial aspect of their investment—that the illusory liquidity was structured to blow up if the Broker Dealers elected to discontinue their support. There were red flags—egregious refusal on the part of all of the Defendants to see the obvious or to investigate the doubts that were broadcast throughout the financial industry in 2006-2007—and disclose the risks.

---

[22] Transcript of interview dated September 12, 2008 as reported "market.placeradio.org

12

Case 1:09-cv-00646-NCT -WWD   Document 91   Filed 02/28/11   Page 12 of 20

The Defendants conveniently ignore the fact that PLSRA's heightened pleading requirements apply only to the Securities Fraud claims and fail to address the fact that this Complaint contains many other claims that are satisfied by the concise statement of the facts. Nuveen's response is creative but misleading because the Complaint alleges strong evidence of the Defendants intention—unless Defendants purport to plead as a defense, **their inability to tell right from wrong**. Nuveen was atop the pyramid as correctly noted in Mesirow's Brief. But, it is ingenuous for Mesirow to suggest that it was not a party to the scheme. Mesirow and Nuveen acted in concert to select the specific funds to invest the Kastels' money. Nuveen is correct to acknowledge that the Complaint is clear that the "Kastels 'reposed great trust and confidence in Cohen [Mesirow]'". On the other hand, suggesting that Nuveen did not maintain records about the Kastels' investment is self-serving when Nuveen set up system that relied on Mesirow to maintain these records. Surely, Nuveen's admission that Mesirow "had access to the relevant auctions" is intentionally misleading because it is clear from the Complaint that Mesirow acted with Nuveen to make this access possible (Id. ¶26a). And who are the "intermediaries" referenced in ¶ 2 of Nuveen's Memo. In fact, the Complaint clearly demonstrates that Nuveen gave substantial assistance to Mesirow at every step of every transaction.

Mesirow and Nuveen ignored a series of widely publicized SEC actions and other definitive events, in continuing to market the Nuveen ARPS as Short-term liquid investments. Nuveen had to know that what Cohen told the Kastels was false and misleading since the Complaint demonstrates that it was the architect of the false and misleading statements in its market materials.

13

Mesirow argues that Cohen did not owe the Kastels a fiduciary duty because the Kastels' accounts were non-discretionary[23]. But here the Complaint makes clear that a fiduciary relationship in fact existed between Cohen and the Kastels. In fact the law is well settled in North Carolina that defines how a fiduciary relation is established. "A fiduciary relationship exists when one party places special confidence in another such that the party in whom such special confidence is placed is bound to act in the best interests of the party placing the confidence." *Hammitt v Pettit* 2006 N.C. App. Lexis 381 attached to Mesirows brief. "A fiduciary relationship has, however, been found to exist between a seller of Securities [Mesirow, Cohen and Nuveen] and a buyer of securities. [citations omitted]…The actual existence of fiduciary duty…is a question of fact to be determined by the trier of fact. Ahmed Id. at 18. Also citing *Blow v. Shaughnessy* 364 S.E. 2d 444 (1988) that "North Carolina courts have recognized an aider and abettor theory for breach of fiduciary duty in the context of sales of securities".

### Mesirow and Nuveen were Fiduciaries

Nuveen correctly identifies Plaintiffs' claims regarding its role as a fiduciary, which arose because it acted in concert with Mesirow in the selection of the investments were purchased for the Plaintiffs' accounts. "Nuveen provided the operational capabilities as a service to broker/dealer firms who did not have the necessary personnel and trading systems to bid at the ARPS auctions directly."(Nuveen Testimony before the House Committee on Financial Services September 18, 2008. "…Nuveen receives the Auction Participant fee based on the holdings of Nuveen Fund ARPS beneficially owned by investor customers [the

---

[23] Mesirow is not able to point to any document that purports to identify the account of Howard L. Kastel Trustee as operative in establishing the account as traditional non-discretionary account.

14

Kastels]…"). Although much of the testimony was self serving it demonstrates the basis for allegations that Nuveen acted in concert with Mesirow. The term "co-broker" in this case is intended to be short for "co-fiduciary". "Nuveen shares approximately 50% of the amount it receives…"(Id) Nuveen's and the Funds' principal role …is responding to client service questions from financial advisers regarding the Funds ARPS. Nuveen cannot hide behind the fact that it was an undisclosed principal in the transactions with the Kastels. Finally, the one certainty is that the sale of the ARPS was no "plain commercial transaction".

Nuveen's recital of the three requisites to establish aiding and abetting is a clear attempt to bootstrap the analysis in Blow Case[24] and to support their argument that there are no facts in the Complaint that it had knowledge of Mesirow's breach of trust. Mesirow argues that it "was not a party to the 'unlawful exchange' that was the centerpiece of Plaintiff's Complaint" and that the Complaint alleges that "Nuveen intentionally disseminated misleading information." They are both wrong and acted in concert, each aided and abetted the other's conduct. Nuveen created and marketed a product that was designed to meet the objectives of the Kastels and other investors who were looking for "a short term tax free instrument" that was "designed to provide yields that compare favorably with those of other short-term tax-free instruments" and "provided weekly liquidity". . How better to define substantial assistance than to bring about the violations complained of.[25] As noted above, the Complaint does not purport to state a claim for "fraud on the market", notwithstanding the fact that references to the Nuveen Funds's false and misleading statements in its marketing materials and

---

[24] *Blow v Shaughnessy* 364 S.E. 2d 444, 447 (N.C. Ct. App. 1988 cited at page 8 of Nuveen's Memorandum
[25] Ibid Blow v Shaughnessy

15

the absence of the disclosures made necessary by SEC, among others, together with Nuveen's dual role as the North Carolina Funds adviser and Nuveen Investments, LLC's direct role in the transaction with Kastel. But clearly, Nuveen did have a duty to comply with the securities law, not to sponsor and participate in a Ponzi scheme and to otherwise comply with securities laws as detailed in the Complaint; hence, the Kastels rely on the 4th Circuit Court of Appeal's analysis and conclusions in *In re Mutual Funds Inv. Litig.* 566 F. 3d 111 (2009).[26] Moreover, the Kastels do not rely on "Catch –all allegations" which merely assert motive and opportunity without something more" to satisfy PLSRA. The Complaint does not "[M]erely alleg[e] facts that lead to a strained and tenuous inference of motive…(citation omitted).[27] Plaintiffs allege a pattern of conduct that clearly supports liability for fraud and is consistent with the fourth circuit reasoning in Ottmann V. Hanger. For that reason, Defendants reliance on the Ottmann Case is incorrect.

The Complaint alleges in part that Nuveen created a sham market for the purpose of intentionally deceiving investors. The auction process failed prior to the market collapse (IB ¶28). The Defendants knew, as early as 2006, that without the support of bids the auctions would fail (¶29). The Defendants knew that by August 2007 that the apparent liquidity resulted from this support and that the Kastels money would be frozen (¶30). The Defendants engaged in a cover up to hide the facts until February 15, 2008 . But for this cover up, the Kastels would have redeemed their ARPS. The Complaint further alleges that Nuveen sponsored an unlawful exchange (¶38) and that by 2004-2007 Nuveen knew the process was a Ponzi Scheme because the ARPS were only redeemable if they

---

[26] *Janus Capital Group v. First Derivative Traders* Cert. Granted 6/28/2010
[27] *Ottmann v. Hanger Orthopedic Groups, Inc* 353 F. 3d 338, 352 4th Cir 2003)

16

could be sold to another purchaser at the auction.(¶42). The Kastel losses occurred at the time of purchases in August and September 2007 and not the date when they learned that the auctions failed.

The Complaint details how the misrepresentations and omission caused the losses that the Plaintiffs suffered. Defendants reliance on the HFG is misplaced because the HFG did not allege that "the fraudulent statements or omissions were the cause of the actual loss suffered." The facts alleged in HFG bear little resemblance to the facts alleged in the Complaint. Here the so-called auction is part of the scheme as was the broker dealer support. Here there is proximate casual link between the fraud and the losses. The distinction renders Defendants reliance on HFG implausible. Here the Complaint pleads that the risk of loss was foreseeable and caused by the materialization of the risk concealed by the fraudulent statements. The Defendants ask the Court to take a very narrow view of the allegations in the pleading, "cherry picking" the allegations rather then giving meaning to the entire complaint.

Bremner is connected because he was and is the Chairman of the Board of the Nuveen Closed End Funds and specifically the North Carolina Funds and in that capacity caused the Funds to authorize Nuveen, as its investment adviser, to make misleading statements and participated directly in the numerous violations of the securities laws and the operation of the Ponzi scheme detailed in the Complaint. As crazy as it seems, Page 11 of Nuveen's brief suggests that the Plaintiffs have in fact benefited from the nefarious activities. In footnotes, they point to the common stock of one of large banks[28] and the fact that the Nuveen Funds, **after almost three years,** redeemed the balance of the principal. The

---

[28] No more relevant than if the Plaintiffs were to claim damages based on the price of any other stock that has seen its price soar.

17

Funds held onto at ridiculously low maximum interest in order to preserve the benefits of their Ponzi Scheme. The allegations in the Complaint demonstrate that the Kastel's have suffered real losses and the Defendants have to account for their wrongdoing.

Finally, no brief can capture the severe emotional distress associated with Defendants' conduct. The Defendants' conduct was outrageous and no reasonable person could form a belief that the Kastels, in their mid-seventies, would not suffer great anguish. As the affidavit demonstrates, by the time this case was filed in August 2009, the continued inability to access the money was taking an extreme toll of his health, resulting in anxiety, stress, depression and sleep deprivation. It would hurt less and had less of impact had the Defendants had broken one of the Kastels' arms. By July 2009 Nuveen advised the Kastels that it could "provide a specific timetable as to **when and if** [emphasis added] your remaining ARPS will be redeemed."[29]

Conclusion

For reasons stated, and based on the entirety of the Complaint, Defendants' Motions to Dismiss should be denied.

Dated February 28, 2011

Respectfully submitted,

By: /s/ Howard L. Kastel
Howard L. Kastel Esq.
N.C. Bar No. 34615
10393 Holt
Chapel Hill, North Carolina 27517

---

[29] Complaint P 50


Case 1:09-cv-00646-NCT -WWD   Document 91   Filed 02/28/11   Page 18 of 20

919-933-3181

## CERTIFICATE OF SERVICE

I hereby certify that on February 28, 2011, I electronically filed the foregoing with the Clerk of Court using the CM/ECF which will send notification of such filing to the following;

Ronald R. Davis
One West Fourth Street
Winston-Salem, North Carolina 27101
Attorney for Defendants Mesirow Financial Inc and Lawrence M. Cohen

Jack M Knight Jr.
Winston & Strawn
214 North Tryon Street
Charlotte NC 28202

By: /s/ Howard L. Kastel
Howard L. Kastel Esq.
N.C. Bar No. 34615
10393 Holt
Chapel Hill NC 27517

19