IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| HOWARD L. KASTEL, JOAN H. KASTEL, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 1:09CV646 |
| | ) | |
| NUVEEN INVESTMENTS INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM OPINION AND RECOMMENDATION OF
UNITED STATES MAGISTRATE JUDGE

This securities fraud action comes before the Court on the Motion to Dismiss of Defendants Nuveen Investments Inc. ("Nuveen") and Robert P. Bremner ("Bremner") [Doc. #80], as well as the Motion to Dismiss of Defendant Mesirow Financial Inc. ("Mesirow") and Lawrence M. Cohen ("Cohen") [Doc. #78]. All of Plaintiffs' claims in this case arise out of Plaintiffs' purchase of 88 shares of Nuveen North Carolina Auction Preferred Securities between August 23, 2007 and February 15, 2008, through Plaintiffs' investment adviser, Defendant Cohen, and his employer, Defendant Mesirow Financial. (Sec. Am. Compl. [Doc. #74] at 5.) Plaintiffs bring both state law claims and claims alleging violation of the federal Securities Exchange Act. After the filing of the action, as reflected in supplemental briefing ordered by the Court, all of Plaintiffs' shares were redeemed, rendering many of Plaintiffs' claims and much of the relief sought moot. To the extent any claims remain, for the reasons set out below, the Court recommends that Defendants' motions to dismiss be granted.

# I. FACTS, CLAIMS, AND PROCEDURAL HISTORY

## A. Facts Alleged in Plaintiffs' Second Amended Complaint

Plaintiffs in this action are Howard L. Kastel, Trustee of the Howard L. Kastel Trust Dated November 13, 1985, and his wife, Joan H. Kastel. They filed a Complaint and Amended Complaint in this action, and subsequently filed a Second Amended Complaint (hereafter referred to as the "Complaint") [Doc. #74], which is now the operative pleading in this case. Defendants Deutsche Bank AG, Merrill Lynch & Co., and CitiGroup Global Markets are not named in Plaintiffs' Second Amended Complaint and are therefore no longer defendants in this action.

With respect to the remaining Defendants, Defendant Nuveen is described in Plaintiffs' Complaint as a Delaware corporation with its principal place of business in Chicago, Illinois. Nuveen is the "Sponsor and Investment Adviser" to all of the Nuveen Auction Rate Preferred Shares ("ARPS") Funds in which the Plaintiffs invested, including those known as the Nuveen North Carolina Funds. (Compl. ¶ 7.) Defendant Bremner is described as the Chairman of the Board of the Nuveen North Carolina Funds. (Id. ¶ 8.) He is alleged to have oversight responsibility of the Funds' investment adviser. Defendant Mesirow is a Delaware corporation with its principal offices in Chicago, Illinois, and conducts business as an investment adviser, broker dealer, and consultant in North Carolina. (Id. ¶ 9.) Defendant Cohen is a Senior Managing Director at Mesirow and was the Plaintiffs' investment adviser. (Id. ¶ 10.) Plaintiffs allege that Cohen was their investment adviser for more than 20 years.

2

Plaintiffs allege that the Nuveen North Carolina Auction Preferred Securities at issue in this case were marketed by Nuveen through Mesirow. These ARPS were "perpetual preferred stock with no maturity date and no right of redemption that paid interest at rates purportedly set at periodic auctions." (Id. ¶ 13.) These auctions, sometimes called "Dutch auctions," were held every 7 days. The ARPS were not publicly traded, and the only method of tendering the shares was at these auctions. (Id. ¶ 14.) Under this auction system, broker dealers submitted customer bids and if the bids were insufficient the auction would fail.

Plaintiffs allege that in June 2004, the United States Securities and Exchange Commission ("SEC") announced that it was investigating whether ARS auctions were improperly handled. In 2006, the SEC announced that it had fined 15 large broker dealers and stated that investors might not have been aware of the liquidity risks of these types of shares. (Id. ¶ 15.) These announcements were published in the Wall Street Journal. Plaintiffs state that large broker dealers such as Merrill Lynch regularly submitted support bids in Nuveen's ARPS auctions so that the auctions would not fail. (Id.) In response to the SEC actions, some broker dealers such as Citigroup disclosed in September 2006 the risks of the auction market and its role in the process. Merrill Lynch disclosed its role and procedures to investors in October 2006. These announcements and disclosures addressed auction rate securities and the risks of the auction market generally, but the Nuveen ARPS "were not specifically referenced in the [SEC] Order or the [broker dealer] disclosure statements." (Id.) Plaintiffs allege that the Nuveen North Carolina prospectuses and promotional materials were misleading and that both Nuveen and Mesirow should have known this by the end of 2006. (Id.) Plaintiffs state that Nuveen acted

as co-broker with Mesirow on transactions made by Mesirow and shared the fees with Mesirow for those transactions. (Id. ¶ 20.)

Plaintiffs allege they first purchased Nuveen ARPS in January 1998. Defendant Cohen allegedly described the shares as "7 day munies" or "weeklies" and stated that the shares were "safe short term preferred," with the rate of interest determined at weekly auctions, without disclosing that the auctions were orchestrated by Nuveen and "were not a real public auction . . . but a managed process." (Compl. ¶ 23.) Plaintiffs sold these shares in January 2001.

On January 9, 2002, Mesirow purchased Nuveen ARPS for the Howard L. Kastel Trust. These shares were sold on July 31, 2002. (Id. ¶ 24.) In June and August 2003, additional shares were purchased for the Trust, after conversations between Kastel and Cohen in which Cohen described the shares as "short term munis." In March 2004, Mesirow purchased more Nuveen shares for the Trust, and shares were sold on June 4, 2004 and November 19, 2004. As of December 31, 2004, the Trust account had a total of 58 shares of Nuveen ARPS for a total of $1,450,000.00. (Id.)

On March 15, 2005, August 3, 2006, and later in 2006, Mesirow purchased more Nuveen shares for the Trust account and for an account of Joan Kastel. As of December 31, 2006, the Trust account had shares of Nuveen ARPS totaling $1,850,000.00. (Id.) Plaintiffs allege that they did not maintain a diary of these transactions and that Cohen "did not always tell Kastel about these transactions and Kastel would learn of them after he received a confirmation from Mesirow." (Id.) According to Plaintiffs, Cohen did not disclose any risks.

4

With respect to the shares at issue in this action, Plaintiffs allege that on August 17, 2007, Cohen contacted Howard Kastel by telephone at his residence in Chapel Hill, North Carolina, and suggested that Plaintiffs invest in Nuveen's North Carolina funds since Plaintiffs were now residents of North Carolina and could take advantage of a double tax exemption.  (Compl. ¶ 25.) Following this conversation, many sales of the Trust's non-North Carolina Nuveen shares occurred and many Nuveen North Carolina ARPS shares were purchased.  (Id.)  The same types of transactions occurred for the account of Joan H. Kastel.  (Id.)  Plaintiffs claim that during the August 17, 2007 phone call, Defendant Cohen did not describe the auction procedures for the ARPS and failed to disclose auction information that, if disclosed, Plaintiffs contend would have caused them to refuse to allow the Nuveen North Carolina funds to be purchased for their accounts.  (Id. ¶ 26.)

Plaintiffs allege that Mesirow and Nuveen "had knowledge and information that certain ARS auctions had failed prior to August 23, 2007 and that the risk of auction failure had increased and continued to increase in late 2007 and January 2008."  (Compl. ¶ 28.)  They further allege that "[b]y January 2008, Nuveen had specific knowledge of auction failures involving the Nuveen Funds and the pending failure of more Nuveen Fund auctions that would result from Lehman Brothers' decision to discontinue propping up the Nuveen ARPS auctions as of, on or about, February 13, 2008."  (Id.)  Plaintiffs allege that Lehman Brothers withdrew their support of the auction process along with other broker dealers causing the ARPS market to collapse on or about February 11, 2008.  (Id.)  This effectively froze the ARPS held by

Plaintiffs.[1]  They could not liquidate their investment and were "locked into the phony 'maximum interest rates' that were a fraction of what long-term preferred shares of equal quality paid as interest."  (Id. ¶ 32.)

Plaintiffs allege that they remained unaware of the risks in the auction process until after February 15, 2008.  (Compl. ¶ 30.)  They further allege that they gave notice of their election to rescind the sales of their Nuveen North Carolina ARPS on February 22, 2008.  (Id. ¶ 22.)

Plaintiffs allege that Cohen knew that Plaintiffs were risk averse and that the Nuveen North Carolina Funds were not a suitable investment for them.  (Id. ¶ 34.)  Plaintiffs further contend that "[o]n at least four dates in December [2007] and January [2008], Howard Kastel talked to Cohen and received repeated reassurance as to the safety of the ARPS because of their so-called 300% preference on liquidation."  (Compl. ¶ 35.)  Plaintiffs say that it was not until February 15, 2008 that they received a Nuveen prospectus (for a fund in which they were not invested) from Cohen.  (Id. ¶ 37.)  Plaintiffs also contend that the auctions did not fail because of the credit crisis of 2008, and that the crisis was "coincidental" because the broker dealers were no longer willing to risk their capital to prop up the ARPS auctions.  (Id. ¶ 48.)

Plaintiffs state that in July 2008 the Kastel Trust began receiving confirmations that its ARPS were being redeemed.  These redemptions initially amounted to only 3% of their investments.  (Compl. ¶ 50.)  According to Plaintiffs, a Nuveen letter dated July 17, 2009, stated

---

[1] Plaintiffs state in their Complaint that on February 15, 2008, Cohen sent an email to Nuveen stating that Cohen was shocked, further stating that Nuveen had not uttered a word about the crisis, noting that he (Cohen) was both an adviser and shareholder in the ARPS, and accusing Nuveen of a conflict of interest.  (Comp. ¶ 54.) Plaintiffs set out the e-mail in the Complaint, but contend that to the extent this implies that Cohen owned ARPS, it is hearsay.

6

that Nuveen could not give a timetable as to when and if Plaintiffs' remaining ARPS would be redeemed. (Id.) However, after Plaintiffs filed suit, they allege that more redemptions occurred, and at the time of the filing of the Second Amended Complaint, shares valued at a total of $500,000 had not yet been redeemed. (Id. ¶ 51.) The Court subsequently allowed supplemental briefing, and by the time of the supplemental briefing, the remaining $500,000 in shares had been redeemed.

Plaintiffs allege that these events caused them severe emotional distress. (Compl. ¶ 55.) They also allege that they were forced to sell other securities at a loss, to turn down a loan to their son's small business that was suffering from the credit crisis, and cancel vacations and other expenditures.

B.     Claims

Plaintiffs raise the following claims: Count I–Declaratory Judgment against Mesirow; Count II–Breach of Fiduciary Duty, Constructive Fraud, Aiding and Abetting Breach of Fiduciary Duty and Constructive Fraud against Mesirow and Nuveen; Count III–Violations of Section 10(b) of the Exchange Act and Rule 10(b)(5) against all Defendants; Count IV–Violation of Section 20(A) of the Exchange Act against Bremner; Count V–Fraud against all Defendants; Count VI–Negligent Misrepresentation against Mesirow and Nuveen; Count VII–Rescission and Related Relief under the Illinois Act against Mesirow and Nuveen; Count VIII–Rescission and Related Relief under the North Carolina Securities Act against Mesirow and Nuveen; and, Count IX–Intentional Infliction of Emotional Distress against Mesirow and Nuveen.

Based upon these claims, Plaintiffs seek declaratory and injunctive relief and damages.

C.    Motions to Dismiss

Defendants move to dismiss all claims against them pursuant to Federal Rule of Civil Procedure 12(b)(6). Their particular contentions with regard to each claim will be discussed below.

II.    DISCUSSION

A.    Standard

A plaintiff fails to state a claim on which relief may be granted under Federal Rule of Civil Procedure 12(b)(6) when the complaint does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

In addition, to the extent that Defendants contend that Plaintiffs have failed to describe alleged fraudulent acts with the particularity required by Federal Rule of Civil Procedure 9(b), that contention is treated as an argument under Rule 12(b)(6). Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 783 n.5 (4th Cir. 1999) ("[L]ack of compliance with Rule 9(b)'s pleading requirements is treated as a failure to state a claim under Rule 12(b)(6).") Federal Rule of Civil Procedure 9(b) requires that a plaintiff "must state with particularity the circumstances constituting fraud." United States ex rel. Nathan v. Takeda Pharm. N. Am., Inc., 707 F.3d 451, 455 (4th Cir. 2013) ("In addition to meeting the plausibility standard of [Ashcroft

8

v. Iqbal, 556 U.S. 662 (2009)], fraud claims . . . must be pleaded with particularity pursuant to Rule 9(b) of the Federal Rules of Civil Procedure."); Harrison, 176 F.3d at 783-84. To state with "particularity" the circumstances constituting fraud, a "plaintiff must, at a minimum, describe 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" United States ex rel. Wilson v. Kellogg Brown & Root, Inc., 525 F.3d 370, 379 (4th Cir. 2008) (quoting Harrison, 176 F.3d at 784).[2]

    B.    Count I–Declaratory Judgment against Mesirow

    In Count I, Plaintiffs allege that a "justiciable controversy exists between the Kastels and Mesirow concerning whether said Defendants have an obligation to repurchase the Kastel's ARPS." Plaintiffs seek a declaration that "Mesirow has an obligation to repurchase the ARPS purchased for the Kastels."

    However, Plaintiffs concede in their supplemental brief [Doc. #118 at 4] that Mesirow repurchased their shares and that "Plaintiffs ultimately received their original principal [sic] and a 'pittance' of interest." (Id.) Defendants Nuveen and Bremner state in their supplemental brief [Doc. #115 at 4] that "[a]ll of Plaintiffs' Auction Rate Preferred Shares ("ARPS") have been redeemed, and, therefore, Plaintiffs have suffered no damages." Defendants Mesirow and Cohen have adopted and incorporated that supplemental brief into their own brief [Doc. #116

---

[2] In addition to Rule 9(b), the Private Securities Litigation Reform Act of 1995 ("PSLRA") requires heightened pleading in securities fraud cases. 15 U.S.C. § 78u-4(b). Cozzarelli v. Inspire Pharm., Inc., 549 F.3d 618, 623 (4th Cir. 2008); Plymouth Cnty. Retirement Ass'n v. Primo Water Corp., 966 F. Supp. 2d 525, 538-39 (M.D.N.C. 2013). The Court will address the PSLRA specifically in the consideration of Plaintiffs' securities law claims.

¶ 3].  Therefore, it appears that all parties agree that all of Plaintiffs' ARPS shares have now been repurchased.

Because Plaintiffs ask only for a declaration that Defendants have an obligation to repurchase their ARPS, and they have all now been repurchased, the Court recommends that this claim for relief be dismissed as moot.

  C.  Count II–Breach of fiduciary duty, constructive fraud, aiding and abetting breach of fiduciary duty and constructive fraud against Mesirow and Nuveen

Plaintiffs allege that Defendant Mesirow breached its fiduciary duty to Plaintiffs and engaged in constructive fraud by "investing in the ARPS that did not comply with the Kastel's [sic] stated investment goals and objectives."  (Compl. ¶ 67.)  Plaintiffs further allege that Mesirow Financial and Nuveen Investments breached their fiduciary duty and engaged in constructive fraud by "intentionally misleading the Kastels into believing that the ARPS were safe and liquid."  (Id.)  Plaintiffs allege that Mesirow and Nuveen were "co-brokers" in respect to their shares and are both liable.  (Compl. ¶ 66.)

Under North Carolina law,[3] to state a claim for breach of fiduciary duty, a plaintiff must allege that a fiduciary relationship existed and that the fiduciary did not act in good faith and with due regard to plaintiff's interests.  Toomer v. Branch Banking & Tr. Co., 614 S.E.2d 328, 337 (N.C. Ct. App. 2005).  A fiduciary relationship arises when one has placed special confidence in another who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence.  Branch Banking & Tr. Co. v.

---

[3] Plaintiffs state that their claims arise under North Carolina statutory and common law and that the only claim not arising under North Carolina law is the allegation of a violation of the Illinois Securities Laws in Count VII. (Compl. ¶ 11.)  Therefore, the Court will address the Count II claims only under North Carolina law.

Thompson, 418 S.E.2d 694, 699 (N.C. Ct. App. 1992). "[A] cause of action for constructive fraud must allege (1) a relationship of trust and confidence, (2) that the defendant took advantage of that position of trust in order to benefit himself, and (3) that plaintiff was, as a result, injured." White v. Consolidated Planning, Inc., 603 S.E.2d 147, 156 (N.C. Ct. App. 2004).

With regard to Defendant Nuveen, Plaintiffs fail to allege any contact or communication between Nuveen and themselves. There is no allegation that Nuveen even knew that Plaintiffs had purchased shares of North Carolina Nuveen ARP shares or that Nuveen knew of Plaintiffs' investment goals and objectives. Plaintiffs rely upon their allegation that Defendants Nuveen and Mesirow were "co-brokers" with regard to the Nuveen North Carolina ARPS shares. Plaintiffs fail to allege facts in their Complaint showing such a "co-broker" status, however. Further, there are no facts alleged which might give rise to the required "special confidence" between Nuveen and Plaintiffs as a result of co-broker status. Therefore, Plaintiffs have failed to adequately allege a claim for breach of fiduciary duty or for constructive fraud against Defendant Nuveen.

To the extent that Plaintiffs allege a claim for aiding and abetting a breach of fiduciary duty, the North Carolina Court of Appeals previously recognized the possibility of such an action, requiring the plaintiff to show: (1) the existence of a breach of fiduciary duty by the primary party; (2) knowledge of the breach by the aider and abettor; and (3) substantial assistance by the aider and abettor in the achievement of the primary violation or breach. See Blow v. Shaughnessy, 364 S.E.2d 444, 447 (N.C. Ct. App. 1988). However, the North Carolina Court

11

of Appeals has since recognized that the rationale of that decision has been abrogated, and <u>Blow</u> is no longer valid precedent. See <u>Bottom v. Bailey</u>, 767 S.E.2d 883 (N.C. Ct. App. 2014); <u>see also</u> <u>In re Bostic Constr., Inc.</u>, 435 B.R. 46, 66 n.5 (Bankr. M.D.N.C. 2010); <u>Laws v. Priority Tr. Serv. of N.C., L.L.C.</u>, 610 F. Supp. 2d 528, 532 (W.D.N.C. 2009). Thus, it does not appear that a claim for aiding and abetting a breach of fiduciary duty exists under North Carolina law. Moreover, even if such a claim did exist, Plaintiffs in the present case fail to sufficiently allege facts showing that Defendant Nuveen had knowledge that Defendant Mesirow breached a fiduciary duty to Plaintiffs. Therefore, all claims in Count II against Defendant Nuveen should be dismissed.

With respect to Defendant Mesirow Financial,[4] Defendant Mesirow argues that no fiduciary relationship existed between it and Plaintiffs because a "traditional, nondiscretionary brokerage account does not give rise to a fiduciary relationship between broker and customer." (Mesirow Br. [Doc. #79] at 18.) In support of this contention, Defendant notes that:

> [T]here are two general types [of investment accounts]: non-discretionary and discretionary. A non-discretionary account requires the broker to obtain authorization before it makes any investment decisions. See <u>Merrill Lynch Pierce Fenner & Smith, Inc. v. Cheng</u>, 901 F.2d 1124, 1128 (D.C.Cir.1990); <u>Hill v. Bache Halsey Stuart Shields Inc.</u>, 790 F.2d 817, 820 n. 3 (10th Cir.1986). A discretionary account, by contrast, allows an investment broker to make account transactions without the client's prior approval. See <u>Cheng</u>, 901 F.2d at 1128; <u>Hill</u>, 790 F.2d at 820 n. 3.
> In return for this grant of discretion, a broker operating a discretionary account typically owes greater duties to his client than a broker who must receive authorization for each transaction. See, e.g., <u>Indep. Order of Foresters v. Donald, Lufkin & Jenrette, Inc.</u>, 157 F.3d 933, 940-41 (2d Cir.1998) (noting that typically

---

[4] Plaintiffs do not assert Count II directly against Defendant Cohen, but Plaintiffs' claim against Defendant Mesirow is based on factual allegations involving Defendant Cohen in his capacity as a Senior Managing Director at Mesirow.

> a broker operating a discretionary account has a general fiduciary duty to his client whereas a broker operating a non-discretionary account has narrower obligations); Hill, 790 F.2d at 824 (same); see also Leib v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 461 F.Supp. 951, 953 (E.D.Mich.1978) (describing a broker operating a discretionary account as "the fiduciary of his customer in a broad sense"). Most notably, the broker managing a discretionary account has to make investment decisions that are faithful to the needs and objectives of his client.

Trumball Inv. Ltd. I v. Wachovia Bank, N.A., 436 F.3d 443, 445-46 (4th Cir. 2006). As noted by Defendants, the allegations in the Complaint reflect that Cohen spoke to Plaintiffs prior to the purchases of the Nuveen ARPS, and proposed certain investments from time to time. Thus, the allegations appear to reflect a non-discretionary, traditional relationship in which Plaintiffs retained decision-making authority. In response to these contentions, Plaintiffs rely on their allegations of a fiduciary relationship in fact, based on their allegations of a relationship of trust and confidence with Defendant Cohen as their financial adviser on whom they relied for advice and direction. See also Ellison v. Alexander, 700 S.E.2d 102, 108 (N.C. Ct. App. 2010) ("[I]n North Carolina . . . there are two types of fiduciary relationships: (1) those that arise from legal relations such as attorney and client, broker and client . . . partners, principal and agent, trustee and cestui que trust, and (2) those that exist as a fact, in which there is confidence reposed on one side, and the resulting superiority and influence on the other." (internal quotation omitted)(emphasis added)). However, Plaintiffs do not allege facts showing a lack of sophistication or lack of ability to make decisions on their part, and it is not clear that a fiduciary relationship would arise based on the facts as alleged. Compare White v. Consolidated Planning, Inc., 603 S.E.2d 147 (finding that the Plaintiffs had stated a claim for breach of fiduciary duty against a financial planning services company where the plaintiffs "had no prior investment

13

experience and had never before worked with a financial adviser," the adviser was the plaintiffs'

son who siphoned all the funds to support a gambling addiction, and the complaint alleged that

"'[b]ecause of [the plaintiffs'] lack of expertise in financial affairs,' they relied upon [the adviser

and the financial services company] to properly manage their funds."). Moreover,

Plaintiffs have failed to allege facts that would establish bad faith by Cohen, and with respect to

Plaintiffs' related claim of constructive fraud, Plaintiffs have failed to allege that Cohen took

advantage of a position of trust in order to benefit himself. See White, 603 S.E.2d at 156 ("A

plaintiff must allege that the benefit sought was more than a continued relationship with the

plaintiff or payment of a fee to a defendant for work it actually performed. In arguing that his

complaint is sufficient on this issue, plaintiff points only to his allegations that [the defendant]

benefited through the payment of commissions. This Court held in Sterner, however, that an

allegation of the payment of commissions for transactions actually performed is not sufficient

to survive a motion to dismiss a claim for constructive fraud. (citing Sterner, 583 S.E.2d at 674)).

Thus, an incentive to continue the relationship or earn commissions or fees for work performed

is not sufficient to establish that the defendant took advantage of the relationship of trust and

confidence to benefit himself in order to state a claim for constructive fraud. In this case,

Plaintiffs have not alleged sufficient additional facts to support a claim that Defendants Mesirow

or Cohen took advantage of a position of trust in bad faith or in order to benefit themselves.

Finally, the Court notes that Plaintiffs' shares have been redeemed, and Plaintiffs have

elected to rescind the purchases of the Nuveen ARPS in exchange for the return of their

principal. Because they have elected and received this remedy, it appears inconsistent to also

14

allow them to pursue state law tort claims for damages. See, e.g., United Laboratories, Inc. v. Kuykendall, 437 S.E.2d 374 (1993); see also In re UBS Auction Rate Sec. Litig., 2009 WL 860812 at *3 (S.D.N.Y. Mar. 30, 2009); Aimis Art Corp. v. Northern Trust Secs., Inc., 641 F. Supp. 2d 314 (S.D.N.Y. 2009).

Therefore, all claims in Count II should be dismissed.

D.      Count III–Violations of Section 10(b) of the Securities Exchange Act and SEC Rule 10(b)(5) against all Defendants

Plaintiffs next assert a claim under Section 10(b) of the Securities Exchange Act and SEC Rule 10(b)(5) against all Defendants. To establish this claim, Plaintiffs must show that Defendants: (1) made a false statement or omission of material fact; (2) with scienter; (3) upon which Plaintiffs relied; (4) and which proximately caused Plaintiffs' economic loss. Cozzarelli v. Inspire Pharm., Inc., 549 F.3d 618, 623 (4th Cir. 2008).[5] In considering whether Plaintiffs have properly alleged such a claim, the Court notes that the Private Securities Litigation Reform

---

[5] Plaintiffs may also be attempting to assert a violation of Section 10(b) based on alleged market manipulation. However, such a claim would still require a sufficient allegation of scienter, which Plaintiffs have failed to allege here as further discussed infra. The Court also notes that multiple other cases have raised claims against broker-dealers and other entities involved in the Nuveen auction rate securities, including class actions and a multi-district litigation in the Southern District of New York. All of those claims have been dismissed, primarily for failing to establish market manipulation in light of the disclosures publicly available, and in light of the failure to adequately plead scienter. In re Merrill Lynch Auction Rate Securities Litigation, 704 F. Supp. 2d 378 (S.D.N.Y. 2008) (noting that the prospectuses for the securities at issue, including for the Nuveen Premium Income Municipal Fund, "revealed the broker-dealer's ability to intervene in auctions"), aff'd, Wilson v. Merrill Lynch & Co., Inc., 671 F.3d 120, 131 (2d Cir. 2011) ("[T]here can be no dispute that the general phenomenon of ARS dealers placing bids to prevent failed auctions (i.e., 'support bidding') was publicly disclosed by . . . July 2007."); In re Merrill Lynch Auction Rate Securities Litigation, 851 F. Supp. 2d 512 (S.D.N.Y. 2012), aff'd, Louisiana Pacific Corp. v. Merrill Lynch & Co., Inc., 571 F. App'x 8 (2d Cir. 2014); Ashland Inc. v. Morgan Stanley & Co., Inc., 700 F. Supp. 2d 453 (S.D.N.Y. 2010), aff'd, 652 F.3d 333 (2d Cir. 2011); In re JP Morgan Auction Rate Securities Marketing Litigation, 867 F. Supp. 2d 407 (S.D.N.Y. 2012); In re JP Morgan Auction Rate Securities Marketing Litigation, No. 10 CIV. 4552, 2014 WL 4953554 (S.D.N.Y. Sept. 30, 2014); In re Citigroup Auction Rate Securities Litigation, 700 F. Supp. 2d 294 (S.D.N.Y. 2009); In re UBS Auction Rate Securities Litigation, 2010 WL 2541166 (S.D.N.Y 2010); Finn v. Barney, 471 F. App'x 30 (2d Cir. Mar. 27, 2012).

15

Act of 1995 ("PSLRA") requires heightened pleading in securities fraud cases. 15 U.S.C. § 78u-4(b). Cozzarelli, 549 F.3d at 623; Plymouth Cnty. Retirement Ass'n v. Primo Water Corp., 966 F. Supp. 2d 525, 538-39 (M.D.N.C. 2013).

To meet this standard with respect to alleged false statements or omissions, Plaintiffs must specify each statement alleged to have been misleading, explain why it is misleading, and if an allegation regarding the statement or omission is made on information and belief, Plaintiffs must state with particularity all of the facts forming the basis for such belief. Id. Moreover, the requirement of pleading fraud with particularity of Federal Rule of Civil Procedure 9(b) applies to allegations under the Exchange Act where those allegations sound in fraud. Cozzarelli, 549 F.3d at 629. The circumstances that must be pled with particularity under Rule 9(b) are the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby. Harrison, 176 F.3d at 784.

In addition, "the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2)(A). Plaintiffs must state facts which cause a reasonable person to deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged. Plymouth Cnty., 966 F. Supp. 2d at 539. As a general matter, several courts have examined claims of Rule 10(b)(5) violations based upon occurrences in the auction rate securities market during the same period at issue in the present action. As discussed below, scienter has been a particularly difficult element for plaintiffs to allege in sufficiently specific fashion to avoid Rule 12(b)(6) dismissals.

16

See, e.g., <u>Vining v. Oppenheimer Holdings, Inc.</u>, No. 08Civ4435 (LAP), 2010 WL 3825722 (S.D.N.Y. Sept. 29, 2010).

  1. False statement or omission of material fact

  Defendants Mesirow and Cohen argue that Plaintiffs have not pleaded with the required degree of particularity the false statement or omission of material fact. They argue that Plaintiffs' only allegations of misrepresentation specific to Cohen or Mesirow are limited to alleged conversations in which Cohen purportedly described ARS as "short term," liquid investments. (Defs.' Br. [Doc. #79] at 8 (referring to Compl. ¶¶ 23-25, 35).) But, according to Defendants, these allegations are not sufficiently specific as to time, place, and content. Plaintiffs argue that paragraphs 23, 24, and 25 of their Complaint set out the specifics of the conversations with Mr. Cohen that led to their purchase of Nuveen ARPS. (Pls.' Br. [Doc. #91] at 3.)

  Paragraph 23 of Plaintiffs' Complaint pertains to Nuveen shares purchased "for the account of Howard Kastel in January 1998." (Compl. [Doc. #74] ¶ 23.) In this paragraph, Plaintiffs acknowledge that "[t]hese shares were sold in January 2001." (<u>Id.</u>) As stated above, Plaintiffs allege earlier in their Complaint that all claims at issue arise out of shares they purchased between August 23, 2007 and February 15, 2008. (<u>Id.</u> ¶ 5.) Plaintiffs fail to explain how the purchase of shares in 1998, no matter what was said in connection with those purchases, shows fraud with respect to shares purchased almost ten years later. Moreover, a comparison of the types of shares purchased reveals they are not the same. The shares purchased in 1998 were "Nuveen Mun Advantage Pfd F" and "Nuveen Mun Opportunity Pfd M" [Compl. ¶ 23], while the shares purchased in 2007 were all a type of Nuveen North Carolina

17

shares [<u>Id.</u> ¶ 25]. Therefore, paragraph 23 does not show any particular circumstances of fraud with respect to the shares at issue in this action.

Paragraph 24 of Plaintiffs' Complaint details the purchase of "Nuveen Real Estate Taxable SR W" shares on January 9, 2002. (Compl. ¶ 24.) These shares were sold later in 2002. (<u>Id.</u>) Plaintiffs also describe in this paragraph more purchases of shares in 2003, 2004, 2005, and 2006. Again, these shares were sold, and none of these purchases were for Nuveen North Carolina Fund shares that Plaintiffs purchased in 2007 and that are at issue in this action. Therefore, this paragraph does not help Plaintiffs establish the required element of misrepresentation.

The final paragraph relied upon by Plaintiffs is paragraph 25. In this paragraph, Plaintiffs allege that on August 17, 2007, Mr. Cohen contacted Plaintiff Howard Kastel by phone and suggested that Plaintiffs purchase Nuveen North Carolina Funds for tax advantages in light of Plaintiffs' relocation to North Carolina. Plaintiffs then list the 2007 purchases (and sales) of shares that occurred shortly after this conversation. Plaintiffs allege that Mr. Cohen "did not identify the Nuveen North Carolina tax exempt funds that he was going to buy other than the fact that the interest earned by the funds also would not be subject to North Carolina's income tax and that now we were North Carolina residents we should be in North Carolina Funds." (Compl. ¶ 25.) Plaintiffs do not allege that the representation regarding tax exempt status was false, therefore no false representation is apparent from the allegations of paragraph 25. Thus, as to Defendants Cohen and Mesirow, it does not appear that Plaintiffs have sufficiently specified each statement alleged to have been misleading and explained why it is misleading.

18

With respect to Defendant Nuveen, as discussed above, Plaintiffs have not alleged that Defendant Nuveen made any statements or representations directly to Plaintiffs.[6]  Moreover, to the extent Plaintiffs rely on general statements regarding Nuveen's marketing materials or other disclosures, Plaintiffs have alleged that they did not receive or review any such materials prior to the collapse of the ARPS market.[7]  Likewise as to Defendant Bremner, Plaintiffs have not specifically alleged misrepresentations or omissions by Defendant Bremner.  Thus, Plaintiffs have failed to adequately plead the first element of their claim, a false statement or omission of a material fact, under Section 10(b) of the Securities Act and SEC Rule 10(b)(5).

          2.      Scienter

Even if Plaintiffs had adequately alleged a false statement or material omission, they must also adequately allege that such false statement or omission was made with the necessary mental state.  The scienter element requires a showing of more than negligence; the plaintiff must show either "intentional misconduct" or such "severe recklessness" that the danger of misleading investors was "either known to the defendant or so obvious that the defendant must have been aware of it."  Cozzarelli, 549 F.3d at 623 (quoting Ottmann v. Hanger Orthopedic Grp., Inc., 353 F.3d 338, 343-44 (4th Cir. 2003)).  And, under the PSLRA, Plaintiffs must "state

---

[6] In supplemental briefing, Nuveen notes that under Janus Capital Group, Inc. v. First Derivative Traders, 131 S. Ct. 2296 (2011), it should not be held responsible for statements made by other entities.

[7] Plaintiffs also attempt to rely on a settlement agreement between Nuveen Investments, LLC and the Financial Industry Regulatory Authority (FINRA).  However, to the extent that the agreement makes reference to Nuveen brochures or materials, the Court considers only those matters specifically alleged in the Complaint.  Moreover, as noted above, Plaintiffs allege that they did not see any of the brochures or materials, and therefore could not have relied on those representations.

19

with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2)(A).

Defendants argue that Plaintiffs have not adequately alleged facts giving rise to a strong inference of scienter. Plaintiffs' claims arise out of sales and hold orders occurring from August 23, 2007, until February 15, 2008, when the ARPS market froze. (Compl. ¶ 5.) Plaintiffs allege that Mesirow "first purchased Nuveen Auction Rate Preferred shares . . . for the account of Howard Kastel in January 1998." (Id. ¶ 23.) These shares were sold in January 2001. (Id.) Plaintiffs further allege that Mesirow purchased more Nuveen shares on January 9, 2002, which were sold on July 31, 2002. (Id. ¶ 24.) Plaintiffs next allege that on June 26, 2003, and on August 19, 2003, Mesirow purchased more Nuveen shares for Plaintiffs' accounts. (Id.) More Nuveen shares were purchased by Mesirow in March 2004. (Id.) Plaintiffs sold 3 Nuveen shares on June 4, 2004. (Id.) They sold more Nuveen shares on November 19, 2004. (Id.) On March 15, 2005, and August 3, 2006, Mesirow purchased more Nuveen shares for Plaintiffs. (Id.) In August and September 2007, Plaintiffs allege that on several dates Mesirow sold Nuveen shares and purchased shares in Nuveen North Carolina Funds. (Id. ¶ 25.) From January 1998 through September 7, 2007, Plaintiffs do not allege that they experienced any problems selling Nuveen shares.

Against this nearly 10-year history of uneventful purchasing and selling of Nuveen shares, Plaintiffs must state with particularity facts giving rise to a strong inference that Defendants acted with scienter, that the danger of misleading Plaintiffs about Nuveen shares and their liquidity and risk was either known to the Defendants or so obvious that Defendants must have

20

been aware of it. Plaintiffs allege that in 2004 the SEC announced a formal investigation of

ARPS in general and in 2006 filed complaints against some broker dealers, but not any of the

named Defendants. (Id. ¶ 26.) Plaintiffs further allege that as of August 21, 2007, ARPS

auctions had failed, but Plaintiffs do not allege that any Nuveen auctions had failed. (Id.) And,

Plaintiff Howard Kastel alleges that his conversation with Defendant Cohen regarding

purchasing the North Carolina Nuveen shares occurred on August 17, 2007. (Id. ¶ 25.)

Plaintiffs have failed to allege facts showing a strong inference of scienter at the time any alleged

representations or omissions were made.

      In addition, to the extent Plaintiffs rely on Defendants' motive to earn commissions or

fees, and similar financial motives, the Court of Appeals for the Fourth Circuit has considered

similar contentions and found them insufficient:

> All of these allegations relate to possible financial motives to misrepresent
> Hanger's financial situation, such as maintaining positive relationships with
> creditors, avoiding additional interest payments, and promoting future
> acquisitions. However, courts have repeatedly rejected these types of generalized
> motives-which are shared by all companies-as insufficient to plead scienter under
> the PSLRA. See, e.g., Fleming Cos., 264 F.3d at 1269; see also Mesko v.
> Gakstatter ( In re Cabletron Sys., Inc.), 311 F.3d 11, 39 (1st Cir.2002)
> ("'[C]atch-all allegations' which merely assert motive and opportunity, without
> something more, fail to satisfy the PSLRA."). As we explained in Phillips, "[i]n
> order to demonstrate motive, a plaintiff must show concrete benefits that could
> be realized by one or more of the false statements and wrongful non-disclosures
> alleged. Merely alleging facts that lead to a strained and tenuous inference of
> motive is insufficient to satisfy the pleading requirement." Phillips, 190 F.3d at
> 621 (citation & internal quotation marks omitted).

Ottmann, 353 F.3d at 352. Plaintiffs fail to meet this high standard in this case. See also In re

Merrill Lynch Auction Rate Securities Litigation, 704 F. Supp. 2d 378 (S.D.N.Y. 2008), aff'd,

Wilson v. Merrill Lynch & Co., Inc., 671 F.3d 120, 131 (2d Cir. 2011); In re Merrill Lynch

<u>Auction Rate Securities Litigation</u>, 851 F. Supp. 2d 512 (S.D.N.Y. 2012), <u>aff'd</u>, <u>Louisiana Pacific</u>

<u>Corp. v. Merrill Lynch & Co., Inc.</u>, 571 F. App'x 8 (2d Cir. 2014); <u>Ashland Inc. v. Morgan</u>

<u>Stanley & Co., Inc.</u>, 700 F. Supp. 2d 453 (S.D.N.Y. 2010), <u>aff'd</u>, 652 F.3d 333 (2d Cir. 2011);

<u>In re JP Morgan Auction Rate Securities Marketing Litigation</u>, 867 F. Supp. 2d 407 (S.D.N.Y.

2012); <u>In re JP Morgan Auction Rate Securities Marketing Litigation</u>, No. 10 CIV. 4552, 2014

WL 4953554 (S.D.N.Y. Sept. 30, 2014); <u>In re Citigroup Auction Rate Securities Litigation</u>, 700

F. Supp. 2d 294 (S.D.N.Y. 2009); <u>In re UBS Auction Rate Securities Litigation</u>, 2010 WL

2541166 (S.D.N.Y 2010); <u>Finn v. Barney</u>, 471 F. App'x 30 (2d Cir. Mar. 27, 2012).

      3.     Damages

     Finally, the Court notes that Plaintiffs have now rescinded the transaction and received

the par value for their investment in Nuveen ARPS. Other courts considering securities law

claims involving auction rate securities have concluded that where plaintiffs have redeemed their

shares and received a full refund of the purchase price, they cannot receive any further recovery

from the transaction. <u>See</u> <u>In re UBS Auction Rate Sec. Litig.</u>, 2009 WL 860812 at *3 (S.D.N.Y.

Mar. 30, 2009); <u>Aimis Art Corp. v. Northern Trust Secs., Inc.</u>, 641 F. Supp. 2d 314 (S.D.N.Y.

2009). In <u>Aimis</u>, the Plaintiff had received the par value of its August 2007 investment in

auction rate securities, and the Amended Complaint alleged damages from "the reduced interest

earned on the auction rate securities, which would have been higher had the securities not been

sold under false pretenses." <u>Aimis</u>, 641 F. Supp. 2d at 319. "Aimis in particular also allegedly

suffered damages from the 'lack of use of [its] auction rate funds,' as well as its inability to

'purchase art at auction during the period of time February–December 2008 that its auction rate

22

securities were illiquid.'" (Id.) However, the Court concluded that "Aimis's claims under § 10(b) and Rule 10b–5 must fail because Aimis has already received compensation for losses suffered as a result of the alleged misstatements or omissions. As the court explained in UBS, a plaintiff in a § 10(b) and Rule 10b–5 action must 'choose between rescinding a transaction and being paid restitution on the one hand and holding the defrauder to the bargain and recovering out-of-pocket losses resulting from the fraudulent transaction on the other hand.' 'Rescission and restitution are alternatives to money damages; a plaintiff cannot both rescind a transaction and ask for the benefit of the bargain rescinded.' Aimis received the par value of its investment in the auction rate securities funds in December 2008, effectively rescinding the transaction. Aimis therefore cannot receive any further recovery from the transaction." Id. (internal citations omitted).

For this additional reason, the claims of Plaintiffs' Count III should be dismissed as to all Defendants.

E.      Count IV–Violation of Section 20(A) of the Exchange Act against Bremner

In Count IV Plaintiffs allege that Robert Bremner is liable under Section 20(a) of the Exchange Act (15 U.S.C. § 78t(a)) as a "controlling person" of "the Nuveen North Carolina Funds." (Compl. ¶ 83.) He is alleged to be chairman of "the Board of the Nuveen North Carolina Funds." (Id. ¶ 8.) Plaintiffs further allege that he "has oversight responsibility over the management of the Fund's Investment Adviser and is a controlling person in respect to North Carolina Funds." (Id.) Plaintiffs contend that Nuveen Investments Inc. is "the Sponsor and Investment Adviser to all of the self-styled Nuveen Closed End ARPS Funds . . . including the

23

Nuveen North Carolina Funds." (Id. ¶ 7.)  In the Motion to Dismiss, Defendant Bremner argues that because there was no Rule 10(b)(5) violations by Nuveen, he cannot be held liable under section 20(a) as a controlling person.

In this regard, Plaintiffs attempt to hold Defendant Bremner liable through the Nuveen North Carolina Funds.  (Compl. ¶ 83.)  However, the Funds are not named defendants in this action.  Therefore, Plaintiffs have not established the liability of the Funds, the alleged entity being controlled by Defendant Bremner.  And absent this being established, Defendant Bremner may not be liable as a controlling person. See Teachers' Ret. Sys. of La. v. Hunter, 477 F.3d 162, 188 (4th Cir. 2007) (claim under section 20(a) of the Exchange Act (15 U.S.C. § 78t(a)) "requires a predicate allegation of a violation of law;" failure to show a violation of Rule 10b-5 by the person allegedly being controlled mandates dismissal of a section 20(a) claim).

Additionally, as seen from the above discussion, even if Plaintiffs were contending that Defendant Bremner was a controlling person of Nuveen Investments, Inc., Plaintiffs have not shown Rule 10b-5 liability of that entity.

Therefore, all claims raised in Count IV should be dismissed.

F.      Count V–Fraud by all Defendants

Plaintiffs argue that all of the Defendants made material misrepresentations or omissions to them about the Nuveen North Carolina Funds in connection with their decision not to sell the Nuveen North Carolina ARPS prior to the time that the auction market collapsed in February 2008.  The false information allegedly provided by Mesirow and Nuveen concerned the liquidity of the ARPS and that the liquidity did not meet their investment goals.

The elements for a fraud claim under North Carolina law are: (1) material misrepresentation of a past or existing fact; (2) the representation must be definite and specific; (3) made with knowledge of its falsity or in culpable ignorance of its truth; (4) that the misrepresentation was made with intention that it should be acted upon; (5) that the recipient of the misrepresentation reasonably relied upon it and acted upon it; and (6) that the misrepresentation resulted in damage to the injured party. Forbes v. Par Ten Grp., Inc., 394 S.E.2d 643, 647 (N.C. Ct. App. 1990). Elements three and four "comprise 'scienter,' both of which are required to show fraud." Id. The defendant must have known the representation to be false when making it, or have made the representation recklessly without any knowledge of its truth and as a positive assertion. Id. The determination of truth or falsity must be made at the time of the representation.

As discussed above, the only specific representations relied upon by Plaintiffs were made by Defendant Cohen on August 17, 2007. Plaintiffs fail to explain how Defendant Cohen at that time, or any other time he made representations regarding Nuveen North Carolina Funds, knew or was reckless with regard to the truth of statements concerning the liquidity of the Nuveen North Carolina ARPS when up to that point there had been no auctions that failed of those securities, and Plaintiffs had been able to sell all Nuveen shares that they offered for sale. Plaintiffs also fail to make such a showing with regard to any other Defendant.

In addition, as to Defendant Nuveen and Defendant Bremner, as discussed above, Plaintiffs have failed to allege any representations by these Defendants that Plaintiffs relied

upon. Moreover, as to all of the Defendants, Plaintiffs have failed to sufficiently allege fraudulent intent or intent to deceive.

Therefore, Plaintiffs fail to state a claim of actionable fraud and all claims raised in Count V should be dismissed.

G.    Count VI–Negligent Misrepresentation by Mesirow and Nuveen

Plaintiffs allege that Mesirow and Nuveen had an affirmative duty to provide them with all the material information regarding risk associated with the Nuveen North Carolina ARPS investments, Nuveen's role in sponsoring the ARPS auction process, and risk associated with the potential collapse of the ARPS auction process. Plaintiffs further allege that Mesirow and Nuveen did not exercise due care in obtaining or communicating information to them. According to Plaintiffs, Mesirow and Nuveen negligently made material representations as stated above and knew or should have known that their representations were false. Plaintiffs allege that they relied upon the representations and suffered damages and loss.

Under North Carolina law, the tort of negligent misrepresentation occurs when: (1) a party justifiably relies, (2) to his detriment; (3) on information prepared without reasonable care; (4) by one who owed the relying part a duty of care. <u>Simms v. Prudential Life Ins. Co.</u>, 537 S.E.2d 237, 240 (N.C. Ct. App. 2000). In this case, Defendant Nuveen notes that Plaintiffs have failed to allege any misrepresentation by Nuveen on which Plaintiffs relied. Defendant Mesirow likewise contends that Plaintiffs have failed to allege a negligent misrepresentation by Cohen, and have failed to show that Plaintiffs justifiably relied on any alleged misrepresentation, particularly given that the information regarding auction rate securities was equally available in

the public record to Plaintiffs. Having considered the parties contention, and in light of the deficiencies further set out above, the Court concludes that Plaintiffs have not sufficiently stated a negligent misrepresentation claim. In addition, as also discussed above, all of Plaintiffs' shares have been redeemed and Plaintiffs have elected to recover their investments. Therefore, Plaintiffs' Count VI should be dismissed.

H.     Plaintiffs' Count VII–Rescission and Related Relief under the Illinois Securities Act, 815 ILCS 5/1 against Mesirow and Nuveen

Plaintiffs allege in Count VII that Mesirow and Nuveen violated the Illinois Securities Act by selling Nuveen North Carolina ARPS which worked a fraud or deceit upon them, by obtaining money through the sale of Nuveen North Carolina ARPS by means of untrue statements of material facts and omissions of material facts, employing devices to defraud, and offering and selling Nuveen North Carolina ARPS not in compliance with the Illinois Securities Act. Defendants argue that these claims fail because the Illinois Act requires heightened pleading and facts that raise a strong inference of scienter, which Plaintiffs have failed to provide.

The claims raised by Plaintiffs correlate to 815 ILCS 5/12(F), (G), and (I). Subsection (F) prohibits engaging "in any transaction, practice or course of business in connection with the sale or purchase of securities which works or tends to work a fraud or deceit upon the purchaser or seller thereof." 815 ILCS 5/12(F). Subsection (G) makes it a violation to "obtain money or property through the sale of securities by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading." (Id. (G).) And, subsection (I)

27

forbids employing "any device, scheme or artifice to defraud in connection with the sale or purchase of any security, directly or indirectly."  (Id. (I).)

Illinois courts hold that these subsections in the civil context are modeled after the federal Rule 10b-5, and share similar elements.  Platinum Partners Value Arbitrage Fund, Ltd. P'ship v. Chicago Bd. Options Exch., 976 N.E.2d 415, 423 (Ill. App. Ct. 2012).  "[A] private claim under section 12(F) or (I) requires either a misstatement or an omission of material fact." Id.  Subsection (G) also requires a misstatement or an omission of material fact.  See Tirapelli v. Advanced Equities, Inc., 813 N.E.2d 1138, 1142 (Ill. Ct. App. 2004).  As seen from the discussion of Count III, Plaintiffs have failed to allege sufficient facts to satisfy this element of the cause of action.  Additionally, scienter is a required element for a claim under subsection (I), which Plaintiffs fail to sufficiently allege.  See Platinum Partners, 976 N.E.2d at 423 ("[S]cienter, or intent or knowledge of wrongdoing, is required for liability under section 12(I).") (italics omitted).

Accordingly, Plaintiffs' Count VII should be dismissed.

I.      Plaintiffs' Count VIII–Rescission and Related Relief under North Carolina Statutes section 78A-56 against Mesirow and Nuveen

Plaintiffs allege that Defendants Mesirow and Nuveen violated the Securities Act of North Carolina, N.C. Gen. Stat. § 78A-56, by selling Nuveen North Carolina ARPS to them by means of untrue statements of material facts and omissions of material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.  This general allegation tracks the language of the statute, N.C. Gen. Stat. § 78A-56(a)(2).  By the terms of the statute, Plaintiffs must sufficiently allege an untrue statement of

a material fact or a material omission.  As seen from the discussion of Count III, Plaintiffs have failed to allege sufficient facts to satisfy this element of the cause of action.

Therefore, Plaintiffs' Count VIII should be dismissed.

J.    Plaintiffs' Count IX–Tort of Intentional Infliction of Emotional Distress against Mesirow and Nuveen

Plaintiffs allege that Defendants repeatedly suggested that they had a plan to redeem Plaintiffs' shares when they knew at the time the statements were made that they were false and misleading.  Plaintiffs point to their allegations of fraud, theft by deception and obtaining monies by false pretenses.  (Compl. ¶ 109.)  Plaintiffs have not alleged a claim of theft by deception or obtaining monies by false pretenses.  Therefore, these two claims cannot form the basis for a claim of emotional distress.  Plaintiffs have attempted to allege a fraud claim, however, it is recommended that all fraud claims be dismissed.

Regarding Plaintiffs' emotional distress, Plaintiffs allege that their investment in Nuveen North Carolina shares represented a "significant part" of their net worth and was material to their retirement plan.  (Compl. ¶ 55.)  They claim that the alleged fraud has had a "major economic and psychological effect on the quality of their lives and their health."  (Id.)

To state a claim of intentional infliction of emotional distress in North Carolina, Plaintiffs must allege that: (1) defendants engaged in extreme and outrageous conduct; (2) intending to cause and actually causing; (3) severe emotional distress.  Jolly v. Academy Collection Serv., Inc., 400 F. Supp. 2d 851, 866 (M.D.N.C. 2005).  The standard for what constitutes extreme and outrageous conduct is a "stringent" one.  Id.  It must be conduct that exceeds all bounds usually tolerated by decent society.  Id. Whether the conduct meets this standard is a question of law

29

for the courts. Id. Severe emotional distress means "any emotional or metal disorder, such as, for example, neurosis, psychosis, chronic depression, phobia, or any other type of severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so." Waddle v. Sparks, 414 S.E.2d 22, 27 (N.C. 1992). Humiliation and worry are not enough. Id.

Plaintiffs have failed to allege the type of conduct that meets the extreme and outrageous level. What Plaintiffs describe is not conduct that exceeds "all bounds usually tolerated by decent society." See Jolly, 400 F. Supp. 2d at 866. Moreover, Plaintiffs have not sufficiently alleged severe emotional distress. They allege in conclusory fashion that they suffered "major psychological effect" on their lives and "severe emotional distress." (Compl. ¶ 55) They have not given any particulars as to the "major psychological effect" upon them resulting from Defendants' conduct. There is no allegation that they sought or received a physician's diagnosis of such distress. See Castonguay v. Long Term Care Mgmt. Servs., L.L.C., No. 1:11CV682, 2014 WL 1757308 at *13 (M.D.N.C. Apr. 30, 2014). For these reasons, Plaintiffs' claim for intentional infliction of emotional distress should be dismissed.

III.     CONCLUSION

IT IS THEREFORE RECOMMENDED that Defendants' Motions to Dismiss [Doc. #78, #80] be granted.

This, the 25th day of August, 2015.

                                    /s/ Joi Elizabeth Peake
                              United States Magistrate Judge